**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **ROBERT ZIEGLER,** § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| **SUBALIPACK (M) SDN BHD,** § | |
| **A.C.T. LOGISTICS, LLC,** § | |
| **MEDITERRANEAN SHIPPING** § | |
| **COMPANY (USA), INC.,** § | **CIVIL ACTION NO. 4:16-cv-2598** |
| **MEDITERRANEAN SHIPPING** § | |
| **COMPANY, S.A., ST. GEORGE** § | |
| **LOGISTICS, COURTNEY** § | |
| **INTERNATIONAL FORWARDING,** § | |
| **INC., MASTERPIECE** § | |
| **INTERNATIONAL LIMITED,** § | |
| **GRAEBEL MOVERS INT'L, INC. and** § | |
| **JOHN DOES 1-3** § | |
| Defendants. § | |

**DEFENDANTS MEDITERRANEAN SHIPPING COMPANY, S.A.'S
AND MEDITERRANEAN SHIPPING COMPANY (USA), INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW defendants Mediterranean Shipping Company, S.A. ("MSC S.A.") and Mediterranean Shipping Company (USA), Inc. ("MSC USA"), through their attorneys of record, Royston, Rayzor, Vickery & Williams, L.L.P., and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, file this, their Motion for Summary Judgment seeking the dismissal of plaintiff Robert Ziegler's ("Ziegler") claims as against MSC S.A. and MSC USA on the grounds that Ziegler's claims against MSC S.A. and MSC USA are time barred pursuant to the one-year limitations period contained in Section 3(6) of the United States Carriage of Goods by Sea Act, codified at 46 U.S.C. § 30701, note (2007) ("COGSA"), and would respectfully show as follows:

## **INTRODUCTION**

In his First Amended Complaint [Doc. no. 36], Ziegler asserts various causes of action against MSC S.A., MSC USA, and several other defendants concerning alleged damage to, and possible shortage of, a shipment of household goods allegedly loaded in a 40 foot shipping container and transported by MSC S.A. from Port Klang, Malaysia to Houston, Texas. The container, which was allegedly loaded with Ziegler's goods, was transported from Malaysia to Houston under cover of MSC S.A. Bill of Lading no. MSCUPG309359. The container was presumably loaded by defendant Subalipack (M) Sdn Bhd ("Subalipack") in Malaysia pursuant to a contract entered into between Ziegler and Subalipack. The shipper named on the MSC S.A. Bill of Lading is Honour Lane Logistics Sdn Bhd, a non-vessel operating common carrier, and defendant A.C.T. Logistics LLC ("A.C.T. Logistics") is named as both consignee and notify party on the MSC S.A. Bill of Lading. The container arrived at the Port of Long Beach, California on August 17, 2014 and was discharged from the M/V MSC SOLA. Thereafter, the container was transported by rail from Los Angeles to Houston. The container arrived in Houston on September 9, 2014.

Upon information and belief, Ziegler was unable to enter the goods through U.S. Customs at Houston due to his visa status. It is notable that at no time was either MSC S.A. or MSC USA engaged to assist with the clearance of the goods with U.S. Customs.

After fifteen (15) days at the railroad ramp in Houston, MSC USA prepared a notification of Eligible General Order Merchandise on September 26, 2014, and the subject container left the rail ramp on or about October 3, 2014, for the general order warehouse, owned and/or operated by defendant St. George Logistics. The goods remained in the St. George Logistics warehouse until July 2015 when Ziegler paid the outstanding charges and defendant Graebel Movers International, Inc. ("Graebel") delivered the goods to his residence in Waller County, Texas.

On July 6, 2016, Ziegler filed the instant lawsuit in the district court of Harris County, Texas. On August 26, 2016, Ziegler's lawsuit removed to this Court, and remains in this Honorable Court pending a determination on Ziegler's Motion to Remand.

The primary thrust of the instant motion is that Ziegler filed his Original Petition on July 6, 2016, more than one year after the delivery of the cargo by MSC S.A. in Houston though by making the cargo available to the general order warehouse in early October 2014. MSC S.A. and MSC USA respectfully submit that this lawsuit, which was filed one year and nine months after delivery of the cargo at Houston, is time barred under Section 1303(6) of COGSA as a matter of law. Also, MSC USA respectfully submits that it was at all times an agent for a disclosed principal, *i.e.*, MSC S.A., and, therefore, has no liability in its separate capacity under the *Restatement of Agency*. Finally, MSC S.A. and MSC USA respectfully submit that COGSA applies to preempt all other causes of action providing Ziegler's exclusive remedy for cargo damage or loss, including any tort claims and state law causes of action.

## STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact, or the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either: (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 322-23. The opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012)(citing *Celotex Corp.*, 477 U.S. 317, 323 (1986). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the non-movant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). "When the moving party has met its Rule 56 burden, the non-moving party cannot survive a summary judgment motion by resting on mere allegations of its pleadings." *Id*. The non-movant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id*. "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transportation Co.*, 402 F.3d 536, 540 (5th Cir. 2005)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

## FACTS

Ziegler originally filed this lawsuit on July 6, 2016, in the district court of Harris County, Texas, 55th Judicial District, against Subalipack, A.C.T. Logistics, MSC USA, St. George Logistics, Courtney International Forwarding, Inc. ("Courtney"), Masterpiece International Limited ("Masterpiece"), Graebel, and John Does 1-3. In his Original Petition, Ziegler alleges that on or about October 7, 2014, he hired Subalipack to perform an all-inclusive insured door-to-door move of his household goods from Kuala Lumpur, Malaysia to Hilltop Lakes, Texas (*See* Pl.'s Orig. Pet. at ¶ 19.) Subalipack packed Ziegler's household items and placed the goods in the custody of a steamship company for ocean carriage to Los Angeles and inland carriage for delivery to Houston, Texas. In August 2014, U.S. Customs and Border Protection took issue with Ziegler's visa classification for the purpose of importing household goods.

In his Original Petition, Ziegler asserted causes of action for breach of contract, Deceptive Trade Practices Act violations, conversion, negligence, as well as seeking a declaratory judgment on certain issues.

On August 26, 2016, MSC USA filed its Notice of Removal removing the lawsuit to this Honorable Court [Doc. no. 2]. On August 31, 2016, MSC USA filed its Answer [Doc. no. 9]. On September 13, 2016, Masterpiece filed a Motion to Dismiss, Original Answer and Designation of Responsible Third Party [Doc. no. 11]. On September 23, 2016, St. George Logistics filed its Answer [Doc. no. 15]. On September 26, 2016, Ziegler filed his Motion to Remand [Doc. no. 17]. On September 30, 2016, Courtney filed its Motion to Dismiss and Original Answer [Doc. no. 19]. On October 17, 2016, MSC USA [Doc. no. 25] and St. George Logistics [Doc. no. 24] filed Responses in Opposition to the Motion to Remand. On October 26, 2016, Ziegler filed a Reply in Support of its Motion to Remand [Doc. no. 31]. On October 31, 2016, MSC USA filed a Sur-Reply to the Motion to Remand [Doc. no. 32].

On December 16, 2016, Ziegler filed a Motion for Leave to File a First Amended Complaint [Doc. no. 34], which was granted by this Honorable Court on December 21, 2016 [Doc. no. 35] and Plaintiff's First Amended Complaint [Doc. no. 36] was filed as of December 21, 2016. On January 27, 2017, MSC S.A. filed its Answer to the First Amended Complaint [Doc. no. 39] and Graebel filed its Answer to the First Amended Complaint on February 3, 2017 [Doc. no. 40].

In his First Amended Complaint, Ziegler asserts causes of action for: (1) for breach of contract against Subalipack; (2) for violation of the Texas Deceptive Trade Practices Act (DTPA) against Subalipack, St. George Logistics, A.C.T. Logistics, Masterpiece, and MSC USA; (3) seeks a Declaratory Judgment as to the contract terms between Ziegler and Subalipack; (4) for conversion against Subalipack, MSC USA, A.C.T. Logistics, St. George and Graebel; (5) for negligence against

Subalipack, MSC, A.C.T., St. George and Graebel; and (6) for negligent hiring or supervision against MSC S.A. for alleged torts of conversion and negligence committed by MSC USA.

Ziegler seeks to recover damages arising out of a shipment of household goods and a motorcycle from Malaysia to Texas. In April 2014, Plaintiff Ziegler hired Subalipack to transport his household goods from Kuala Lumpur, Malaysia to Hilltop Lakes, Texas via Houston, Texas. [Doc. 36, Plaintiff's First Amended Complaint at ¶ 17 and Exhibit 1.] In July 2014, Subalipack packed Plaintiff's household goods and motorcycle in a 40 foot container. Apparently, Subalipack contracted with Honour Lane Logistics Sdn Bhd, a recently added but as yet unserved Defendant, to arrange for the transportation of the container from Malaysia to California with on-carriage to Houston, Texas. Honour Lane then contracted with MSC S.A. for the ocean carriage from Malaysia to Long Beach, California and the inland transportation from Long Beach, California to Houston, Texas. A.C.T. Logistics, a named Defendant who has yet to appear in the lawsuit, was apparently contracted by Honour Lane.

MSC S.A. Bill of Lading No. MSCUPG309359, a copy of which is annexed as Exhibit A and is fully incorporated by reference, covered the ocean transportation as well as the inland transportation to Houston of container number TCNU5760763 dated July 16, 2014. Honour Lane as the shipper under the MSC S.A. Bill of Lading with A.C.T. Logistics, the consignee, and notify party. The container was carried aboard the MSC SOLA, Voyage 430A from Port Klang, Malaysia to Long Beach, California. The container was loaded on or about July 27, 2014, aboard the ORION and was discharged at Singapore for transshipment on July 18, 2014. The container was then loaded on or about July 22, 2014, on the MSC PAMELA and discharged on July 25, 2014, from the MSC PAMELA at Taiwan. Finally, the container was then transshipped aboard the MSC SOLA on July 30, 2014, for transpacific carriage and was discharged at the Port of Long Beach, California on or

about August 17, 2014. The subject container was loaded onto the railcar on or about September 4, 2014, for shipment to Houston. The train departed Los Angeles on or about September 6, 2014, and arrived at the rail ramp at Houston, Texas on September 9, 2014. The container then was taken out of the gate full on October 3, 2014, and returned empty to the container yard on October 9, 2014. (*See* Exhibit 4 to the Declaration of Maria Jose Pantosin (annexed hereto as Exhibit B) - MSC tracking and tracing).

U.S. Customs and Border Protection apparently took issue with Ziegler's visa classification for the purpose of importing household goods and Customs rejected entry of the subject container. [Doc. 36 at ¶ 23]. Subalipack subcontracted the Customs clearance to Courtney and/or Masterpiece. [Doc. 36 at ¶ 23].

If entry is not made within 15 days after arrival, the goods will be transferred to a general order warehouse (GO) and are subject to storage charges. After 6 months, the goods will be sold at public auction. Due to the failure to obtain Customs clearance after the expiration of 15 days from arrival, MSC issued a notification of eligible general order merchandise on or about September 26, 2014. St. George Warehouse Houston was the general order warehouse. Thereafter, on or about January 22, 2015, MSC issued a lien notice reflecting charges for a lien fee, rail storage and ramp detention for the subject container in the amount of $4,870.00. The lien notice was sent to A.C.T. Logistics, MSC's consignee/notify party. A.C.T. Logistics was aware of the GO order as reflected by the email exchange between MSC and A.C.T. Logistics in September 2014. A.C.T. Logistics was aware that the goods were going to the St. George GO warehouse. Additionally, Courtney was aware of the movement of goods to GO at this time. On or about October 2, 2014, St. George picked up the container and moved it to its GO warehouse. Additionally, MSC advised A.C.T. Logistics of the

move of the container to the GO warehouse, along with the GO number at this same time, October 2, 2014.

On or about October 21, 2014, Masterpiece, on behalf of Ziegler, attempted to make Customs entry. (Masterpiece 0023). Subsequently, but certainly by early January 2015, Customs and Border Protection determined to release Ziegler's household goods.

Entry was rejected by U.S. Customs and Border Protection on or about October 31, 2014, because Ziegler was not eligible to import on a B-1 visa. On or about January 9, 2015, CPB returned the entry for release.

On October 23, 2014, CPB rejected entry as the importer not eligible to import household goods on a B-1 Visa.

On or about January 28, 2015, Graebel advised Ziegler that the goods could not be delivered without payment of the outstanding charges. Moreover, Graebel advised Ziegler that the goods would be eligible for auction by February 15, 2015.

By letter of February 6, 2015, Ziegler's attorney advised Graebel and Masterpiece of his retention to recover Ziegler's household goods from the warehouse.

On July 6, 2016, Ziegler filed his Original Petition against Subalipack, MSC USA, St. George Logistics, Courtney International Forwarding, Masterpiece International Limited, Graebel Movers International, Inc., and several John Does.

## SUMMARY OF THE ARGUMENT

Ziegler originally filed this lawsuit for alleged damage to and/or loss of a shipment of household goods loaded aboard various MSC vessels and transported from Port Klang, Malaysia *via* Singapore and China to Long Beach, California with on-carriage by rail BNSF from Long Beach to Houston, Texas arriving on September 9, 2014. When Customs entry was not effected timely, after

the expiration of 15 days free time, a notification of eligible general order merchandise was sent and Customs directed that the subject container be transported to a general order warehouse, St. George Logistics, where the container was devanned (emptied) and returned empty to the BNSF container yard on October 9, 2014. On July 6, 2016, Plaintiff filed his claim against MSC and the other Defendants for alleged cargo damage and loss. Because this claim concerns a cargo shipment from a foreign country to the United States, COGSA applies *ex proprio vigore* with preemptive affect. *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 359 n. 9 (5th Cir. 2004). Under COGSA, a lawsuit for cargo damage must be filed against the carrier within one year of the date of delivery. Section 1303(6). Where COGSA applies, as here, it supersedes all state law claims. In *Servicios-Expoarma, C.A. v. Industrial Maritime Carriers*, 135 F.2d 984 (5th Cir. 1998), the Fifth Circuit examined the issue of when delivery occurred for purposes of calculating the one-year time bar of Section 1303(6) of COGSA and determined that "it is apparent, then that 'delivery' and commencement of the one year limitations period under Section 1303(6) need not involve a reasonable opportunity to inspect." 135 F.3d at 989. Rather, the Fifth Circuit articulated a standard for determining delivery for purposes of 1303(6) "defined by reference to the carrier's acts, not the ultimate consignee's." 135 F.3d at 989. It concluded that "[d]elivery occurs when the carrier places the cargo into the custody of whomever is legally entitled to receive it from the carrier." 135 F.3d at 992. Moreover, where the person entitled to delivery is a railroad or customs house, not the consignee, there is 'delivery' for purposes of the statute without regard to the actions of the consignee. *Id*.

Therefore, delivery in the instant case occurred when Customs ordered the goods to the general order warehouse and the general order warehouse stripped the container and stored the goods in its facility in early October 2014. Because Ziegler filed his lawsuit against MSC USA over 19

months after the cargo was delivered and against MSC S.A. over 24 months after the cargo was delivered at Houston, it is untimely and barred as a matter of law.

## ARGUMENT

## POINT I

### AT ALL TIMES MATERIAL, MSC USA WAS AN AGENT FOR DISCLOSED PRICIPAL, *I.E.*, MSC S.A.

Ziegler's complaint as against MSC USA must be dismissed because MSC USA is not a proper party to this suit. In all of the transactions that form the bases of Ziegler's claims, MSC USA acted solely in the capacity as an agent for MSC S.A., its fully disclosed principal. In *Port Ship Service, Inc. v. International Ship Management & Agency Service, Inc.*, 800 F.2d 1418 (5th Cir. 1986), the Fifth Circuit examined the issue of whether the plaintiff in that action had sufficient notice of the identity of the principal at the time of the transaction to preclude liability on the part of the maritime agent. In this regard, the Fifth Circuit in *Port Ship Service, Inc.* observed:

> This Circuit has often referred to the *Restatement (Second) of Agency* for an accurate statement of the general agency law. [Citation omitted]. Under the *Restatement*, an agent is liable as a party to the contract when the other party has notice that the agent is or may be acting for a principal, but the other party has no notice of the principal's identity. *Restatement (Second) of Agency* § 4(2), 321. The agent is then said to be acting for a partially disclosed principal. *Id.* at § 4(2).

The *Port Ship Service, Inc.* court continued:

> The *Restatement* makes it clear that it is the agent's duty to disclose the principal's identity, not the third party's duty to ascertain that identity. [Citation omitted]. A third party such as Port Ship, however, need only receive *notice* of the identity of the principal, which may come from any source. *Restatement* at § 4, C(d). Furthermore, the identity of the principal can be sufficiently disclosed even when the third party has no actual knowledge of it; 'the [third party] has notice of the existence or identity of the principal if he knows, has reason to know, or should know of it, or has been given a notification of the

> fact.' *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 275–76 (5th Cir.1980) (quoting *Restatement* at § 4(2), Comment (a)).

An ocean bill of lading is a maritime contract. *Norfolk Southern Railroad Co. v. Kirby,* 543 U.S. 14, 125 S. Ct. 385, 160 L.Ed.2d 283 (2004). Common law principles of agency apply to maritime contracts. *Getty Oil Co. v. Norse Management Co. (Pte) Ltd.*, 711 F. Supp. 175, 177 (S.D.N.Y. 1989). According to the *Restatement of Agency*, an agent who makes a contract for a disclosed principal "becomes neither a party to the contract nor liable for the performance of the contract." *Seguros Banvenez, S.A. v. S/S OLIVER DRESCHER*, 761 F.2d 855, 860 (2d Cir. 1985) (citing *Restatement (Second) of Agency* § 320, 328). As such, an agent of a disclosed principal is not liable for breach of contract. *Seguros Banvenez, S.A.*, 761 F.2d at 860 (citations omitted).

Here, MSC USA only acted as an agent for MSC S.A. The documents provided to the parties in the contractual chain of carriage clearly identify MSC USA as agent for MSC S.A. It was MSC S.A., not MSC USA, that issued the Bill of Lading contract of carriage for the transportation of the container alleged to contain Ziegler's goods from Port Klang, Malaysia to Houston, Texas. Specifically, Bill of Lading No. MSCUPG309359 indicates that it is a Mediterranean Shipping Company, S.A. form bill of lading and indicates at the bottom of the document that it would be "SIGNED by MSC (USA), Inc. as agent on behalf of the carrier MSC Mediterranean Shipping S.A." Additionally, the Bill of Lading expressly incorporates MSC S.A.'s standard Terms and Conditions, which are printed on the reverse side of the Bill of Lading, as well as the terms and conditions of the carrier's applicable tariff. These Terms and Conditions, which are printed in full in each Bill of Lading issued by MSC S.A. define MSC S.A. as the carrier.

Further, MSC USA's own Terms and Conditions, annexed as Exhibit 1 to the Declaration of Maria Jose Pantosin provide that MSC USA is the agent in the United States agent for MSC S.A. In

this regard, MSC USA is authorized to accept service of legal proceedings issued against MSC S.A., but is limited to acceptance of such service only. Consequently, MSC USA is an agent for a disclosed principal MSC S.A. and is not a proper party defendant in this action.

In the instant case, it was MSC S.A., and not MSC USA, that transported the container allegedly containing Ziegler's goods. As between MSC S.A. and MSC USA, if there is any liability respecting Ziegler's claims, which is denied, it would be the carrier, MSC S.A., and not MSC USA, that would be liable. MSC USA, as a fully disclosed agent of MSC S.A., cannot be held liable for the contractual or other obligations of MSC S.A. Accordingly, this Court should grant summary judgment dismissing Ziegler's claims against MSC USA.

## POINT II

### COGSA GOVERNS ZIEGLER'S CLAIMS AGAINST MSC S.A. AND MSC USA AND PROVIDES HIS EXCLUSIVE REMEDY

COGSA governs "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 30701. When it applies, COGSA "supersedes other laws." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Construction Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000).

Generally, COGSA applies *ex proprio vigore* during the time after cargo is loaded onto the ship and before it is discharged with respect to goods transported to or from the United States. *See Foster Wheeler*, 383 F.3d at 355 (holding that COGSA applies compulsorily during the tackle-to-tackle period to contracts for the carriage of goods to or from U.S. ports in foreign trade). However, COGSA also "allows parties the option of extending [by contract] COGSA terms . . . to cover the entire period in which the goods would be under a carrier's responsibility, including the period of . . .

inland transport." *Kawasaki Kisen Kaisha, Ltd. v. Regal-Beloitt Corp.*, 561 U.S. 89, 96 (2010) (citations omitted).

Here, Clause 5 contained in the Bill of Lading extends the application of COGSA to all times the goods were in the care, custody, and control of MSC S.A. It is further notable that through the application of the Bill of Lading's Himalaya Clause[1], the protections and immunities contained in the Bill of Lading that are afforded to MSC S.A. will also apply to any claims made against MSC USA because MSC USA was at all times material an agent or servant of MSC S.A. within the meaning of the Bill of Lading's Himalaya Clause.

In *Norfolk Southern Railroad Company v. James N. Kirby Pty Ltd.*, 543 U.S. 14 (2000), the Supreme Court held that state law is superseded by Federal Maritime Law with respect to loss or damage to cargo carried under ocean bills of lading, whether the goods at the time of the damage are on ships or in inland transportation under through bills of lading. Additionally, the court in *Kirby* held that non vessel operating common carriers, such as defendant Honour, are presumed to be the cargo owner's limited agent for entering into contracts with inland carriers, irrespective of traditional agency rules, at least for the limited instance of binding a non-party cargo interest to a liability limitation. *Id.*

The limited agency rule, however, was expanded in *A.P Moller-Maersk A/S v. Ocean Express Miami*, 550 F.Supp.2d 454 (S.D.N.Y. 2008), in which the court held that a freight forwarder acted as an agent, in limited capacity, for a printing corporation when it accepted the bill of lading from the carrier for printing machinery purchased by the printing corporation. As a result, the printing

---

[1] A Himalaya clause is an exculpatory provision that seeks to extend to non-carriers the protections available to the carrier under the governing statutory scheme as well as the applicable contract of carriage. Thomas J. Schoenbaum, Admiralty and Maritime Law Vol. 2 § 10-8 (4th Ed. 2004). The Fifth Circuit in *Brown & Root, Inc. v. M/V PEISANDER*, 648 F.2d 415, 425 (5th Cir. 1981) and *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277, 1282 (5th Cir. 1982)

corporation was bound by the bill of lading's forum selection clause. *Id.* at 462-65. The court opined that the same reasoning used by the Court in *Kirby* to apply the limited agency rule to liability limitations applied "with equal force to a forum selection clause." *Id.* at 465.

Therefore, through Ziegler's engagement of Subalipack, Subalipack's engagement of Honour, and Honour's engagement of MSC S.A. to transport Ziegler goods from Port Klang, Malaysia to Houston, Texas, Ziegler has become bound, through the application of the limited agency rule, to the Terms and Conditions contained in MSC S.A.'s Bill of Lading as far as the claims Ziegler has plead against MSC S.A. and MSC USA (through application of the Bill of Lading's Himalaya Clause).

Finally, the court in *Polo Ralph Lauren*, 215 F.3d 1217, 1220 (11th Cir. 2000), held that, when COGSA applies, it provides the exclusive remedy for cargo damage claims, which are "hybrid" contract-and-tort claims. *See also Man Ferrostaal, Inc. v. Oldendorff Carriers GmbH & Co.*, Civ. Act. No. 4:09-CV-2126, 2009 WL 3765559 (S.D. Tx. Nov. 10, 2009)("When COGSA applies, it is the exclusive remedy, preempting tort claims as well as contract claims. 'That COGSA claims are hybrids born of elements from contract and tort does not change the fact that the resulting claim is a unitary statutory remedy, rather than an array of common law claims.' " (quoting *Polo Ralph Lauren*.)) Therefore, Ziegler may not maintain separate tort law causes of action, such as negligence or breach of bailment, against an ocean carrier. Accordingly, COGSA provides Ziegler's exclusive unitary statutory remedy and any state law or other cause of action he has made against MSC S.A. or MSC USA must be dismissed as a matter of law.

---

have upheld Himalaya clauses in bills of lading and extended the protections of the bill of lading and applicable statutory scheme to agents, servants, and independent contractors of the carrier.

# POINT III

## ZIEGLER'S CLAIMS ARE TIME BARRED BY SECTION 3(6) OF COGSA

COGSA provides the limitations period of one year from "delivery" during which a shipper must bring suit against the carrier:

> In any event, the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

46 U.S.C. § 30701, note.

In *Servicios-Expoarma, C.A. v. Industrial Maritime Carriers*, 135 F.2d 984 (5th Cir. 1998), the Fifth Circuit examined the issue of when delivery occurred for purposes of calculating the one-year time bar in the context of a suit for cargo damage. Previously, no court of appeal had decided when "delivery" occurred for purposes of Section 1303(6). The Fifth Circuit explored the two lines of cases (1) that delivery occurs when the cargo leaves the ship's slings, irrespective of whether it is placed in the hands of the consignee or its agent (citations omitted), and (2) that delivery occurs only when the consignee has had a reasonable opportunity to inspect the goods (citations omitted). Significantly, the Fifth Circuit determined to adopt a different rule finding that "it is apparent, then that 'delivery' and commencement of the one year limitations period under Section 1303(6) need not involve a reasonable opportunity to inspect." 135 F.3d at 989. Rather, the Fifth Circuit articulated a standard for determining delivery for purposes of 1303(6) "defined by reference to the carrier's acts, not the ultimate consignee's." 135 F.3d at 989. The court found that "delivery equated to 'removable into the custody of the person entitled to delivery thereof.' Moreover, <u>where the person entitled to delivery is a railroad or a custom's house, not the consignee, there is 'delivery' for purposes of the statute without regard to the actions of the consignee.</u> *Id.* In summary, the Fifth Circuit found that

"delivery" entails acts by the carrier, and what acts will constitute proper delivery from the carrier is determined by the carriage contract and the General Maritime Law. *Id.*

The Fifth Circuit adopted a new interpretation by concluding that "[d]elivery occurs when the carrier places the cargo into the custody of whomever is legally entitled to receive it from the carrier." 135 F.3d at 992. *See also*, *America & Asia Trading Co., et al. v. Star Trans Container Line Limited*, 2003 AMC 1333 ("Once the goods had been placed in the Custom's warehouse, 'delivery' for purposes of 1306(6) had occurred and the one year limitations period began to run.

In the instant case, delivery was made on or about October 3, 2014 when the container was delivered to St. George warehouse. Because Ziegler did not commence suit against either MSC SA or MSC USA within one-year of the delivery date his claims against them must be dismissed because they are time barred by COGSA § 3(6).

## CONCLUSION

For the forgoing reasons, this Court should issue a summary judgment dismissing Ziegler's claims against MSC USA on the ground that MSC USA was at all times material a disclosed agent for MSC S.A. and was not a party to any agreement with Ziegler, and owed no duty, contractual or otherwise, to Ziegler. This Court should also issue summary judgment in favor of MSC S.A. and MSC USA, if it has not been dismissed on other grounds, dismissing Ziegler's claims against MSC S.A. and MSC USA on the ground that they are time-barred by Section 3(6) of COGSA.

        Respectfully Submitted,

        */s/ Kevin P.Walters*
        Kevin P. Walters
        State Bar No. 20818000
        Federal I.D. No. 5649
        Richard A. Branca
        State Bar No. 24067177
        Federal I.D. No. 828076
        1600 Smith Street, Suite 5000
        Houston, Texas 77002
        Telephone: (713) 224-8380
        Facsimile: (713) 225-9945
        kevin.walters@roystonlaw.com
        richard.branca@roystonlaw.com

        ATTORNEYS FOR DEFENDANTS
        MEDITERRANEAN SHIPPING
        COMPANY, S.A. AND MEDITERRANEAN
        SHIPPING COMPANY (USA), INC.

OF COUNSEL:
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 17th day of March, 2017, I served a true and correct copy of the foregoing Mediterranean Shipping Company, S.A.'s and Mediterranean Shipping Company (USA), Inc.'s Motion for Summary Judgment, pursuant to Rule 5 of the Federal Rules of Civil Procedure and/or via the CM/ECF Filing System, which will automatically serve a notice of electronic filing, and/or by facsimile and/or by depositing the same in the United States Mail, postage prepaid and properly addressed to the following:

  Stacey L. Barnes
  Eric D'Olive
  LEWIS & BARNES
  5248 Larkin St., Suite A
  Houston, Texas 77007
  ***Attorneys for Plaintiff***

  Daniel L. Fulkerson
  LORANCE & THOMPSON, P.C.
  2900 N. Loop West, Suite 500
  Houston, Texas 77092
  ***Attorneys for Defendant Masterpiece International Limited***

  Bradley L. DeLuca
  Adam R. Diamond
  JOHNSON DELUCA KURISKY & GOULD, P.C.
  1221 Lamar Street, Suite 1000
  Houston, Texas 77010
  ***Attorneys for Defendant Graebel Movers International Inc.***

  A.C.T. Logistics LLC
  253-10 Northern Blvd.
  Littleneck, New York 11362
  Attn: Ms. Anne Chang

  William Sean O'Neil
  W. Sean O'Neil, Attorney at Law
  1880 S. Dairy Ashford Rd., Suite 208
  Houston, Texas 77077-4759
  ***Attorneys for Defendant Courtney International Forwarding, Inc.***

Dana K. Martin
Daniela Oliveira
Hill Rivkins, LLP
55 Waugh Drive, Suite 1200
Houston, Texas 77007
***Attorneys for Defendant St. George Logistics***

    */s/ Kevin P.Walters*
Kevin P. Walters