# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ZIEGLER, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| SUBALIPACK (M) SDN BHD, | § | |
| A.C.T. LOGISTICS, LLC, | § | |
| MEDITERRANEAN SHIPPING | § | |
| COMPANY (USA), INC., | § | CIVIL ACTION NO. 4:16-cv-2598 |
| MEDITERRANEAN SHIPPING | § | |
| COMPANY, S.A., ST. GEORGE | § | |
| LOGISTICS, COURTNEY | § | |
| INTERNATIONAL FORWARDING, | § | |
| INC., MASTERPIECE | § | |
| INTERNATIONAL LIMITED, | § | |
| GRAEBEL MOVERS INT'L, INC. and | § | |
| JOHN DOES 1-3 | § | |
| **Defendants.** | § | |

## DECLARATION OF MARIA JOSE PANTOSIN

This Declaration is presented pursuant to 28 U.S.C. § 1746, which provides for the admission of a declaration as proper evidence.

I, Maria Jose Pantosin, declare as follows:

1. My name is Maria Jose Pantosin. I am over 18 years of age, of sound mind, and have never been convicted of a felony or crime of moral turpitude.

2. I am currently employed as Cargo claims assistant manager for defendant MSC Mediterranean Shipping Company (USA), Inc. ("MSC USA"). In my capacity as Cargo claims assistant manager for MSC USA, I am responsible for handling claims, among other things, including the handling of the instant cargo claims of plaintiff Robert Ziegler ("Ziegler"). Based upon my investigation and handling of Ziegler's claims and the documents and records in my file, which are maintained by MSC USA in the ordinary course of business, I have first-hand knowledge of relevant facts and circumstances surrounding this matter and am competent to make this Declaration.

3.      At all times material, defendant MSC was, and is, a corporation organized and existing under the laws of the state of New York with a place of business at 420 Fifth Avenue, 8th Floor, New York, New York 10018.

4.      At all times material, defendant Mediterranean Shipping Company S.A. ("MSC SA") was, and is, a foreign entity with a place of business in Geneva, Switzerland engaged in the business of transporting goods by water for hire. At all times material, MSC was, and is, a registered Vessel Operating Common Carrier with the United States Federal Maritime Commission. Accordingly, at all times material, MSC SA maintained, and maintains, a Tariff on file with the Federal Maritime Commission. MSC SA's Tariff may be located at:

        http://rates.descartes.com/pta/DxiServlet.WsServlet/login

5.      At all times material, MSC USA was, and is, MSC SA's United States General Agent for MSC SA.

6.      In its capacity as General Agent for MSC SA, MSC USA is MSC SA's agent for the following purposes, among others: handling cargo claims, canvassing and booking cargo, collecting ocean freight, performing ship's husbandry activities, and organizing loading/discharging activities for MSC SA vessels.

7.      Attached hereto as Exhibit 1 is a true and correct copy of the MSC USA's Terms and Conditions applicable to Ziegler's claims, which MSC USA maintains in the ordinary course of its business. MSC USA's Terms and Conditions specifically provide that MSC USA is the United States General Agent for MSC SA, which is consistent with my aforementioned statements. MSC USA's United States Terms and Conditions can be found online at: https://www.msc.com/usa/contract-of-carriage/agency-terms-conditions.

8.      Attached hereto as Exhibit 2 is a true and correct copy of MSC SA's "BL Standard Terms and Conditions," which MSC USA maintains in the ordinary course of business. MSC SA's BL Standard Terms and Conditions may be found online at https://www.msc.com/usa/contract-of-carriage/bl-standard-terms-conditions.

9.      Attached hereto as Exhibit 3 is a true and correct copy of the front and reverse side of MSC SA Bill of Lading No. MSCUPG309359 dated July 16, 2014 ("the Bill of Lading"), a copy of which MSC USA maintains in the ordinary course of business.

10.     The Bill of Lading provides that Container no. TCNU5760763 (the "Container") was to be transported by MSC SA, as carrier, from Port

Klang, Malaysia to Long Beach, California. The Bill of Lading further provides that Container's place of delivery is Houston, Texas.

11.     Contained in a box of the Bill of Lading entitled "PARTICULARS FURNISHED BY THE SHIPPER – NOT CHECKED BY THE CARRIER – CARRIER NOT RESPONSIBLE – See Clause 14" the contents of the Container are described as:

310 PACKAGE(S) OF 1) 309 PKGS OF USED HOUSEHOLD GOODS AND PERSONAL EFFECTS 2) 1 CRATE: USED MOTO BIKE MODEL:BMW RT1100 YEAR MAKE: 1997 CHA.NO.WB10418 A7VZC63323 ENG. NO.112EA22 976549 . . . .

12.     The Bill of Lading was prepared and maintained by MSC USA in its capacity as General Agent for MSC SA in the ordinary course of MSC USA's business and it is the ordinary course of MSC USA's business to contemporaneously record and maintain such information. Furthermore, the Bill of Lading indicates that it was to be signed by MSC USA "as Agent on behalf of the Carrier" MSC SA.

13.     MSC SA monitors the movements of all of its vessels as well as any containers loaded thereon or otherwise in its care, custody or control, including ports of call, dates of arrival, and dates of discharge. The information derived from monitoring the MSC SA vessels is inputted into an MSC SA database which is known as "MSC Tracking & Tracing." When this information is viewed or printed as to a particular vessel and a particular container, it is known as a Tracking and Tracing Report.

14.     I have attached hereto, as Exhibit 4, a true and correct copy of the Tracking and Tracing Report for the Container.

15.     The Tracking and Tracing Report for the Container was prepared and maintained by MSC USA in the ordinary course of its business and it is the ordinary course of MSC USA's business to contemporaneously record and maintain such information.

16.     From the subject Tracking and Tracing Report, it is clear that on July 3, 2014, and prior to the subject ocean carriage, the Container was delivered empty to the Shipper in Port Klang, Malaysia.

17.     Presumably thereafter the Container was stuffed with goods allegedly owned by Ziegler, and on July 11, 2014, the Container arrived back at the gate at Port Klang, Malaysia.

18.    On or about July 17, 2014, the Container was loaded aboard the feeder vessel ORION, Voyage HF429A, and on July 18, 2014, the Container was discharged from the ORION for transshipment at Singapore.

19.    On July 22, 2014, the Container was loaded aboard the MSC PAMELA, Voyage FG423F, at Singapore and was carried to the Port of Chiwan (Shenzhen), China where it was discharged on July 25, 2014.

20.    On July 30, 2014, the Container was transshipped and loaded aboard the MSC SOLA, Voyage FR430A at the Port of Chiwan on July 30, 2014, for trans-Pacific Ocean carriage.

21.    On August 17, 2014, the Container was discharged at the Port of Long Beach, California.

22.    On August 27, 2014, the Container was released and was loaded on a BNSF train at Los Angeles, California on or about September 4, 2014. The BNSF train departed Long Beach, California on September 6, 2014, for Houston, Texas.

23.    On September 9, 2014, the Container arrived at the rail ramp at Houston, Texas.

24.    Attached as Exhibit 5 is a true and correct copy of the MSC USA's Arrival Notice reflecting that the Container arrived at the Houston rail ramp on September 9, 2014.  Notably, the Arrival Notice provides that MSC USA were acting "*AS AGENTS FOR: MEDITERRANEAN SHIPPING CO.*"

25.    On August 11, 2014, a copy of the ARRIVAL NOTICE was provided to the following email address: info@actlogisticsinc.com.

26.    In addition, at no time whatsoever was MSC USA or MSC SA engaged by any individual or entity to arrange for clearance of the goods contained in the Container with U.S. Customs.  Rather, at all times material, MSC SA was acting as an ocean carrier and MSC USA was acting solely in the capacity as MSC SA's United States agent with respect to the transportation of the Container and its contents from Malaysia to Houston, Texas.

27.    Because the goods contained in the Container were not cleared through United States Customs within 15 days, on September 26, 2014, MSC USA transmitted a "Notification of Eligible General Order Merchandise" to U.S. Customs, defendant St. George Warehouse, and consignee and notify party defendant A.C.T. Logistics, Inc.  A true and correct copy of the Notification of Eligible General Order Merchandise is attached hereto as Exhibit 6.  The Notification of Eligible General Order Merchandise was

prepared and maintained by MSC USA in the ordinary course of its business and it is the ordinary course of MSC USA's business to contemporaneously record and maintain such information.

28.     By way of background, merchandise may be held under general order if the proper duties or taxes are not paid or if the owner fails to complete the required Customs paperwork. Goods will be held under general order if they remain un-cleared for more than fifteen days.

29.     After fifteen days, any general order merchandise will be moved to a bonded warehouse. The risk of transportation and storage of the goods remains with the owner of the merchandise. If the goods remain under general order for more than six months, the merchandise will be put up for auction or destroyed.

30.     Pursuant to 19 U.S.C. § 1490(a), whenever (A) the entry of any imported merchandise is not made within the time provided by law or by regulation prescribed by the secretary, the carrier . . . shall notify the bonded warehouse of such un-entered merchandise.

31.     Further, pursuant to 19 U.S.C. § 1490(a)(2), after notification . . . the bonded warehouse shall arrange for the transportation and storage of the merchandise at the risk and expense of the consignee.

32.     Under 19 CFR § 123.10, General Order Merchandise, paragraph (a) any merchandise or baggage regularly landed but not covered by a permit for its release shall be allowed to remain at the place of unlading until the 15th calendar day after landing. No later than 20 calendar days after landing, the owner or operator of the vehicle or the agent thereof shall notify Customs of any such merchandise or baggage for which entry has not been made.

33.     As such, the cargo is allowed to remain at the place of unlading until the 15th calendar day but not later than 20 calendar days. The carrier, here MSC SA, must notify Customs of such merchandise for which entry has not been made.

34.     In addition to the notification to Customs under 19 CFR § 123.10, the carrier shall provide notification of the presence of such unreleased and un-entered merchandise to a bonded warehouse certified by the port director as qualified to receive general order merchandise within 20 days from arrival. Thereafter, it is the responsibility of the bonded warehouse to arrange for the transportation and storage of the merchandise at the risk and expense of the consignee.

35.    After the expiration of 15 days from arrival at Houston, Texas, but before 20 days after arrival, MSC USA, by the Notification of Eligible General Order Merchandise (Ex. 6) dated Friday, September 26, 2014, advised the bonded warehouse, St. George Warehouse, and U.S. Customs, along with the consignee, A.C.T. Logistics, that the cargo under the MSC Bill of Lading MSCUPG309359 was eligible for general order.    In this Notification, MSC USA indicates that a lien notice (Customs Form 3485) will be filed for charges due to MSC SA once a shipment has been delivered to the GO warehouse.

36.    By a Lien Notice (Customs Form 3485) dated January 22, 2015, MSC USA, as agent of the Carrier, indicated charges of $4,870.00 were owing primarily for rail storage and ramp detention relating to the Container.

37.    These charges accrued after the expiration of the 15 days of free time and before the goods were moved to the general order warehouse and the Container was returned unstuffed.  I have annexed as Exhibit 7 a true and correct copy of the Lien Notice, which is maintained by MSC USA in the ordinary course of business.

38.    On October 3, 2014, the Container left the Houston rail facility after which it was presumably devanned by St. George Logistics.

39.    On October 9, 2014, the Container was returned empty to the container yard in Houston, Texas. (*See* Tracking and Tracing Report, attached hereto as Ex. 4.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 16 day of March, 2017.

Maria Jose Pantosin

# Exhibit 1

# MSC UNITED STATES TERMS & CONDITIONS

## Mediterranean Shipping Company (USA) Inc

**MEDITERRANEAN SHIPPING COMPANY (USA) INC.,** herein after referred to as 'MSC USA', with its head office located at 420, 5th Avenue (at 37th Street) – 8th Floor, New York, N.Y. 10018-2702, and with offices in Atlanta, GA; Baltimore, MD; Boston, MA; Charleston, S.C; Charlotte, NC; Chicago, IL; Cleveland, OH; Costa Mesa, CA; Detroit, MI; Houston, TX; Miami, FL; New Orleans, LA; Norfolk, VA; Warren, NJ is General Agent in U.S.A. for **MSC MEDITERRANEAN SHIPPING COMPANY S.A.** with its registered office at 12–14 Chemin Rieu, 1208 Geneva, Switzerland, herein after referred to as "MSC".

MSC USA is authorized to accept service of legal proceedings issued against MSC Mediterranean Shipping Company S.A. Geneva. MSC USA's authority in respect of such legal proceedings is limited to the acceptance of service only.

For Savannah, GA; Jacksonville, FL; New Jersey, Philadelphia, PA; Puerto Rico, San Francisco and Hamilton, Bermuda attorneys have been appointed to accept service of legal proceedings against MSC Mediterranean Shipping Company S.A. Geneva.
Please contact MSC USA New York office for attorneys' contact details.

Any and all cargo booked by MSC USA is for and on behalf of MSC Mediterranean Shipping Company S.A., Geneva.

In compliance with the Shipping Act of 1984, 46 U.S.C. App.§ 1701 et seq., MSC Mediterranean Shipping Company S.A. Geneva has, in its quality of Common Carrier, filed by the Administration of Federal Maritime Commission a copy of its Tariff containing the MSC Bill of Lading Terms, Conditions and Exceptions.

For any and all cargo booked, the Carrier is MSC Mediterranean Shipping Company S.A. (MSC) with its registered office at 12–14 Chemin Rieu, 1208 Geneva, Switzerland and the MSC Bill of Lading Terms, Conditions and Exceptions can be accessed through *https://www.msc.com/usa/contract-of-carriage/bl-standard-terms-conditions (https://www.msc.com/usa/contract-of-carriage/bl-standard-terms-conditions)*

**THE TERMS AND CONDITIONS OF THE CARRIER'S BILL OF LADING OR SEA WAYBILL (available at** *https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions (https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions)***) APPLY AS FROM THE ISSUANCE OF ANY BOOKING CONFIRMATION AS IF INCORPORATED BY REFERENCE AND THE FOLLOWING CONTRACT OF CARRIAGE CLAUSES FROM MSC BILL OF LADING ARE BROUGHT SPECIFICALLY TO THE CUSTOMER'S ATTENTION:**

> *6. U.S. TRADE CLAUSE*

> *6.1 - Notwithstanding the provisions of MSC B/L clause 5, for carriage to or from any port of the United States, its territories or possessions, or if suit is brought in the United States, this Bill of Lading shall have effect subject to the provisions of the COGSA and to the provisions of the*

*Pomerene Act regardless of whether said Act would apply of its own force. The provisions of the COGSA are incorporated herein and save as otherwise provided herein shall apply throughout the entire time the Goods are in the Carrier's custody, including before loading and after discharge as long as the Goods remain in the custody of the Carrier or its Subcontractors, including cargo carried on deck. Nothing contained herein is to be deemed a surrender by the Carrier of its rights, immunities, exemptions or limitations or an increase of any of its responsibilities or liabilities under the COGSA. Except for clause 5, every other term, condition, limitation, defense and liberty whatsoever contained in this Bill of Lading shall apply to carriage in the US Trades.*

*6.2 - For limitation purposes under the COGSA, it is agreed that the meaning of the word "package" shall be any palletized and/or unitized assemblage of cartons which has been palletized and/or unitized for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.*

*10.3 - **Jurisdiction** - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.*

**ANY BOOKING NOTE OR BOOKING CONFIRMATION ISSUED BY OR RECEIVED FROM MSC USA WILL BE SUBJECT TO THE TERMS AND CONDITIONS HEREUNDER**

## EXPORT PROCEDURE MSC USA

**1) Parties and contract terms -** This Booking Confirmation forms a contract between the Carrier and the Merchant as defined in the Contract of Carriage. "Merchant" includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person. Person: includes an individual, corporation, company or any other legal entity.

**2) Description of goods (clauses 14 and 15 of the Contract of Carriage) -** Should the description of the Goods provided at the time of booking or as amended be inaccurate, the Merchant is liable for all resulting increased charges, costs, expenses, losses and damages whatsoever.

**3) Goods, packing and container weights -** (a) Dangerous or hazardous Goods have been accepted by the Carrier in reliance of the Merchant s notice of their full and true nature. The Merchant s dangerous or hazardous goods declarations must be in the format required by all applicable regulations. (b) Goods include any packaging and any packing materials used to secure the cargo in the Container. It is the Merchant's responsibility to ensure that packaging and packing materials, especially timber, comply with all applicable requirements and their import is permitted in the country of destination. The weight of

packaging and packing must be included in the total weight declared for each Container. (c) Incorrectly declared weights of Goods directly affect the safety of the Vessel and all persons involved in the transportation of the Goods and the Merchant must take care to properly evaluate the weight of the Goods. (d) Overloaded Containers are not permitted to be carried by law and the Merchant must not exceed the maximum weight limit indicated on each Container. If the Merchant fails to comply with these provisions the Carrier reserves the right to deal with such Goods as it sees fit including but not limited to not loading the Goods, stopping Goods in transit, discharging at the next port and/or repacking them and levying extra charges, and the Merchant is strictly liable to indemnify the Carrier for all costs, losses, delays, damages, fines, increased charges and any other consequences whatsoever arising.

**4) Freight and charges -** Freight and charges are based on the instructions provided at the date of this Booking Confirmation and may change if the shipper's instructions change. Unless otherwise agreed in advance, the applicable tariff for freight and charges for the Goods is the tariff in effect as at the date the Carrier takes possession of the Goods. The Carrier reserves the right to amend the freight and charges if the Carrier s tariff changes after the date hereof up until the Carrier takes possession of the Goods.

**5) Use of booking agents -** Where the Merchant uses a booking agent, the Merchant warrants that the booking agent has the authority to enter into this contract, receive original bills of lading and provide confirming instructions to the Carrier, until the Merchant advises the Carrier otherwise in writing.

**6) Damage to cargo due to atmospheric conditions -** Save where Goods are carried in an operating refrigerated Container, the Carrier has no liability whatsoever for loss or damage to the Goods caused by variations in atmospheric conditions (e.g., temperature, humidity).

**7) Container seal(s) -** Notwithstanding the provision of Container seal(s) by the Carrier, it is the Merchant's responsibility to ensure the type of Seal affixed to the Container(s) is in compliance with all applicable regulations. Shippers to affix, upon stuffing of cargo inside the containers, seals on the container doors, in compliance with International Organization for Standardization / Publicly Available Specification 17712 (ISO / PAS 17712) failing which, all cost and consequences arising out of Shippers failure to affix such seals shall be for Shippers account.

**8) Fumigation / phytosanitary -** It is the Merchant's responsibility to provide fumigation and/or phytosanitary certificates in good time for presentation to authorities as required and the Merchant is responsible for all consequences of failing to do so.

**9) Extra charges -** The Merchant is advised that extra charges may be levied by local authorities in addition to the freight and charges listed on Page 1 or described in the Carrier's tariff and payable before the Goods can be delivered. The Carrier may be required to collect the extra charges on behalf of the local authorities.

**10) Sanctions and import/export control legislation -** It is the Merchant's responsibility to ensure that this Booking Confirmation complies with all applicable trade sanctions and import/export control laws ( Sanctions ). The Merchant is strictly liable to indemnify the Carrier for all costs, losses, damages and consequences whatsoever arising out of any failure by the Merchant to comply with Sanctions. Carrier reserves the right to ensure compliance with Sanctions applicable to the Carrier.

**11) Sending/postage of Bills of Lading and Sea Waybills –** Issued Bills of Lading or Sea Waybills are

available for collection by the Merchant at the MSC Agency office. Should the Merchant request them to be sent, this shall be at the sole Merchant's risk and expense and neither the Carrier not MSC USA shall accept any liability whatsoever for the delay or loss of such parcel.

**12) Mode of transport, vessel, and voyage number -** The information provided in these fields is anticipated at the time of the booking. Carrier reserves the right to change any of them.

**13) Late customs declaration fines -** It is the Merchant's responsibility to file customs declarations and if the Carrier is fined in consequence of the Merchant's late, incomplete or erroneous filing the Merchant shall indemnify the Carrier for the fine and for all costs, losses and expenses whatsoever incidental thereto.

**14) Contract of carriage -** The information provided on this Booking Confirmation will be used to issue the Contract of Carriage

**15) Extra costs and liabilities for misdeclaration of cargo and/or weight –** Shippers are responsible for declaring the accurate nature and weight of the goods. MSC and its agents do not accept any liability for, and Shippers agree to indemnify MSC and its agents in respect of, any loss or damage arising from, or in connection with, any inaccuracy in the nature or weight as declared by Shippers. Shippers must ensure that the weight of the goods packed inside the container does not exceed the maximum payload marked on the containers CSC Plate. MSC and its agents rely upon the weight information provided by Shippers and will not be liable for any loss or damage arising from reliance on this information, including any delays in delivery of the goods. Shippers agree to indemnify MSC and its agents against all liabilities arising from such reliance, and / or from a failure to provide the accurate weight of the goods. Any extra costs and financial consequences, whether direct or not and including but not limited to Cargo / Container re-stow on board the Vessel, caused by a mistake or omission of the Shippers in properly describing the cargo when it was booked or to details erroneously inserted by the Shippers in the Dock Receipt shall be for the sole account of the Shippers.

As per the SOLAS Convention (Safety of Life at Sea) it is mandatory for shippers to verify weights of packed containers, regardless of who packed the container. The verification of actual container weight must be obtained on-shore, and provided to the vessel operator and the port terminal facility prior (to VGM cut off)to the vessel loading process. Neither MSC nor MSC USA shall be responsible for any costs linked with the declaration of incorrect container weights.

**16) Mandatory filing / AES -** As of July 2, 2008, the US Census Bureau and US Customs Border Protection (USCBP) require mandatory filing of export information through the Automated Export System (AES) for all shipments at least 24 hours prior to the vessel arrival at the port of loading. In order to safely prepare the vessel stow plan, MSC has decided to institute a deadline for the AES ITN or MASTERS. The documentation deadline is 12PM, local POL time, two (2) days before the vessel scheduled arrival. MSC will not load cargo without proof of filing citation, exemption or exclusion.

**17) Rail ramp delivery -** Containers to be delivered at Rail Ramp will not be received sooner than 3 days from the Rail Ramp Cut-off Time advised by the Line with the exclusion of Chicago. If containers are in gated into a Rail Ramp before such time any and all cost that will arise from such action that will be passes to Shipper. Chicago Rail Ramp has a fixed four (4) days receiving policy as follows: N Atlantic and ECSA receive from

Monday to Thursday.

**18) Payment in foreign currency -** Any Prepaid Foreign Currency will be charged at the sail dates' exchange rate.

**19) Empty pick-up / Check of empty equipment / Removal of IMCO label –** In case of Merchant's Haulage, the Booking Party and Shipper are responsible for inspecting the empty container for its suitability to carry the specific shipment booked at the time of empty pick up from the depot/terminal either directly or via their truckers. Any later refusal of container will cause additional costs for account of the Merchant and neither MSC nor MSC USA shall be held liable for the costs of changing/replacing a container accepted during empty positioning unless the vice affecting the container was not detectable during a summary check; in which case the costs of the container changing shall be equally shared. Notwithstanding the above, a light-test is compulsory prior to each empty container's acceptance and no liability shall be borne by the Carrier or MSC USA for costs of exchanging a container found with any holes or cracks at a later stage.

The Booking Party, the Shipper and their trucker are jointly responsible to check that the empty container picked up at the depot is used for the booking confirmed by MSC USA for this specific container. Neither MSC nor MSC USA shall be responsible for any costs linked to the repatriation or additional on-carriage costs of wrongly swapped cargoes carried within correct containers due to a mistake during the empty pick-up.

Booking Party and Shipper are responsible for ensuring that all prior IMO (hazardous goods) placards and labels have been removed from the container before pick-up or latest during stuffing of its non-hazardous cargo. Costs resulting from neglect will be for the account of the Merchant.

**20) Receiving dates / times -** For receiving dates for a particular vessel Shippers need to check with Loading Terminal prior dispatching Trucker.

**21) Trucker delivery -** Before attempting full load delivery Trucker must verify that vessel is open for Receiving.

**22) Cut-off -** Hazardous Cargo Cut-off is 24 hours prior Regular Cut-off and Automobile Cut-off is 24 hours prior Regular Cut-off both at Port and Rail.

**23) Gate IN after closing time -** If Cargo is in gated after Deadline it will be accepted but may be subsequently rolled to following ship if Coast Guard or Customs procedures are not satisfied. Rollover and Re-Handle charge will be applied and payable by the Merchants.

**24) Compliance -** MSC will not be responsible for Non-Compliance with the Local Custom's Regulation on Forbidden Goods. The Shippers are bound to ensure prior booking that the cargo remitted to the Carrier is compliant with all applicable legislations and international sanctions at booking time and is maintained lawful under such regulations throughout the complete sea-voyage. Any costs or liability imposed on MSC due to a violation of this obligation or any charge arising from shipping of the Non-Import Allowed goods will be on Shippers' account

**25) Documentation fee at destination -** All Cargo Booked by MSC USA is subject to documentation fees due at Destination, in addition to other local charges, payable prior to Delivery. For further Information Shippers to please contact your local MSC agent.

**26) Booking and manifest corrections -** Shippers must contact MSC within 48 hours if any correction to the Cargo Booked.

**27) Container tracking -** Shippers can Track & Trace their containers through MSC Website at: *https://www.msc.com/usa/help-centre/tools/track-a-shipment (https://www.msc.com/usa/help-centre/tools/track-a-shipment)*

## 28) HAZARDOUS CARGO

**HAZARDOUS MISDECLARATION FEE –** A DGD (Dangerous Goods Declaration) must be submitted and approved prior to booking being confirmed by the line. Any inconsistencies between the Master Bill of Lading / Shipping instructions and submitted DGD will result in a misdeclaration hazardous fee of $300. Such liquidated damages for the extra work generated for MSC USA shall not prevent nor deprive MSC USA or MSC from their rights to recover from the Merchant any fines, costs or liabilities associated with the misdeclaration.

**HAZARDOUS NON-DECLARATION FEE AND CONSEQUENCES –** In case a container is booked as non-hazardous and upon departure is found to be hazardous, a non-declaration fee of $500 will be billed to the Shipper. Such liquidated damages for the extra work generated for MSC USA shall not prevent nor deprive MSC USA or MSC from their rights to recover from the Merchant any fines, costs or liabilities associated with the non-declaration of hazardous cargo.

**IMPORTANT: Even if a hazardous cargo booking is accepted by MSC in the first instance, MSC reserves the right to reject the shipment, since final approval is with the Vessel's Master.**

**29) Waste & scrap cargoes -** The Merchant is responsible to ensure that for each Booking of Waste and / or Scrap Cargo Importers and Exporters of Hazardous Wastes and / or Scrap Cargo complies with *applicable domestic laws and regulations (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Import_Export_requirements.pdf)*, which include regulations under the Resource Conservation and Recovery Act (*RCRA (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Hazardous_waste.pdf)*), contained in the Code of Federal Regulations (CFR), at 40 CFR Part 262, Subpart E and Subpart H and, where applicable, also complies with EU-Regulations 1013/2006 of 14th June 2006 on shipment of Waste: *http://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:32006R1013 (http://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:32006R1013)*

**30) Personal effects to Australia -** For Shipments to Australia **Personal Effect Shipments** should be consigned to a company or freight forwarder as consignee. The words "PERSONAL EFFECTS" must be recorded in the short description or form part of the shipper's description.

**31) Return of export containers -** A Dock Receipt is Mandatory for the return of Export Containers and there are no Exceptions.

**32) Refrigeration, heating, insulation -** Special Containers with refrigeration, heating or insulation shall not be furnished unless contracted for on the front of this Bill of Lading and extra Freight paid. If a carrying temperature is noted on the front of this Bill of Lading, the Merchant shall deliver the Goods to the Carrier at plus or minus 2 degrees Celsius from the noted temperature, and the Carrier shall exercise due diligence to maintain such supply air temperature, plus or minus 2 degrees Celsius while the Goods are in its possession. **IT IS THE MERCHANT'S OBLIGATION TO SET AND/OR CHECK THAT THE TEMPERATURE CONTROLS ON THE CONTAINER ARE AT THE REQUIRED CARRYING TEMPERATURE AND TO PROPERLY SET THE VENTS.** The Carrier does not undertake to deliver empty refrigerated Containers to the Merchant at any specific temperature. The Carrier has the right but not the obligation to refuse to accept any Container loaded by the Merchant for shipment where the Goods are not or were not loaded into the Container within plus or minus 2 degrees Celsius of the contracted carrying temperature. Please see further MSC B/L Terms, Conditions and Exceptions.\

**33) Freight and charges -** Freight has been calculated on the basis of the Shipper's particulars and if such particulars are found to be erroneous and additional Freight is payable, the Merchant shall be liable therefor and also for any expense thereby incurred. All Freight is earned and due upon receipt of the Goods by the Carrier, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under all circumstances, ship and/or cargo lost or not lost or the voyage abandoned. All Freight shall be paid when due without any set-off, counter claim, or deduction. Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.

**34) Choice of equipment -** The use of dry-van containers in lieu of reefer or temperature-controlled containers is left to the sole Merchant's appreciation and decision and the Carrier shall have no liability or responsibility whatsoever for thermal or condensation loss or damage to the goods sustained by reason of natural variations in atmospheric temperatures whether the cargo was carried on or under deck.

**35) Acknowledgement and acceptance of the MSC Terms and Conditions in case of Sea Waybills -** In consideration of Carrier issuing, at the booking party or the shipper's request, Sea Waybill instead of Bill of Lading for the contract of carriage of the cargo, the booking party and the shipper hereby indemnify the Carrier for all and any claims, losses, costs, expenses and liabilities of any nature whatsoever that arise in consequence of the use of a Sea Waybill instead of a Bill of Lading. The booking party and the shipper further undertake to ensure that the Consignee designated on the Sea Waybill receives a legible copy of, by fax or e-mail, and agrees to abide by, the terms, conditions, exceptions and limitations contained in the Carrier Sea Waybill as freely accessible under *www.msc.com (https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions)* and to inform the Consignee that a formal letter of acceptance of the MSC Sea Waybill Terms and Conditions will be requested from him at destination prior to delivery, being made expressly clear that oversight from MSC or its agent to obtain such a letter of acceptance prior release of the cargo shall not be deemed in any way as a waiver by MSC of its rights to rely upon, nor as a non-acceptance by the Consignee, of these Terms and Conditions

# IMPORT PROCEDURE MSC USA

**36) Compliance with CBP Requirements** - Pursuant to the authority of section 343(a) of the Trade Act of 2002 [The Maritime Transportation Security Act of 2002 (MTSA) (Pub. L. 107-295 (*http://legislink.org/us/pl-107-295 (http://www.legislink.org/us/pl-107-295)*)) an Act of Congress enacted by the 107th United States Congress to address port and waterway security, on January 26, 2009, the new rule titled 'Importer Security Filing and additional Carrier Requirements' (commonly known as "10+2") went into effect.

This new rule applies to import cargo arriving to the United States by vessel.

Under the new rule, before merchandise arriving by vessel can be imported into the United States the 'Importer Security Filing (ISF) Importer" or their agent (e.g. licensed customs broker), must electronically submit advance cargo information to CBP in the form of an Importer Security filing. The ISF Importer is the party causing the goods to arrive within the limits of a port in the United States by vessel. Typically, the ISF Importer is the goods' owner, purchaser, consignee, or agent such as a licensed customs broker. ISF Importers, or their agent, must provide eight data elements, no later than 24 hours before the cargo is laden aboard a vessel destined to the United States. Those data elements include: Seller, Buyer, Importer of record number / FTZ applicant identification number Consignee number(s), Manufacturer (or supplier), Ship to party, Country of origin, Commodity Harmonized Tariff Schedule of the United States (HTSUS) number.

All costs, Consequences, Penalties imposed by CBP for Importers failing to comply with above shall be for Merchants' / Shippers' / Consignees' account.

The U.S. Customs and Border Protection (CBP) Automated Commercial Environment (ACE M1) is both an imported merchandise inventory control system and a cargo release notification system. Ace M1 is interactive with other systems such as Automated Broker Interface (ABI) and the cargo Selectivity System. ACE M1 allows CBP to place and remove holds against Bills of lading, Specific containers, or entire manifests. Holds prevent the Carrier from releasing merchandise to the importer until the Carrier has received hold removal notifications through ACE M1. Demurrage / Detention on Cargo / Containers due to CBP Hold shall be for Merchant's account.

The U.S. Department of Agriculture's Animal and Plant Health Inspection Service (APHIS) has set standards for wood packaging material (WPM) imported into the U.S. through 7 CFR 319.40 – Importation of Wood Packaging Material. This rule states that all regulated wood packaging material shall be appropriately treated and marked under an official program developed and overseen by the National Plant Protection Organization (NPPO) in the country of export. WPM that arrives in the U.S. and is not compliant with these provisions must be immediately exported. There are no post-arrival treatment options. All expenses incurred by CBP in connection with Non-Compliant Wood Packing Material (NCWPM) removal will be billed to the Merchant. NCWPM and associated merchandise that is re-exported will be at the Merchant's expense.

**37) Merchant's Responsibility** - As per MSC Bill of Lading clause 14.6 the Merchant shall comply with all regulations or requirements of the customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.

No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars. The Carrier is not responsible for the accuracy of cargo information manifested since manifested cargo information is provided to carrier by Freight Forwarder / Shippers / Merchant.

**38) Import Free time** – As per MSC Bill of Lading clause 14.8 the Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, Per Diem and Detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff. In case of on-carriage, the Merchant's delivery instruction, together with all necessary documents for the performance of such transport, must reach MSC USA at least four working days prior estimated time of arrival (ETA) at discharge port in order to arrange the positioning. Merchant shall be held fully liable for delay and additional costs generated due to a disrespect of this obligation."

**39) Customs clearance** - All cargo must be 'Customs Cleared' by Merchant in order to be picked up. If cargo is not 'Customs Cleared' by 'Last Free Day', Merchant shall be liable for 'Demurrage / Detention' incurred on the Cargo / Container.

**40) Merchant Haulage** - On 'Merchant Haulage' Cargo / Containers, Merchant is required to hire Trucker(s) enrolled with and operating under the Terms, Conditions and Exceptions of the '*Uniform Intermodal Interchange and Facilities Access Agreement (UIIA) (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Uniform-Intermodal-Interchange.pdf)*' and any Addendum thereto, administered by The Intermodal Association of North America. *Please see copy of the Protocol attached (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Addendum-to-Uniform-Intermodal-Interchange.pdf)*. Trucker(s) hired by Merchant are required to have 'Transportation Worker Identification Credential (TWIC)' cards. [U.S. Congress directed the Federal Government, through the Maritime Transportation Security Act (MTSA), to issue a biometric security credential to individuals who require unescorted access to secure areas of facilities and vessels.]

**41) Notification and Delivery** - Any mention in MSC Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not subject the Carrier to any liability nor relieve the Merchant of any obligation hereunder.

**42) Extra on-carriage services** - As per MSC Bill of lading clause 5.2.3. Any transport that the Carrier arranges for the Merchant which is not part of the carriage under this Bill of Lading is done under the Merchant's own responsibility, time, risk and expense and the Carrier acts as agent only for the Merchant.

**43) Truck weight -** Code of Federal Regulations Title 23, Chapter 1, Subchapter G, Part §658.17 lays down Rules & Regulations about Truck Weights. Where MSC has contracted for Intermodal Inland Delivery, in order to comply with the local / Federal laws and in interest of Public Safety, MSC will not participate in the

transportation of any container that exceeds applicable over the road weight regulations. Any container where MSC is responsible for Inland Transportation Merchant must comply with local / Federal regulations. If any container exceeds weight regulations, that container will be re-handled to within the legal limits with all related and resultant charges shall be for Merchant's account. *Please see Protocol attached (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Road-Weight-Limitations-USA.pdf)*.

**44) Conditions for release of cargo** - If a negotiable (To Order / of) Bill of Lading was issued to Merchant , one original Bill of Lading, duly endorsed must be surrendered by the Merchant to the Carrier (together with outstanding Freight) in exchange for the Goods or a Delivery Order. If a non-negotiable (straight) Bill of Lading was issued to Merchant, the Carrier shall deliver the Goods or issue a Delivery Order (after payment of outstanding Freight) against the surrender of one original Bill of Lading, duly endorsed, at the Port of Discharge or Place of Delivery whichever is applicable. Any Demurrage / Detention incurred due to Merchant's failure to timely submit requisite documents shall be for Merchant's account.

**45) Pick-up procedure** - The Procedure for Pick Up of 'Import Loaded' container(s) at U.S.A. Terminals are:

- Valid Sea Link Card (number id)
- Container Number
- Bill of Lading Number
- License Plate Number

The Bill of lading number and container numbers are proprietary information and should not be shared with any Third Party by the Contracting Party.

**46) Availability check at Terminal** - Before attempting to pick up a container Merchant is required to check with the Terminal / Rail Ramp if the Container(s) is available and grounded. Certain Terminals have special Delivery requirement. Merchant is required to get familiarized with these requirements.

**47) Delay in delivery due to damage to the container** - As per MSC Bill of lading clause 11.2 (a) The Carrier shall not be liable for loss of or damage to the Goods caused by the manner in which the Goods have been packed, stowed, stuffed or secured in the Container. In case of load shift inside the container Merchant shall be responsible for all costs and consequences.

**48) Return shipments** - In case of returned cargo from overseas which had initially originated from U.S.A. this cargo must first be cleared with U.S. Customs before it is imported into U.S. or removed from the Terminal or Rail Ramp.

**49) Inland rail transportation** - In case of Delivery at an Inland Destination involving Rail Transportation, MSC USA will route container to Rail and send notification when container arrives destination Rail Ramp. 'Free Time' on 'Rail Ramp' is shorter than on Marine Terminals. Merchant is required to familiarize itself with Rail Road Ramp Free Time. Any delay in Merchant picking up its container once Free Time has expired shall be charged to Merchant as Rail Detention as per Rail Road Tariff.

**50) Empty redelivery** - As per MSC Bill of Lading clause 14.9 the Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odor free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any

and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon. Merchant shall be equally liable together with its appointed Tracker in case Equipment is lost, stolen, damaged or total loss while in the care and custody of Trucker and / or Merchant. Merchant shall be held equally liable with their assigned Intermodal Carrier for non-return or miss-delivery of MSC Equipment to a non-designated location.

**51) Unclaimed, Abandoned Cargoes (UAC)** - MSC USA shall abide by Customs and Border Patrol Regulations pertaining to General Order Merchandise, Unclaimed Merchandise, and Abandoned Merchandise, the Storage and Sale thereof, and the Distribution of Proceeds from Sale thereof. Regulations regarding the Abandonment of Merchandise by the Importer to the Government in accordance with section 506(1), Tariff Act of 1930, as amended (19 U.S.C. 1506(1). Any and all Fines, Penalties imposed by CBP on account of General Order Merchandise shall be for Merchants account. MSC USA reserves its rights to limit and recover any expenditure incurred by the Carrier due to UAC either by way of legal actions against the Merchant or by disposal or sale of the unclaimed cargo.

**52) Acknowledgement and acceptance of the MSC Terms and Conditions in case of Sea Waybills** - In case of Sea Waybills, no release of Cargo to the Consignee will be authorized until the Consignee named on Sea Waybill has irrevocably agreed to be party to the Contract of Carriage and accepted in writing the Terms and Conditions mentioned on page 1 and 2 of the MSC MEDITERRANEAN SHIPPING COMPANY SA Sea Waybill and under *www.msc.com (https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions)*. The attention of the Consignee is expressly referred to the terms of the clause 35 here above.

**53)** Delivery

1  The Merchant shall take delivery of the Goods within the time provided in the Carrier's applicable tariff referred to in Clause 3 of the MSC Bill of Lading and Sea Waybill Terms and Conditions.

2  Shall the Merchant fail to take delivery of the Goods within ten (10) days of the delivery becoming due under a) above, such delay shall be considered as unreasonable in the meaning of the clause 20 of the MSC Bill of Lading and Sea Waybill Terms and Conditions and the Carrier shall not thereafter have any further responsibilities or liability in respect of these goods.

3  Notwithstanding the above, the Carrier shall be entitled, without notice, to unpack the Goods and/or to store the Goods ashore, afloat, in the open or under cover, at the sole and entire risk of the Merchant and such storage shall constitute due delivery and the costs of such storage (if paid or payable by the Carrier or any agent or sub-contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

4  If, whether by act or omission, the Merchant directly or indirectly prevents, delay or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full and sole account.

## IMPORTANT

Although above Terms and Conditions are deemed to form part of all contracts between the Merchant and MSC via its local agent 'MSC USA', in case of any inconsistency between above Terms, Conditions and Exceptions, and the Terms, Conditions, and Exceptions of the MSC MEDITERRANEAN SHIPPING COMPANY S.A. Bill of lading and/or Sea Waybill, the latter shall prevail. Orders and instructions of the Merchant shall

be considered as his acknowledgement and acceptance of MSC Bill of lading Terms, Conditions and Exceptions incorporated therein. General Conditions of the Merchant will not be applicable and shall in anyway, and in any case, be superseded by MSC Bill of Lading Terms, Conditions and Exception. Deviations from MSC Bill of Lading Terms, Conditions and Exceptions, and in particular any general conditions of the Merchant shall not apply unless they have been explicitly agreed to in writing by the Carrier MSC Mediterranean Shipping Company S. A. Geneva.

# Exhibit 2

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

# BL STANDARD TERMS & CONDITIONS

## Bill of Lading FRONT

RECEIVED by the Carrier in apparent good order and condition (unless otherwise stated herein) the total number or quantity of Containers or other packages or units indicated in the box entitled Carrier's Receipt for carriage subject to all the terms and conditions hereof from the Place of Receipt or Port of Loading to the Port of Discharge or Place of Delivery, whichever is applicable. IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT. If this is a negotiable (To Order / of) Bill of Lading, one original Bill of Lading, duly endorsed must be surrendered by the Merchant to the Carrier (together with outstanding Freight) in exchange for the Goods or a Delivery Order. If this is a non-negotiable (straight) Bill of Lading, the Carrier shall deliver the Goods or issue a Delivery Order (after payment of outstanding Freight) against the surrender of one original Bill of Lading or in accordance with the national law at the Port of Discharge or Place of Delivery whichever is applicable. IN WITNESS WHEREOF the Carrier or their Agent has signed the number of Bills of Lading stated at the top, all of this tenor and date, and wherever one original Bill of Lading has been surrendered all other Bills of Lading shall be void

## Bill of Lading REVERSE

Terms and conditions of MSC Mediterranean Shipping Company S.A.
Contract of Carriage continued from the reverse.
1) DEFINITIONS
2) CONTRACTING PARTIES AND WARRANTY
3) CARRIER'S TARIFF
4) SUBCONTRACTING AND INDEMNITY
5) CARRIER'S RESPONSIBILITY
6) U.S. TRADE CLAUSE
7) COMPENSATION AND LIABILITY PROVISIONS
8) SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES
9) METHODS AND ROUTES OF CARRIAGE
10) NOTICE OF CLAIMS, TIME BAR AND JURISDICTION
11) MERCHANT-PACKED CONTAINERS
12) REFRIGERATION, HEATING, INSULATION
13) INSPECTION OF GOODS AND SPECIAL CIRCUMSTANCES
14) DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY
15) DANGEROUS OR HAZARDOUS GOODS
16) FREIGHT AND CHARGES

MSC 000004

_17) CARRIER'S LIEN_
Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien
_18) OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK_
(/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies
_19) MATTERS ADVERSELY AFFECTING CARRIER'S PERFORMANCE_
(/usa/cookie-policy).
_20) NOTIFICATION AND DELIVERY_
_21) BOTH TO BLAME COLLISION CLAUSE_
_22) GENERAL AVERAGE AND SALVAGE_
_23) SEPARABILITY AND VARIATION OF TERMS, FINAL CONTRACT_

## 1. DEFINITIONS

The following definitions shall apply in this Bill of Lading:

Carrier: means MSC Mediterranean Shipping Company S.A..

COGSA: means the U.S. Carriage of Goods by Sea Act, 1936.

Combined Transport: arises if the Carrier has indicated a Place of Receipt and/or a Place of Delivery on the front hereof in the relevant spaces. Combined Transport consists of a Port-to-Port carriage and Inland Transport.

Container: includes any container, trailer, transportable tank, flat or pallet, or any similar article used to consolidate Goods and any connected or accessory equipment.

Freight: includes the freight and all charges, costs and expenses whatsoever payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading, including storage, per diem and demurrage.

Goods: includes the whole or any part of the cargo carried under this Bill of Lading, including any packing or packaging materials and Merchant owned or leased Containers.

Hague Rules: means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924 with the express exclusion of Article 9.

Hague–Visby Rules: means the provisions of The Hague Rules 1924 as Amended by the Protocol adopted at Brussels on 23 February 1968, and 21st December 1979 (SDR Protocol) where applicable. Notwithstanding anything to the contrary herein it is expressly agreed that nothing herein shall contractually apply the Hague-Visby Rules to this Bill of Lading and they shall apply only when compulsorily applicable by the law governing this Bill of Lading.

Inland Transport: means carriage during Combined Transport other than between the Port of Loading and the Port of Discharge.

Merchant: includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person.

Person: includes an individual, corporation, company or any other legal entity.

MSC 000005

Place of Delivery: means the place at which the Carrier has contracted to deliver the Goods, when such place is other than the Port of Discharge.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

Place of Receipt: means the place at which the Carrier has contracted to receive the Goods, when such place is other than the Port of Loading.

Pomerene Act: means the United States Federal Bill of Lading Act, 1916 49 U.S.C. 801 or any amendments thereto.

Port-to-Port carriage: means carriage between the Port of Loading and the Port of Discharge.

Subcontractor: includes but is not limited to the owners, charterers and operators of the Vessel(s) other than the Carrier, as well as stevedores, terminals and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the carriage and any direct or indirect Subcontractors, servants and agents thereof whether in direct contractual privity or not.

Vessel: includes the vessel named herein or any substituted vessel, feeder vessel, lighter or other watercraft utilized by the Carrier for carriage by sea.

## 2. CONTRACTING PARTIES AND WARRANTY

The contract evidenced by this Bill of Lading is between the Carrier and the Merchant. Every Person defined as "Merchant" is jointly and severally liable towards the Carrier for all the various undertakings, responsibilities and liabilities of the Merchant under or in connection with this Bill of Lading and to pay the Freight due under it without deduction or set-off. The Merchant warrants that in agreeing to the terms and conditions in this Bill of Lading, he is the owner of the Goods or he does so with the authority of the owner of the Goods or of the Person entitled to the possession of the Goods or of this Bill of Lading.

## 3. CARRIER'S TARIFF

The terms and conditions of the Carrier's applicable Tariff are incorporated into this Bill of lading. Particular attention is drawn to terms and conditions concerning additional charges including demurrage, per diem, storage expenses and legal fees, etc. A copy of the applicable Tariff can be obtained from the Carrier or its agent upon request and the Merchant is deemed to know and accept such Tariff. In the case of any conflict or inconsistency between this Bill of Lading and the applicable Tariff, it is agreed that this Bill of Lading shall prevail.

## 4. SUBCONTRACTING AND INDEMNITY

4.1 The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the carriage, including liberty to further sub-contract.

MSC 000006

4.2 The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any Vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the carriage of the Goods whether or not arising out of negligence on the part of such Person. If any such claim or allegation should nevertheless be made, the Merchant agrees to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and Subcontractor shall have the benefit of all terms and conditions of whatsoever nature contained herein or otherwise benefiting the Carrier under this Bill of Lading, as if such terms and conditions were expressly for their benefit. In entering into this contract, the Carrier, to the extent of such terms and conditions, does so on its own behalf and also as agent and trustee for such servants, agents and Subcontractors.

4.3 The provisions of clause 4.2, including but not limited to the undertaking of the Merchant contained therein, shall extend to all claims or allegations of whatsoever nature against other Persons chartering space on the Vessel.

4.4 The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the carriage of the Goods other than in accordance with the terms and conditions of this Bill of Lading, whether or not arising out of negligence or misdelivery on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.


**5. CARRIER'S RESPONSIBILITY**

5.1 Port-to-Port carriage – If carriage under this Bill of Lading is Port-to-Port:

(a) The period of responsibility of the Carrier for any loss of or damage to the Goods shall commence only at the moment that the Goods are loaded on board the Vessel and shall end when the Goods have been discharged from the Vessel.

(b) This Bill of Lading shall be subject to the Hague Rules unless the governing law makes the Hague or the Hague-Visby Rules compulsorily applicable in which case the said Hague or Hague-Visby Rules will apply to this Bill of Lading only to the extent that they are compulsorily applicable.

(c) Notwithstanding the above, in case and to the extent that the governing law, or a contractual arrangement, or custom and practice, or any court or tribunal decision extends the Carrier's period of responsibility whether in contract, tort, bailment or otherwise to all or any part of the period before loading, or the period after discharge, including for misdelivery, then Carrier shall have the benefit of every right, defence, immunity, limitation and liberty provided for in the Hague Rules during such additional period of responsibility, notwithstanding that the loss, damage or misdelivery did not occur during the carriage by sea.

5.2 Combined Transport – The Carrier's liability for Combined Transport shall be as follows: 5.2.1 Where the loss or damage occurred during the Port-to-Port section of the carriage, the liability of the Carrier is in accordance with clause 5.1 above.

MSC 000007

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

5.2.2 Where the loss or damage occurred during Inland Transport, the liability of the Carrier shall be determined:

(a) by the provisions contained in any international convention, national law or regulation applicable to the means of transport utilized, if such convention, national law or regulation would have been compulsorily applicable in the case where a separate contract had been made in respect to the particular stage of transport concerned, or

(b) where no international convention, national law or regulation would have been compulsorily applicable, by the contract of carriage issued by the Subcontractor carrier for that stage of transport, including any limitations and exceptions contained therein, which contract the Merchant and the Carrier adopt and incorporate by reference, it being agreed that the Carrier's rights and liabilities shall be the same as those of the Subcontractor carrier, but in no event whatsoever shall the Carrier's liability exceed GBP 100 sterling legal tender per package, or

(c) if any court shall determine that no international convention, national law or regulation would have been compulsorily applicable and that the Carrier may not determine its liability, if any, by reference to the applicable Subcontractor's contract of carriage or where said Subcontractor carrier does not have a contract of carriage, then it is contractually agreed as between the Merchant and the Carrier that the Carrier's liability shall be determined as if the loss and/or damage complained of occurred during the Port-to-Port section of carriage as provided at 5.1 above, but in no event whatsoever shall the Carrier's liability exceed GBP 100 sterling legal tender per package.

(d) If the place of loss or damage cannot be established by the Merchant, then the loss or damage shall be presumed to have occurred during the Port-to-Port section of carriage and the Carrier's liability shall be determined as provided at 5.1 above.

5.2.3 Any transport that the Carrier arranges for the Merchant which is not part of the carriage under this Bill of Lading is done under the Merchant's own responsibility, time, risk and expense and the Carrier acts as agent only for the Merchant.

5.3 Delivery to Customs or Port Authorities – Where any law or regulation applicable at the Port of Discharge or Place of Delivery provides that delivery of the Goods to the Merchant shall or may be effected by the customs or port authorities at the Port of Discharge or Place of Delivery, notwithstanding anything to the contrary herein, delivery of the Goods by the Carrier to such customs or port authorities shall be deemed to be lawful delivery of the Goods by the Carrier to the Merchant and the Carrier shall not be liable for any loss of or damage to the Goods which occurs for any reason whatsoever after delivery of the Goods by the Carrier to the customs or port authorities.

## 6. U.S. TRADE CLAUSE

6.1 Notwithstanding the provisions of clause 5, for carriage to or from any port of the United States, its territories or possessions, or if suit is brought in the United States, this Bill of Lading shall have effect subject to the provisions of the COGSA and to the provisions of the Pomerene Act regardless of whether said Act would apply of its own force. The provisions of the COGSA are incorporated herein and save as

otherwise provided herein shall apply throughout the entire time the Goods are in the Carrier's custody,
including before loading and after discharge as long as the Goods remain in the custody of the Carrier or its
Subcontractors, including cargo carried on deck. Nothing contained herein is to be deemed a surrender by
the Carrier of its rights, immunities, exemptions or limitations or an increase of any of its responsibilities or
liabilities under the COGSA. Except for clause 5, every other term, condition, limitation, defence and liberty
whatsoever contained in this Bill of Lading shall apply to carriage in the US Trades.

6.2 For limitation purposes under the COGSA, it is agreed that the meaning of the word "package" shall be
any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the
convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.


**7. COMPENSATION AND LIABILITY PROVISIONS**

7.1 Subject always to the Carrier's right to limit liability as provided for herein, if the Carrier is liable for
compensation in respect of loss of or damage to the Goods, such compensation shall be calculated by
reference to the invoice value of the Goods, plus Freight and insurance if paid. If there is no invoice value of
the Goods or if any such invoice is not bona fide, such compensation shall be calculated by reference to the
market value of such Goods at the place and time they are delivered or should have been delivered to the
Merchant. The market value of the Goods shall be fixed according to the current market price, by reference
to the normal value of goods of the same kind and/or quality.

7.2 Save as is provided in clause 7.3:

7.2.1 (a) If and to the extent the Hague Rules or Hague-Visby Rules are compulsorily applicable to this Bill of
Lading by virtue of clauses 5.1, 5.2.1 or 5.2.2 (c) or (d) or otherwise, the Carrier's liability for breaches or
wrongs occurring during such period of compulsory application shall in no event whatsoever exceed the
amounts provided in the Hague Rules or Hague-Visby Rules, whichever are compulsorily applicable.

(b) If and to the extent the Hague Rules apply only contractually pursuant to clause 5, the Carrier's
maximum liability shall in no event whatsoever exceed GBP 100 sterling lawful currency per package or
unit.

7.2.2 Where COGSA applies by virtue of clause 6, neither the Carrier nor the Vessel shall in any event be or
become liable in an amount exceeding US$500 per package or per customary freight unit.

7.3 The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods.
Higher compensation than that provided for in this Bill of Lading may be claimed only when, with the
written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the
Carrier has been stated by the Carrier in the box marked "Declared Value" on the front of this Bill of Lading
and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the
limits provided in this Bill of Lading. Any partial loss or damage shall be adjusted pro rata on the basis of
such Declared Value.

7.4 Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection,
defence, exemption or limitation of liability authorised by any applicable laws, statutes or regulations of any
country or which would have been applicable in the absence of any of the terms set out in this Bill of

Lading. The Carrier shall have the benefit of the said laws, statutes or regulations as if it were the owner of the Vessel.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

7.5 When any claim is paid by the Carrier to the Merchant, the Carrier shall be automatically subrogated to all rights of the Merchant against any third party. The Merchant shall sign a subrogation receipt, release and indemnity immediately when requested by the Carrier.

## 8. SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES

The scope of voyage herein contracted for may or may not include usual or customary or advertised ports of call whether named in this Bill of Lading contract or not and may include transport of the Goods to or from any facilities used by the Carrier as part of the carriage, including but not limited to off-dock storage. The Carrier does not promise or undertake to load, carry or discharge the Goods on or by any particular Vessel, date or time. Advertised sailings and arrivals are only estimated times, and such schedules may be advanced, delayed or cancelled without notice. In no event shall the Carrier be liable for consequential damages or for any delay in scheduled departures or arrivals of any Vessel or other conveyances used to transport the Goods by sea or otherwise. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed the Freight paid for the carriage.

## 9. METHODS AND ROUTES OF CARRIAGE

9.1 The Carrier may at any time and without notice to the Merchant:

(a) use any means of transport or storage whatsoever;

(b) transfer the Goods from one conveyance to another including transhipping or carrying the Goods on a Vessel other than the Vessel named on the front hereof or by any other means of transport whatsoever, even though transhipment or forwarding of the Goods by such means may not have been contemplated or provided for herein;

(c) sail without pilots, proceed via any route (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the Port of Loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the Port of Discharge once or more often;

(d) load and unload the Goods at any place or port (whether or not any such port is named on the front hereof as the Port of Loading or Port of Discharge) and store the Goods at any such port or place, including but not limited to the use of off-dock storage at any port;

(e) comply with any orders or recommendations given by any government or authority or any Person or body purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions.

9.2 The liberties set out in clause 9.1 may be invoked by the Carrier for any purpose whatsoever whether or not connected with the carriage of the Goods, including but not limited to loading or unloading other goods, bunkering or embarking or disembarking any Person(s), undergoing repairs and/or drydocking, towing or being towed, assisting other vessels, making trial trips and adjusting instruments. Anything done or not done in accordance with clause 9.1 or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

## 10. NOTICE OF CLAIMS, TIME BAR AND JURISDICTION

10.1 Notice - of loss or damage to Goods shall be given in writing to the Carrier or its agent at the Port of Discharge before or at the time of delivery. If the loss or damage is not apparent before or at the time of delivery, notice must be given within three (3) days of delivery to the Merchant or its agent. Claims shall be submitted in writing addressed by the Merchant to the Carrier's agent at the Port of Discharge.

10.2 Time bar - In any event, the Carrier shall be discharged from all liability if suit is not commenced within one (1) year after delivery of the Goods or the date that the Goods should have been delivered for claims related to loss or damage during the Port-to-Port carriage, and for claims related to loss or damage during Inland Transport the shorter of nine (9) months or any time limit provided for by any applicable international convention, national law, regulation or contract by virtue of clauses 5.2.2 (a) or (b).

10.3 Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.

In the case of any dispute relating to Freight or other sums due from the Merchant to the Carrier, the Carrier may, at its sole option, bring suit against the Merchant in the fora agreed above, or in the countries of the Port of Loading, Port of Discharge, Place of Delivery or in any jurisdiction where the Merchant has a place of business.

## 11. MERCHANT-PACKED CONTAINERS

If a Container has not been packed by or on behalf of the Carrier:

11.1 The Merchant shall inspect the Container for suitability for carriage of the Goods before packing it. The Merchant's use of the Container shall be prima facie evidence of its being sound and suitable for use.

11.2 The Carrier shall not be liable for loss of or damage to the Goods caused by:

(a) the manner in which the Goods have been packed, stowed, stuffed or secured in the Container, or

MSC 000011

(b) the unsuitability of the Goods for carriage in the Container supplied or for carriage by Container between the Ports or Places specified herein, or

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

(c) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Merchant at or prior to the time when the Container was packed, or

(d) packing refrigerated Goods that are not properly pre-cooled to the correct temperature for carriage or before the refrigerated Container has been properly pre-cooled to the correct carrying temperature.

11.3 The Merchant is responsible for the packing and sealing of all Merchant-packed Containers and, if a Merchant-packed Container is delivered by the Carrier with an original seal as affixed by the Merchant or customs or security control intact, or the Carrier can establish bona fide circumstances in which the original seal was replaced, the Carrier shall not be liable for any shortage of Goods ascertained upon delivery.

11.4 The Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more of the matters referred to in clause 11. 2, including but not limited to damage to Container, other cargo and the Vessel.


## 12. REFRIGERATION, HEATING, INSULATION

12.1 Special Containers with refrigeration, heating or insulation shall not be furnished unless contracted for on the front of this Bill of Lading and extra Freight paid. If a carrying temperature is noted on the front of this Bill of Lading, the Merchant shall deliver the Goods to the Carrier at plus or minus 2 degrees Celsius from the noted temperature, and the Carrier shall exercise due diligence to maintain such supply air temperature, plus or minus 2 degrees Celsius while the Goods are in its possession. IT IS THE MERCHANT'S OBLIGATION TO SET AND/OR CHECK THAT THE TEMPERATURE CONTROLS ON THE CONTAINER ARE AT THE REQUIRED CARRYING TEMPERATURE AND TO PROPERLY SET THE VENTS. The Carrier does not undertake to deliver empty refrigerated Containers to the Merchant at any specific temperature. The Carrier has the right but not the obligation to refuse to accept any Container loaded by the Merchant for shipment where the Goods are not or were not loaded into the Container within plus or minus 2 degrees Celsius of the contracted carrying temperature.

12.2 The Merchant must take note that refrigerated Containers are not designed:

(a) to cool or freeze Goods which have been loaded into a Container at a temperature higher than their designated carrying temperature. The Carrier shall not be responsible for the consequences of the Goods being loaded at a higher temperature than that required for the carriage; nor

(b) to monitor and control humidity levels, even if a setting facility exists, and because humidity is influenced by many external factors the Carrier does not guarantee and is not responsible for the maintenance of any intended level of humidity inside any Container.

MSC 000012

12.3 The Carrier shall not be liable for any loss or damage to the Goods arising from latent defects, breakdown, defrosting, stoppage of the refrigerating or any other specialised machinery, plant, insulation and/or apparatus of the Container and any other facilities, provided that the Carrier exercised due diligence before releasing the empty Container to the Shipper.

12.4 The Carrier does not warrant refrigeration or heating machinery, but shall exercise care in its operation and maintenance while in the actual possession of the Carrier. The Carrier will not accept responsibility for the recording of temperatures in any form other than any reefer log book maintained on board the Vessel. The Carrier does not accept to comply with any governmental program or protocol unless noted on the front hereof and additional Freight is paid.

## 13. INSPECTION OF GOODS AND SPECIAL CIRCUMSTANCES

Inspection - The Carrier shall be entitled, but shall be under no obligation, to open and/or scan any package or Container at any time and to inspect, verify and weigh the contents without notice to the Merchant.

Special circumstances - If it appears at any time that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as his agent only) take any measures and/or incur any reasonable additional expense to carry or to continue the carriage of the Goods, and/or to sell or dispose of them and/or to abandon the carriage and/or to store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier in its absolute discretion considers most appropriate, and any sale, disposal, abandonment or storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

## 14. DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY

14.1 This Bill of Lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carriers Receipt" on the front hereof.

14.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

14.3 The Merchant warrants to the Carrier that the particulars relating to the Goods as set out on the front hereof have been checked by or on behalf of the Merchant on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Merchant, are adequate and correct. The Merchant warrants that the Goods are safely and securely packed in the Container.

14.4. The Merchant also warrants that the Goods and/or Merchant-packed Containers are lawful Goods, contain no contraband, drugs, other illegal substances or stowaways, and that any hazardous or potentially dangerous characteristics of the Goods have been fully disclosed by or on behalf of the Merchant and that they will not cause loss, damage or expense to the Carrier, or to any other cargo, Containers, Vessel or Person during the carriage.

14.5 If any particulars of any letter of credit and/or import license and/or sales contract and/or invoice or order number and/or details of any contract to which the Carrier is not a party are shown on the front hereof, such particulars are shown at the sole risk of the Merchant and for his convenience. The Merchant agrees that such particulars shall not be regarded as a declaration of value and shall in no circumstances whatsoever increase the Carrier's liability under this Bill of Lading, and the Merchant agrees to indemnify the Carrier for any increased liability so caused, including reasonable legal expenses and costs.

14.6 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.

14.7 If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever, including but not limited to a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will not be liable for any loss or damage whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay. The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

14.8 The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff.

14.9 The Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odour free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon.

## 15. DANGEROUS OR HAZARDOUS GOODS

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

15.1 The Carrier will not accept any Goods of a dangerous or hazardous nature without prior written notice of their full and true particulars and the Carrier's written approval to carry them.

When the Merchant delivers Goods of a dangerous or hazardous nature to the Carrier, the Merchant shall fully inform the Carrier in writing of the precise and accurate details of the Goods, and special precautions or handling required for the Goods. Such Goods shall be distinctly marked on the outside of the Container as well as on the outside of the packaging inside the Container so as to indicate the nature thereof and the marking must comply with the requirements of any applicable regulations, including regulations contained in any relevant international treaty or convention.

15.2 The Merchant shall be fully liable for and shall indemnify, hold harmless and defend the Carrier, its servants, agents and subcontractors and any third party for all loss, damage, delay, personal injury, death or expenses including fines and penalties, and all reasonable legal expenses and costs caused to the Carrier, the Vessel, any cargo, and other property, whether on board or ashore, arising from such Goods and/or from the breach of clause 15.1, whether or not the Merchant was aware of the nature of such Goods.

15.3 Nothing contained in this clause shall deprive the Carrier of any of its rights provided for elsewhere.


## 16. FREIGHT AND CHARGES

16.1 Freight has been calculated on the basis of the Shipper's particulars and if such particulars are found to be erroneous and additional Freight is payable, the Merchant shall be liable therefor and also for any expense thereby incurred.

16.2 All Freight is earned and due upon receipt of the Goods by the Carrier, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under all circumstances, ship and/or cargo lost or not lost or the voyage abandoned. All Freight shall be paid when due without any set-off, counter claim, or deduction.

16.3 Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.


## 17. CARRIER'S LIEN

The Carrier, its servants or agents shall have a lien on the Goods and any document relating thereto for Freight and for general average contributions to whomsoever due. The Carrier, its servants or agents shall also have a lien against the Merchant on the Goods and any document relating thereto for all sums due

from the Merchant to the Carrier under any other contract. The Carrier may exercise its lien at any time and any place in its sole discretion, through the action of any servant, agent or Subcontractor, whether the contractual carriage is completed or not. The Carrier's lien shall also extend to cover the cost and legal expense of recovering any sums due. The Carrier shall have the right to sell any Goods liened by public auction or private treaty, without notice to the Merchant. Nothing herein shall prevent the Carrier from recovering from the Merchant the difference between the amount due to the Carrier and the net amount realised by such sale.

**18. OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK**

18.1 Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Merchant unless it is specifically stipulated on the front hereof that the Containers or Goods will be carried under deck. If carried on deck, the Carrier shall not be required to note, mark or stamp on the Bill of Lading any statement of such on-deck carriage. Save as provided in clause 18.2 such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of Goods for the purpose of the Hague Rules or the COGSA or any compulsorily applicable legislation and shall be carried subject to such Rules or Act, whichever is applicable.

18.2. Goods which are out of gauge and/or are stowed on or in open top containers, flatracks or platforms, and which are stated on the front hereof to be carried on deck, and all livestock whether carried on deck or under deck, are carried without any responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and the Hague Rules or the COGSA shall not apply.

**19. MATTERS ADVERSELY AFFECTING CARRIER'S PERFORMANCE**

19.1 If at any time the carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of whatsoever kind and howsoever arising which cannot be avoided by the Carrier by the exercise of reasonable endeavours, (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for the carriage) the Carrier may at its sole discretion and without notice to the Merchant and whether or not the carriage is commenced either:

(a) carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this Bill of Lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery; or

(b) suspend the carriage of the Goods and store them ashore or afloat upon the terms and conditions of this Bill of Lading and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension; or

(c) abandon the carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, or from which the Carrier is unable by the exercise of reasonable endeavours to continue the carriage, whereupon the responsibility of the Carrier in respect of

such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the carriage, and the Merchant shall pay any additional costs incurred by reason of the abandonment of the Goods. If the Carrier elects to use an alternative route under clause 19.1 (a) or to suspend the carriage under clause 19.1 (b) this shall not prejudice its right subsequently to abandon the carriage.

19.2 If the Carrier elects to invoke the terms of this clause 19, then notwithstanding the provisions of clause 9, the Carrier shall be entitled to such additional Freight and costs as the Carrier may determine.

**20. NOTIFICATION AND DELIVERY**

20.1 Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not subject the Carrier to any liability nor relieve the Merchant of any obligation hereunder.

20.2 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as otherwise agreed. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in Containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, including for misdelivery or non-delivery, shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

20.3 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility attaching to it, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant under or in connection with this Bill of Lading.

20.4 Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute an absolute waiver and abandonment by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the carriage thereof. The Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the cleaning and disposal of Goods refused and/or abandoned by the Merchant.

**21. BOTH TO BLAME COLLISION CLAUSE**

If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the Goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said Goods, paid or payable by the other or non-carrying ship or her owners to the owners of said Goods and set-off, recouped or recovered by the

other or non-carrying ship or her owners as part of their claim against the Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

## 22. GENERAL AVERAGE AND SALVAGE

General Average shall be adjusted, stated and settled at any port or place at the Carrier's option according to York - Antwerp Rules 1994 except Rule XXII and, as to matters not therein provided for, according to the laws and usages at any port or place at the Carrier's option. General Average on a Vessel not operated by the Carrier shall be adjusted according to the requirements of the operator of that Vessel. Average agreement or bond and such cash deposit (payable at Carrier's option in United States currency) as the Carrier may require as additional security for the contribution of the Goods and salvage and special charges thereon, shall be furnished before delivery or forwarding.

In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall, jointly and severally, contribute with the Carrier in General Average to the payment of any sacrifices, losses, or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods, as determined by an independent General Average adjuster duly appointed by the Carrier, and his determination as to liability for General Average contribution and his computation for the same shall be final and binding on all parties to the venture. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salvaging ship or ships belonged to strangers. Such deposit as the Carrier or its agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the Goods, Shippers, Consignees or owners of the Goods to the Carrier before delivery.

## 23. SEPARABILITY AND VARIATION OF TERMS, FINAL CONTRACT

The terms of this Bill of Lading shall be separable and, if any term or provision hereof or any part of any term or provision shall be invalid to any extent, it shall be invalid to that extent, but no further and such circumstance shall not affect the validity or enforceability of any other term or provision hereof. This Bill of Lading is the final contract between the parties which supersedes any prior agreement or understanding, whether in writing or verbal, save where this Bill of Lading has been issued pursuant to another contract between the Merchant and the Carrier, when such other contract and this Bill of Lading shall be construed together. This Bill of Lading and its terms and conditions may not be changed orally.

MSC 000018

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

# MSC UNITED STATES TERMS & CONDITIONS

## Mediterranean Shipping Company (USA) Inc

**MEDITERRANEAN SHIPPING COMPANY (USA) INC.**, herein after referred to as 'MSC USA', with its head office located at 420, 5th Avenue (at 37th Street) – 8th Floor, New York, N.Y. 10018-2702, and with offices in Atlanta, GA; Baltimore, MD; Boston, MA; Charleston, S.C; Charlotte, NC; Chicago, IL; Cleveland, OH; Costa Mesa, CA; Detroit, MI; Houston, TX; Miami, FL; New Orleans, LA; Norfolk, VA; Warren, NJ is General Agent in U.S.A. for **MSC MEDITERRANEAN SHIPPING COMPANY S.A.** with its registered office at 12–14 Chemin Rieu, 1208 Geneva, Switzerland, herein after referred to as "MSC".

MSC USA is authorized to accept service of legal proceedings issued against MSC Mediterranean Shipping Company S.A. Geneva. MSC USA's authority in respect of such legal proceedings is limited to the acceptance of service only.

For Savannah, GA; Jacksonville, FL; New Jersey, Philadelphia, PA; Puerto Rico, San Francisco and Hamilton, Bermuda attorneys have been appointed to accept service of legal proceedings against MSC Mediterranean Shipping Company S.A. Geneva.
Please contact MSC USA New York office for attorneys' contact details.

Any and all cargo booked by MSC USA is for and on behalf of MSC Mediterranean Shipping Company S.A., Geneva.

In compliance with the Shipping Act of 1984, 46 U.S.C. App.§ 1701 et seq., MSC Mediterranean Shipping Company S.A. Geneva has, in its quality of Common Carrier, filed by the Administration of Federal Maritime Commission a copy of its Tariff containing the MSC Bill of Lading Terms, Conditions and Exceptions.

For any and all cargo booked, the Carrier is MSC Mediterranean Shipping Company S.A. (MSC) with its registered office at 12–14 Chemin Rieu, 1208 Geneva, Switzerland and the MSC Bill of Lading Terms, Conditions and Exceptions can be accessed through *https://www.msc.com/usa/contract-of-carriage/bl-standard-terms-conditions (https://www.msc.com/usa/contract-of-carriage/bl-standard-terms-conditions)*

**THE TERMS AND CONDITIONS OF THE CARRIER'S BILL OF LADING OR SEA WAYBILL (available at *https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions (https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions)*) APPLY AS FROM THE ISSUANCE OF ANY BOOKING CONFIRMATION AS IF INCORPORATED BY REFERENCE AND THE FOLLOWING CONTRACT OF CARRIAGE CLAUSES FROM MSC BILL OF LADING ARE BROUGHT SPECIFICALLY TO THE CUSTOMER'S ATTENTION:**

*6. U.S. TRADE CLAUSE*

*6.1 - Notwithstanding the provisions of MSC B/L clause 5, for carriage to or from any port of the United States, its territories or possessions, or if suit is brought in the United States, this Bill of Lading shall have effect subject to the provisions of the COGSA and to the provisions of the Pomerene Act regardless of whether said Act would apply of its own force. The provisions of the COGSA are incorporated herein and save as otherwise provided herein shall apply throughout the entire time the Goods are in the Carrier's custody, including before loading and after discharge as long as the Goods remain in the custody of the Carrier or its Subcontractors, including cargo carried on deck. Nothing contained herein is to be deemed a surrender by the Carrier of its rights, immunities, exemptions or limitations or an increase of any of its responsibilities or liabilities under the COGSA. Except for clause 5, every other term, condition, limitation, defense and liberty whatsoever contained in this Bill of Lading shall apply to carriage in the US Trades.*

*6.2 - For limitation purposes under the COGSA, it is agreed that the meaning of the word "package" shall be any palletized and/or unitized assemblage of cartons which has been palletized and/or unitized for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.*

*10.3 - Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.*

**ANY BOOKING NOTE OR BOOKING CONFIRMATION ISSUED BY OR RECEIVED FROM MSC USA WILL BE SUBJECT TO THE TERMS AND CONDITIONS HEREUNDER**

## EXPORT PROCEDURE MSC USA

**1) Parties and contract terms -** This Booking Confirmation forms a contract between the Carrier and the Merchant as defined in the Contract of Carriage. "Merchant" includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person. Person: includes an individual, corporation, company or any other legal entity.

**2) Description of goods (clauses 14 and 15 of the Contract of Carriage) -** Should the description of the Goods provided at the time of booking or as amended be inaccurate, the Merchant is liable for all resulting increased charges, costs, expenses, losses and damages whatsoever.

**3) Goods, packing and container weights -** (a) Dangerous or hazardous Goods have been accepted by the Carrier in reliance of the Merchant s notice of their full and true nature. The Merchant s dangerous or hazardous goods declarations must be in the format required by all applicable regulations. (b) Goods

MSC 000020

include any packaging and any packing materials used to secure the cargo in the Container. It is the Merchant's responsibility to ensure that packaging and packing materials, especially timber, comply with all applicable requirements and their import is permitted in the country of destination. The weight of packaging and packing must be included in the total weight declared for each Container. (c) Incorrectly declared weights of Goods directly affect the safety of the Vessel and all persons involved in the transportation of the Goods and the Merchant must take care to properly evaluate the weight of the Goods. (d) Overloaded Containers are not permitted to be carried by law and the Merchant must not exceed the maximum weight limit indicated on each Container. If the Merchant fails to comply with these provisions the Carrier reserves the right to deal with such Goods as it sees fit including but not limited to not loading the Goods, stopping Goods in transit, discharging at the next port and/or repacking them and levying extra charges, and the Merchant is strictly liable to indemnify the Carrier for all costs, losses, delays, damages, fines, increased charges and any other consequences whatsoever arising.

**4) Freight and charges -** Freight and charges are based on the instructions provided at the date of this Booking Confirmation and may change if the shipper's instructions change. Unless otherwise agreed in advance, the applicable tariff for freight and charges for the Goods is the tariff in effect as at the date the Carrier takes possession of the Goods. The Carrier reserves the right to amend the freight and charges if the Carrier s tariff changes after the date hereof up until the Carrier takes possession of the Goods.

**5) Use of booking agents -** Where the Merchant uses a booking agent, the Merchant warrants that the booking agent has the authority to enter into this contract, receive original bills of lading and provide confirming instructions to the Carrier, until the Merchant advises the Carrier otherwise in writing.

**6) Damage to cargo due to atmospheric conditions -** Save where Goods are carried in an operating refrigerated Container, the Carrier has no liability whatsoever for loss or damage to the Goods caused by variations in atmospheric conditions (e.g., temperature, humidity).

**7) Container seal(s) -** Notwithstanding the provision of Container seal(s) by the Carrier, it is the Merchant' s responsibility to ensure the type of Seal affixed to the Container(s) is in compliance with all applicable regulations. Shippers to affix, upon stuffing of cargo inside the containers, seals on the container doors, in compliance with International Organization for Standardization / Publicly Available Specification 17712 (ISO / PAS 17712) failing which, all cost and consequences arising out of Shippers failure to affix such seals shall be for Shippers account.

**8) Fumigation / phytosanitary -** It is the Merchant's responsibility to provide fumigation and/or phytosanitary certificates in good time for presentation to authorities as required and the Merchant is responsible for all consequences of failing to do so.

**9) Extra charges -** The Merchant is advised that extra charges may be levied by local authorities in addition to the freight and charges listed on Page 1 or described in the Carrier's tariff and payable before the Goods can be delivered. The Carrier may be required to collect the extra charges on behalf of the local authorities.

**10) Sanctions and import/export control legislation -** It is the Merchant's responsibility to ensure that this Booking Confirmation complies with all applicable trade sanctions and import/export control laws ( Sanctions ). The Merchant is strictly liable to indemnify the Carrier for all costs, losses, damages and consequences whatsoever arising out of any failure by the Merchant to comply with Sanctions. Carrier

reserves the right to ensure compliance with Sanctions applicable to the Carrier.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

**11) Sending/postage of Bills of Lading and Sea Waybills –** Issued Bills of Lading or Sea Waybills are available for collection by the Merchant at the MSC Agency office. Should the Merchant request them to be sent, this shall be at the sole Merchant's risk and expense and neither the Carrier not MSC USA shall accept any liability whatsoever for the delay or loss of such parcel.

**12) Mode of transport, vessel, and voyage number -** The information provided in these fields is anticipated at the time of the booking. Carrier reserves the right to change any of them.

**13) Late customs declaration fines -** It is the Merchant's responsibility to file customs declarations and if the Carrier is fined in consequence of the Merchant's late, incomplete or erroneous filing the Merchant shall indemnify the Carrier for the fine and for all costs, losses and expenses whatsoever incidental thereto.

**14) Contract of carriage -** The information provided on this Booking Confirmation will be used to issue the Contract of Carriage

**15) Extra costs and liabilities for misdeclaration of cargo and/or weight –** Shippers are responsible for declaring the accurate nature and weight of the goods. MSC and its agents do not accept any liability for, and Shippers agree to indemnify MSC and its agents in respect of, any loss or damage arising from, or in connection with, any inaccuracy in the nature or weight as declared by Shippers. Shippers must ensure that the weight of the goods packed inside the container does not exceed the maximum payload marked on the containers CSC Plate. MSC and its agents rely upon the weight information provided by Shippers and will not be liable for any loss or damage arising from reliance on this information, including any delays in delivery of the goods. Shippers agree to indemnify MSC and its agents against all liabilities arising from such reliance, and / or from a failure to provide the accurate weight of the goods. Any extra costs and financial consequences, whether direct or not and including but not limited to Cargo / Container re-stow on board the Vessel, caused by a mistake or omission of the Shippers in properly describing the cargo when it was booked or to details erroneously inserted by the Shippers in the Dock Receipt shall be for the sole account of the Shippers.

As per the SOLAS Convention (Safety of Life at Sea) it is mandatory for shippers to verify weights of packed containers, regardless of who packed the container. The verification of actual container weight must be obtained on-shore, and provided to the vessel operator and the port terminal facility prior (to VGM cut off)to the vessel loading process. Neither MSC nor MSC USA shall be responsible for any costs linked with the declaration of incorrect container weights.

**16) Mandatory filing / AES -** As of July 2, 2008, the US Census Bureau and US Customs Border Protection (USCBP) require mandatory filing of export information through the Automated Export System (AES) for all shipments at least 24 hours prior to the vessel arrival at the port of loading. In order to safely prepare the vessel stow plan, MSC has decided to institute a deadline for the AES ITN or MASTERS. The documentation deadline is 12PM, local POL time, two (2) days before the vessel scheduled arrival. MSC will not load cargo without proof of filing citation, exemption or exclusion.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

**17) Rail ramp delivery -** Containers to be delivered at Rail Ramp will not be received sooner than 3 days from the Rail Ramp Cut-off Time advised by the Line with the exclusion of Chicago. If containers are in gated into a Rail Ramp before such time any and all cost that will arise from such action will be passes to Shipper. Chicago Rail Ramp has a fixed four (4) days receiving policy as follows: N Atlantic and ECSA receive from Monday to Thursday.

**18) Payment in foreign currency -** Any Prepaid Foreign Currency will be charged at the sail dates' exchange rate.

**19) Empty pick-up / Check of empty equipment / Removal of IMCO label –** In case of Merchant's Haulage, the Booking Party and Shipper are responsible for inspecting the empty container for its suitability to carry the specific shipment booked at the time of empty pick up from the depot/terminal either directly or via their truckers. Any later refusal of container will cause additional costs for account of the Merchant and neither MSC nor MSC USA shall be held liable for the costs of changing/replacing a container accepted during empty positioning unless the vice affecting the container was not detectable during a summary check; in which case the costs of the container changing shall be equally shared. Notwithstanding the above, a light-test is compulsory prior to each empty container's acceptance and no liability shall be borne by the Carrier or MSC USA for costs of exchanging a container found with any holes or cracks at a later stage.

The Booking Party, the Shipper and their trucker are jointly responsible to check that the empty container picked up at the depot is used for the booking confirmed by MSC USA for this specific container. Neither MSC nor MSC USA shall be responsible for any costs linked to the repatriation or additional on-carriage costs of wrongly swapped cargoes carried within correct containers due to a mistake during the empty pick-up.

Booking Party and Shipper are responsible for ensuring that all prior IMO (hazardous goods) placards and labels have been removed from the container before pick-up or latest during stuffing of its non-hazardous cargo. Costs resulting from neglect will be for the account of the Merchant.

**20) Receiving dates / times -** For receiving dates for a particular vessel Shippers need to check with Loading Terminal prior dispatching Trucker.

**21) Trucker delivery -** Before attempting full load delivery Trucker must verify that vessel is open for Receiving.

**22) Cut-off -** Hazardous Cargo Cut-off is 24 hours prior Regular Cut-off and Automobile Cut-off is 24 hours prior Regular Cut-off both at Port and Rail.

**23) Gate IN after closing time -** If Cargo is in gated after Deadline it will be accepted but may be subsequently rolled to following ship if Coast Guard or Customs procedures are not satisfied. Rollover and Re-Handle charge will be applied and payable by the Merchants.

**24) Compliance -** MSC will not be responsible for Non-Compliance with the Local Custom's Regulation on Forbidden Goods. The Shippers are bound to ensure prior booking that the cargo remitted to the Carrier is

compliant with all applicable legislations and international sanctions at booking time and is maintained lawful under such regulations throughout the complete sea-voyage. Any costs or liability imposed on MSC due to a violation of this obligation or any charge arising from shipping of the Non-Import Allowed goods will be on Shippers' account

*Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).*

**25) Documentation fee at destination -** All Cargo Booked by MSC USA is subject to documentation fees due at Destination, in addition to other local charges, payable prior to Delivery. For further Information Shippers to please contact your local MSC agent.

**26) Booking and manifest corrections -** Shippers must contact MSC within 48 hours if any correction to the Cargo Booked.

**27) Container tracking -** Shippers can Track & Trace their containers through MSC Website at: *https://www.msc.com/usa/help-centre/tools/track-a-shipment (https://www.msc.com/usa/help-centre/tools/track-a-shipment)*

## 28) HAZARDOUS CARGO

**HAZARDOUS MISDECLARATION FEE –** A DGD (Dangerous Goods Declaration) must be submitted and approved prior to booking being confirmed by the line. Any inconsistencies between the Master Bill of Lading / Shipping instructions and submitted DGD will result in a misdeclaration hazardous fee of $300. Such liquidated damages for the extra work generated for MSC USA shall not prevent nor deprive MSC USA or MSC from their rights to recover from the Merchant any fines, costs or liabilities associated with the misdeclaration.

**HAZARDOUS NON-DECLARATION FEE AND CONSEQUENCES –** In case a container is booked as non-hazardous and upon departure is found to be hazardous, a non-declaration fee of $500 will be billed to the Shipper. Such liquidated damages for the extra work generated for MSC USA shall not prevent nor deprive MSC USA or MSC from their rights to recover from the Merchant any fines, costs or liabilities associated with the non-declaration of hazardous cargo.

**IMPORTANT: Even if a hazardous cargo booking is accepted by MSC in the first instance, MSC reserves the right to reject the shipment, since final approval is with the Vessel's Master.**

**29) Waste & scrap cargoes -** The Merchant is responsible to ensure that for each Booking of Waste and / or Scrap Cargo Importers and Exporters of Hazardous Wastes and / or Scrap Cargo complies with *applicable domestic laws and regulations (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Import_Export_requirements.pdf)*, which include regulations under the Resource Conservation and Recovery Act (*RCRA (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Hazardous_waste.pdf)*), contained in the Code of Federal Regulations (CFR), at 40 CFR Part 262, Subpart E and Subpart H and, where applicable, also complies with EU-Regulations 1013/2006 of 14th June 2006 on shipment of Waste: *http://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:32006R1013 (http://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:32006R1013)*

MSC 000024

**30) Personal effects to Australia -** For Shipments to Australia **Personal Effect Shipments** should be consigned to a company or freight forwarder as consignee. The words "PERSONAL EFFECTS" must be recorded in the short description or form part of the shipper's description.

**31) Return of export containers -** A Dock Receipt is Mandatory for the return of Export Containers and there are no Exceptions.

**32) Refrigeration, heating, insulation -** Special Containers with refrigeration, heating or insulation shall not be furnished unless contracted for on the front of this Bill of Lading and extra Freight paid. If a carrying temperature is noted on the front of this Bill of Lading, the Merchant shall deliver the Goods to the Carrier at plus or minus 2 degrees Celsius from the noted temperature, and the Carrier shall exercise due diligence to maintain such supply air temperature, plus or minus 2 degrees Celsius while the Goods are in its possession. **IT IS THE MERCHANT'S OBLIGATION TO SET AND/OR CHECK THAT THE TEMPERATURE CONTROLS ON THE CONTAINER ARE AT THE REQUIRED CARRYING TEMPERATURE AND TO PROPERLY SET THE VENTS.** The Carrier does not undertake to deliver empty refrigerated Containers to the Merchant at any specific temperature. The Carrier has the right but not the obligation to refuse to accept any Container loaded by the Merchant for shipment where the Goods are not or were not loaded into the Container within plus or minus 2 degrees Celsius of the contracted carrying temperature. Please see further MSC B/L Terms, Conditions and Exceptions.\

**33) Freight and charges -** Freight has been calculated on the basis of the Shipper's particulars and if such particulars are found to be erroneous and additional Freight is payable, the Merchant shall be liable therefor and also for any expense thereby incurred. All Freight is earned and due upon receipt of the Goods by the Carrier, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under all circumstances, ship and/or cargo lost or not lost or the voyage abandoned. All Freight shall be paid when due without any set-off, counter claim, or deduction. Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.

**34) Choice of equipment -** The use of dry-van containers in lieu of reefer or temperature-controlled containers is left to the sole Merchant's appreciation and decision and the Carrier shall have no liability or responsibility whatsoever for thermal or condensation loss or damage to the goods sustained by reason of natural variations in atmospheric temperatures whether the cargo was carried on or under deck.

**35) Acknowledgement and acceptance of the MSC Terms and Conditions in case of Sea Waybills -** In consideration of Carrier issuing, at the booking party or the shipper's request, Sea Waybill instead of Bill of Lading for the contract of carriage of the cargo, the booking party and the shipper hereby indemnify the Carrier for all and any claims, losses, costs, expenses and liabilities of any nature whatsoever that arise in consequence of the use of a Sea Waybill instead of a Bill of Lading. The booking party and the shipper further undertake to ensure that the Consignee designated on the Sea Waybill receives a legible copy of, by fax or e-mail, and agrees to abide by, the terms, conditions, exceptions and limitations contained in the Carrier Sea Waybill as freely accessible under *www.msc.com (https://www.msc.com/usa/contract-of-*

MSC 000025

*carriage/seawaybill-terms-conditions)* and to inform the Consignee that a formal letter of acceptance of the MSC Sea Waybill Terms and Conditions will be requested from him at destination prior to delivery, being made expressly clear that oversight from MSC or its agent to obtain such a letter of acceptance prior release of the cargo shall not be deemed in any way as a waiver by MSC of its rights to rely upon, nor as a non-acceptation by the Consignee, of these Terms and Conditions

## IMPORT PROCEDURE MSC USA

**36) Compliance with CBP Requirements** - Pursuant to the authority of section 343(a) of the Trade Act of 2002 [The Maritime Transportation Security Act of 2002 (MTSA) (Pub. L. 107-295 (*http://legislink.org/us/pl-107-295 (http://www.legislink.org/us/pl-107-295)*)) an Act of Congress enacted by the 107th United States Congress to address port and waterway security, on January 26, 2009, the new rule titled 'Importer Security Filing and additional Carrier Requirements' (commonly known as "10+2") went into effect.

This new rule applies to import cargo arriving to the United States by vessel.

Under the new rule, before merchandise arriving by vessel can be imported into the United States the 'Importer Security Filing (ISF) Importer" or their agent (e.g. licensed customs broker), must electronically submit advance cargo information to CBP in the form of an Importer Security filing. The ISF Importer is the party causing the goods to arrive within the limits of a port in the United States by vessel. Typically, the ISF Importer is the goods' owner, purchaser, consignee, or agent such as a licensed customs broker. ISF Importers, or their agent, must provide eight data elements, no later than 24 hours before the cargo is laden aboard a vessel destined to the United States. Those data elements include: Seller, Buyer, Importer of record number / FTZ applicant identification number Consignee number(s), Manufacturer (or supplier), Ship to party, Country of origin, Commodity Harmonized Tariff Schedule of the United States (HTSUS) number.

All costs, Consequences, Penalties imposed by CBP for Importers failing to comply with above shall be for Merchants' / Shippers' / Consignees' account.

The U.S. Customs and Border Protection (CBP) Automated Commercial Environment (ACE M1) is both an imported merchandise inventory control system and a cargo release notification system. Ace M1 is interactive with other systems such as Automated Broker Interface (ABI) and the cargo Selectivity System. ACE M1 allows CBP to place and remove holds against Bills of lading, Specific containers, or entire manifests. Holds prevent the Carrier from releasing merchandise to the importer until the Carrier has received hold removal notifications through ACE M1. Demurrage / Detention on Cargo / Containers due to CBP Hold shall be for Merchant's account.

The U.S. Department of Agriculture's Animal and Plant Health Inspection Service (APHIS) has set standards for wood packaging material (WPM) imported into the U.S. through 7 CFR 319.40 – Importation of Wood Packaging Material. This rule states that all regulated wood packaging material shall be appropriately treated and marked under an official program developed and overseen by the National Plant Protection Organization (NPPO) in the country of export. WPM that arrives in the U.S. and is not compliant with these provisions must be immediately exported. There are no post-arrival treatment options. All expenses incurred by CBP in connection with Non-Compliant Wood Packing Material (NCWPM) removal will be billed to the Merchant. NCWPM and associated merchandise that is re-exported will be at the Merchant's expense.

MSC 000026

**37) Merchant's Responsibility** - As per MSC Bill of Lading clause14.6 the Merchant shall comply with all regulations or requirements of the customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.

No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars. The Carrier is not responsible for the accuracy of cargo information manifested since manifested cargo information is provided to carrier by Freight Forwarder / Shippers / Merchant.

**38) Import Free time** – As per MSC Bill of Lading clause 14.8 the Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, Per Diem and Detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff. In case of on-carriage, the Merchant's delivery instruction, together with all necessary documents for the performance of such transport, must reach MSC USA at least four working days prior estimated time of arrival (ETA) at discharge port in order to arrange the positioning. Merchant shall be held fully liable for delay and additional costs generated due to a disrespect of this obligation."

**39) Customs clearance** - All cargo must be 'Customs Cleared' by Merchant in order to be picked up. If cargo is not 'Customs Cleared' by 'Last Free Day', Merchant shall be liable for 'Demurrage / Detention' incurred on the Cargo / Container.

**40) Merchant Haulage** - On 'Merchant Haulage' Cargo / Containers, Merchant is required to hire Trucker(s) enrolled with and operating under the Terms, Conditions and Exceptions of the '*Uniform Intermodal Interchange and Facilities Access Agreement (UIIA) (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Uniform-Intermodal-Interchange.pdf)*' and any Addendum thereto, administered by The Intermodal Association of North America. *Please see copy of the Protocol attached (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Addendum-to-Uniform-Intermodal-Interchange.pdf)*. Trucker(s) hired by Merchant are required to have 'Transportation Worker Identification Credential (TWIC)' cards. [U.S. Congress directed the Federal Government, through the Maritime Transportation Security Act (MTSA), to issue a biometric security credential to individuals who require unescorted access to secure areas of facilities and vessels.]

**41) Notification and Delivery** - Any mention in MSC Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not subject the Carrier to any liability nor relieve the Merchant of any obligation hereunder.

MSC 000027

**42) Extra on-carriage services -** As per MSC Bill of lading clause 5.2.3. Any transport that the Carrier arranges for the Merchant which is not part of the carriage under this Bill of Lading is done under the Merchant's own responsibility, time, risk and expense and the Carrier acts as agent only for the Merchant.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

**43) Truck weight -** Code of Federal Regulations Title 23, Chapter 1, Subchapter G, Part §658.17 lays down Rules & Regulations about Truck Weights. Where MSC has contracted for Intermodal Inland Delivery, in order to comply with the local / Federal laws and in interest of Public Safety, MSC will not participate in the transportation of any container that exceeds applicable over the road weight regulations. Any container where MSC is responsible for Inland Transportation Merchant must comply with local / Federal regulations. If any container exceeds weight regulations, that container will be re-handled to within the legal limits with all related and resultant charges shall be for Merchant's account. *Please see Protocol attached (/getattachment/usa/contract-of-carriage/Agency-Terms-Conditions/Road-Weight-Limitations-USA.pdf).*

**44) Conditions for release of cargo -** If a negotiable (To Order / of) Bill of Lading was issued to Merchant , one original Bill of Lading, duly endorsed must be surrendered by the Merchant to the Carrier (together with outstanding Freight) in exchange for the Goods or a Delivery Order. If a non-negotiable (straight) Bill of Lading was issued to Merchant, the Carrier shall deliver the Goods or issue a Delivery Order (after payment of outstanding Freight) against the surrender of one original Bill of Lading, duly endorsed, at the Port of Discharge or Place of Delivery whichever is applicable. Any Demurrage / Detention incurred due to Merchant's failure to timely submit requisite documents shall be for Merchant's account.

**45) Pick-up procedure -** The Procedure for Pick Up of 'Import Loaded' container(s) at U.S.A. Terminals are:

- Valid Sea Link Card (number id)
- Container Number
- Bill of Lading Number
- License Plate Number

The Bill of lading number and container numbers are proprietary information and should not be shared with any Third Party by the Contracting Party.

**46) Availability check at Terminal -** Before attempting to pick up a container Merchant is required to check with the Terminal / Rail Ramp if the Container(s) is available and grounded. Certain Terminals have special Delivery requirement. Merchant is required to get familiarized with these requirements.

**47) Delay in delivery due to damage to the container -** As per MSC Bill of lading clause 11.2 (a) The Carrier shall not be liable for loss of or damage to the Goods caused by the manner in which the Goods have been packed, stowed, stuffed or secured in the Container. In case of load shift inside the container Merchant shall be responsible for all costs and consequences.

**48) Return shipments -** In case of returned cargo from overseas which had initially originated from U.S.A. this cargo must first be cleared with U.S. Customs before it is imported into U.S. or removed from the Terminal or Rail Ramp.

MSC 000028

**49) Inland rail transportation** - In case of Delivery at an Inland Destination involving Rail Transportation, MSC USA will route container to Rail and send notification when container arrives destination Rail Ramp. 'Free Time' on 'Rail Ramp' is shorter than on Marine Terminals. Merchant is required to familiarize itself with Rail Road Ramp Free Time. Any delay in Merchant picking up its container once Free Time has expired shall be charged to Merchant as Rail Detention as per Rail Road Tariff.

**50) Empty redelivery** - As per MSC Bill of Lading clause 14.9 the Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odor free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon. Merchant shall be equally liable together with its appointed Tracker in case Equipment is lost, stolen, damaged or total loss while in the care and custody of Trucker and / or Merchant. Merchant shall be held equally liable with their assigned Intermodal Carrier for non-return or miss-delivery of MSC Equipment to a non-designated location.

**51) Unclaimed, Abandoned Cargoes (UAC)** - MSC USA shall abide by Customs and Border Patrol Regulations pertaining to General Order Merchandise, Unclaimed Merchandise, and Abandoned Merchandise, the Storage and Sale thereof, and the Distribution of Proceeds from Sale thereof. Regulations regarding the Abandonment of Merchandise by the Importer to the Government in accordance with section 506(1), Tariff Act of 1930, as amended (19 U.S.C. 1506(1). Any and all Fines, Penalties imposed by CBP on account of General Order Merchandise shall be for Merchants account. MSC USA reserves its rights to limit and recover any expenditure incurred by the Carrier due to UAC either by way of legal actions against the Merchant or by disposal or sale of the unclaimed cargo.

**52) Acknowledgement and acceptance of the MSC Terms and Conditions in case of Sea Waybills** - In case of Sea Waybills, no release of Cargo to the Consignee will be authorized until the Consignee named on Sea Waybill has irrevocably agreed to be party to the Contract of Carriage and accepted in writing the Terms and Conditions mentioned on page 1 and 2 of the MSC MEDITERRANEAN SHIPPING COMPANY SA Sea Waybill and under *www.msc.com (https://www.msc.com/usa/contract-of-carriage/seawaybill-terms-conditions)*. The attention of the Consignee is expressly referred to the terms of the clause 35 here above.

**53)** Delivery

1  The Merchant shall take delivery of the Goods within the time provided in the Carrier's applicable tariff referred to in Clause 3 of the MSC Bill of Lading and Sea Waybill Terms and Conditions.

2  Shall the Merchant fail to take delivery of the Goods within ten (10) days of the delivery becoming due under a) above, such delay shall be considered as unreasonable in the meaning of the clause 20 of the MSC Bill of Lading and Sea Waybill Terms and Conditions and the Carrier shall not thereafter have any further responsibilities or liability in respect of these goods.

3  Notwithstanding the above, the Carrier shall be entitled, without notice, to unpack the Goods and/or to store the Goods ashore, afloat, in the open or under cover, at the sole and entire risk of the Merchant and such storage shall constitute due delivery and the costs of such storage (if paid or payable by the Carrier or any agent or sub-contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

4  If, whether by act or omission, the Merchant directly or indirectly prevents, delay or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full and sole account.

Indem Sie unsere Webseite aufrufen, erklären Sie sich einverstanden mit unseren Datenschutzrichtlinien (/usa/privacy-policy), Geschäftsbedingungen (/usa/terms-conditions) und der Verwendung von Cookies (/usa/cookie-policy).

**IMPORTANT**

Although above Terms and Conditions are deemed to form part of all contracts between the Merchant and MSC via its local agent 'MSC USA', in case of any inconsistency between above Terms, Conditions and Exceptions, and the Terms, Conditions, and Exceptions of the MSC MEDITERRANEAN SHIPPING COMPANY S.A. Bill of lading and/or Sea Waybill, the latter shall prevail. Orders and instructions of the Merchant shall be considered as his acknowledgement and acceptance of MSC Bill of lading Terms, Conditions and Exceptions incorporated therein. General Conditions of the Merchant will not be applicable and shall in anyway, and in any case, be superseded by MSC Bill of Lading Terms, Conditions and Exception. Deviations from MSC Bill of Lading Terms, Conditions and Exceptions, and in particular any general conditions of the Merchant shall not apply unless they have been explicitly agreed to in writing by the Carrier MSC Mediterranean Shipping Company S. A. Geneva.

# Exhibit 3

See website for large version of the reverse | Ver página Web para términos y condiciones | Смотрите веб-сайт для ознакомления с условиями и положениями | 請申明的条款和条件详请见封物 | www.msc.com

| **m s c** MEDITERRANEAN SHIPPING COMPANY S.A. | **BILL OF LADING No.   MSCUPG309359** |
|---|---|
| Website: www.msc.com          SCAC Code : MSCU | **NON-NEGOTIABLE COPY**   "Port-to-Port" or "Combined Transport" (see Clause 1) |

| NO. & SEQUENCE OF ORIGINAL B/L's | NO. OF RIDER PAGES |
|---|---|
| 0    Of    Zero | 0 |

**SHIPPER:**
HONOUR LANE LOGISTICS SDN BHD

Q/B HONOUR LANE SHIPPING LTD. UNIT 908, BLOCK A, DAMANSARA
INTAN, NO.1 JALAN SS20/27, 47400 PETALING JAYA, SELANGOR,
MALAYSIA

**FORWARDING AGENT :**
HONOUR LANE LOGISTICS SDN BHD
UNIT 908, BLOCK A, DAMANSARA INTAN NO.1 JALAN SS20/27
PETALING JAYA, 47400     PHONE: 60377274886
FAX: 60377274882

**CONSIGNEE: This B/L is not negotiable unless marked "To Order / To Order of..." here.**
A.C.T. LOGISTICS, LLC

154-09 146TH AVENUE, 3RD FLOOR JAMAICA, NY 11434 USA TEL NO:
1-718-2761212 FAX NO: 1-718-2761199

**CARRIER'S AGENTS ENDORSEMENTS: (Include Agent(s) at POD)**

LLOYDS IMO NUMBER: 9401104

**NOTIFY PARTIES: (No responsibility shall attach to the Carrier or to his Agent for failure to notify - see Clause 20)**
A.C.T. LOGISTICS, LLC

154-09 146TH AVENUE, 3RD FLOOR JAMAICA, NY 11434 USA TEL NO:
1-718-2761212 FAX NO: 1-718-2761199

| VESSEL & VOYAGE NO. (see Clauses 8 & 9) | PORT OF LOADING | PLACE OF RECEIPT: (Combined Transport ONLY - see Clauses 1 & 5.2) |
|---|---|---|
| **MSC SOLA - 430A** | **PORT KLANG, MALAYSIA** | XXXXXXXXXXXXXXXX |

| BOOKING REF. | SERVICE CONTRACT NUMBER | PORT OF DISCHARGE | PLACE OF DELIVERY : (Combined Transport ONLY - see Clause 1 & 5.2) |
|---|---|---|---|
| | 14-252TPC | **LONG BEACH, CA** | **HOUSTON, TX** |

**PARTICULARS FURNISHED BY THE SHIPPER- NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE- See Clause 14**

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on attached Bill of Lading Rider page(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| TCNU5760763 SEAL NO: FEJ042736 | 310 PACKAGE(S) OF 1) 309 PKGS OF USED HOUSEH OLD GOODS AND PERSONAL EFF ECTS 2) 1 CRATE: USED MOTO BIKE MODEL:BMW RT1100 YEAR MAKE: 1997 CHA.NO.WB10418 A7VZC63323 ENG. NO.112EA22 976549 FREIGHT PREPAID | 7,000.000 KGS. 15,432.358 LBS. | 53.000 CU. M. 1,871.663 CU. FT. |
| | TOTAL : | 7,000.000 KGS 15,432.358 LBS | 53.000    CU. M. 1,871.663    CU.FT |
| V6002892142 | | | |
| | TOTAL NUMBER OF PACKAGES: 310 | | |

If above goods ll.es, technolgoy or software were exported fromthe UA, the export administration regulations must be complied with by the Merchant. Diversion, contrary to US law is prohibited.

| **FREIGHT & CHARGES**   Cargo shall not be delivered unless Freight & charges are paid (see Clause 16). | RECEIVED by the Carrier in apparent good order and condition (unless otherwise stated herein) the total number or quantity of Containers or other packages or units indicated in the box entitled Carrier's Receipt for carriage subject to all the terms and conditions hereof from the Place of Receipt or Port of Loading to the Port of Discharge or Place of Delivery, whichever is applicable. IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT.

If this is a negotiable (To Order / of) Bill of lading, one original Bill of Lading, duly endorsed must be surrendered by the Merchant to the Carrier (together with outstanding Freight and charges) in exchange for the Goods or a Delivery Order. If this is a non-negotiable (straight) Bill of Lading, the Carrier shall deliver the Goods or issue a Delivery Order (after payment of outstanding Freight and charges) against the surrender of one original Bill of Lading or in accordance with the national law at the Port of Discharge or Place of Delivery whichever is applicable.

IN WITNESS WHEREOF the Carrier or their Agent has signed the number of Bills of Lading stated at the top, all of this tenor and date, and wherever one original Bill of Lading has been surrendered all other Bills of Lading shall be void. |
|---|---|

| DECLARED VALUE (only applicable if Ad Valorem Charges paid - see Clause 7.3) XXXXXXXXXXXXXXXX | CARRIER'S RECEIPT (No. of Cntrs or Pkgs rcvd by Carrier - see Clause 14.1) **1 cntr** | SIGNED By MSC (USA) Inc. as Agent on behalf of the Carrier MSC Mediterranean Shipping Company S.A. |
|---|---|---|
| PLACE AND DATE OF ISSUE **16-JULY-2014** | SHIPPED ON BOARD DATE **16-JULY-2014** | |

U.S. Edition - 02/2016                    TERMS CONTINUED ON REVERSE J

MSC 000001

# MEDITERRANEAN SHIPPING COMPANY S.A.

Terms and conditions of MSC Mediterranean Shipping Company S.A.

# CONTRACT OF CARRIAGE

Contract of Carriage continued from the reverse.

## 1. DEFINITIONS

The following definitions shall apply in this Bill of Lading:

Carrier: means MSC Mediterranean Shipping Company S.A..
COGSA: means the U.S. Carriage of Goods by Sea Act, 1936.
Combined Transport: arises if the Carrier has indicated a Place of Receipt and/or a Place of Delivery on the front hereof in the relevant spaces. Combined Transport consists of a Port-to-Port carriage and Inland Transport.
Container: includes any container, trailer, transportable tank, flat or pallet, or any similar article used to consolidate Goods and any connected or accessory equipment.
Freight: includes the freight and all charges, costs and expenses whatsoever payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading, including storage, per diem and demurrage.
Goods: includes the whole or any part of the cargo carried under this Bill of Lading, including any packing or packaging materials and Merchant owned or leased Containers.
Hague Rules: means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924 with the express exclusion of Article 9.
Hague-Visby Rules: means the provisions of The Hague Rules 1924 as Amended by the Protocol adopted at Brussels on 23 February 1968, and 21st December 1979 (SDR Protocol) where applicable. Notwithstanding anything to the contrary herein it is expressly agreed that nothing herein shall contractually apply the Hague-Visby Rules to this Bill of Lading and they shall apply only when compulsorily applicable by the law governing this Bill of Lading.
Inland Transport: means carriage during Combined Transport other than between the Port of Loading and the Port of Discharge.
Merchant: includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person.
Person: includes an individual, corporation, company or any other legal entity.
Place of Delivery: means the place at which the Carrier has contracted to deliver the Goods, when such place is other than the Port of Discharge.
Place of Receipt: means the place at which the Carrier has contracted to receive the Goods, when such place is other than the Port of Loading.
Pomerene Act: means the United States Federal Bill of Lading Act, 1916 49 U.S.C. 801 or any amendments thereto.
Port-to-Port carriage: means carriage between the Port of Loading and the Port of Discharge.
Subcontractor: includes but is not limited to the owners, charterers and operators of the Vessel(s) other than the Carrier, as well as stevedores, terminals and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the carriage and any direct or indirect Subcontractors, servants and agents thereof whether in direct contractual privity or not.
Vessel: includes the vessel named herein or any substituted vessel, feeder vessel, lighter or other watercraft utilized by the Carrier for carriage by sea.

## 2. CONTRACTING PARTIES AND WARRANTY

The contract evidenced by this Bill of Lading is between the Carrier and the Merchant. Every Person defined as "Merchant" is jointly and severally liable towards the Carrier for all the various undertakings, responsibilities and liabilities of the Merchant under or in connection with this Bill of Lading and to pay the Freight due under it without deduction or set-off. The Merchant warrants that in agreeing to the terms and conditions in this Bill of Lading, he is the owner of the Goods or he does so with the authority of the owner of the Goods or of the Person entitled to the possession of the Goods or of this Bill of Lading.

## 3. CARRIER'S TARIFF

The terms and conditions of the Carrier's applicable Tariff are incorporated into this Bill of Lading. Particular attention is drawn to terms and conditions concerning additional charges including demurrage, per diem, storage expenses and legal fees, etc. A copy of the applicable Tariff can be obtained from the Carrier or its agent upon request and the Merchant is deemed to know and accept such Tariff. In the case of any conflict or inconsistency between this Bill of Lading and the applicable Tariff, it is agreed that this Bill of Lading shall prevail.

## 4. SUBCONTRACTING AND INDEMNITY

4.1 The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the carriage, including liberty to further sub-contract.
4.2 The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any Vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the carriage of the Goods whether or not arising out of negligence on the part of such Person. If any such claim or allegation should nevertheless be made, the Merchant agrees to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and Subcontractor shall have the benefit of all terms and conditions of whatsoever nature contained herein or otherwise benefiting the Carrier under this Bill of Lading, as if such terms and conditions were expressly for their benefit. In entering into this contract, the Carrier, to the extent of such terms and conditions, does so on its own behalf and also as agent and trustee for such servants, agents and Subcontractors.
4.3 The provisions of clause 4.2, including but not limited to the undertaking of the Merchant contained therein, shall extend to all claims or allegations of whatsoever nature against other Persons chartering space on the Vessel.
4.4 The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the carriage of the Goods other than in accordance with the terms and conditions of this Bill of Lading, whether or not arising out of negligence or misdelivery on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

## 5. CARRIER'S RESPONSIBILITY

5.1 Port-to-Port carriage – If carriage under this Bill of Lading is Port-to-Port:
(a) The period of responsibility of the Carrier for any loss of or damage to the Goods shall commence only at the moment that the Goods are loaded on board the Vessel and shall end when the Goods have been discharged from the Vessel.
(b) This Bill of Lading shall be subject to the Hague Rules unless the governing law makes the Hague or the Hague-Visby Rules compulsorily applicable in which case the said Hague or Hague-Visby Rules will apply to this Bill of Lading only to the extent that they are compulsorily applicable.
(c) Notwithstanding the above, in case and to the extent that the governing law, or a contractual arrangement, or custom and practice, or any court or tribunal decision extends the Carrier's period of responsibility whether in contract, tort, bailment or otherwise to all or any part of the period before loading, or the period after discharge, including for misdelivery, then Carrier shall have the benefit of every right, defence, immunity, limitation and liberty provided for in the Hague Rules during such additional period of responsibility, notwithstanding that the loss, damage or misdelivery did not occur during the carriage by sea.
5.2 Combined Transport – The Carrier's liability for Combined Transport shall be as follows:
5.2.1 Where the loss or damage occurred during the Port-to-Port section of the carriage, the liability of the Carrier is in accordance with clause 5.1 above.
5.2.2 Where the loss or damage occurred during Inland Transport, the liability of the Carrier shall be determined:
(a) by the provisions contained in any international convention, national law or regulation applicable to the means of transport utilized, if such convention, national law or regulation would have been compulsorily applicable in the case where a separate contract had been made in respect to the particular stage of transport concerned, or
(b) where no international convention, national law or regulation would have been compulsorily applicable, by the contract of carriage issued by the Subcontractor carrier for that stage of transport, including any limitations and exceptions contained therein, which contract the Merchant and the Carrier adopt and incorporate by reference, it being agreed that the Carrier's rights and liabilities shall be the same as those of the Subcontractor carrier, but in no event whatsoever shall the Carrier's liability exceed GBP 100 sterling legal tender per package, or
(c) if any court shall determine that no international convention, national law or regulation would have been compulsorily applicable and that the Carrier may not determine its liability, if any, by reference to the applicable Subcontractor's contract of carriage or where said Subcontractor carrier does not have a contract of carriage, then it is contractually agreed as between the Merchant and the Carrier that the Carrier's liability shall be determined as if the loss and/or damage complained of occurred during the Port-to-Port section of carriage as provided at 5.1 above, but in no event whatsoever shall the Carrier's liability exceed GBP 100 sterling legal tender per package.
(d) If the place of loss or damage cannot be established by the Merchant, then the loss or damage shall be presumed to have occurred during the Port-to-Port section of carriage and the Carrier's liability shall be determined as provided at 5.1 above.
5.2.3 Any transport that the Carrier arranges for the Merchant which is not part of the carriage under this Bill of Lading is done under the Merchant's own responsibility, time, risk and expense and the Carrier acts as agent only for the Merchant.
5.3 Delivery to Customs or Port Authorities – Where any law or regulation applicable at the Port of Discharge or Place of Delivery provides that delivery of the Goods to the Merchant shall or may be effected by the customs or port authorities at the Port of Discharge or Place of Delivery, notwithstanding anything to the contrary herein, delivery of the Goods by the Carrier to such customs or port authorities shall be deemed to be lawful delivery of the Goods by the Carrier to the Merchant and the Carrier shall not be liable for any loss of or damage to the Goods which occurs for any reason whatsoever after delivery of the Goods by the Carrier to the customs or port authorities.

## 6. U.S. TRADE CLAUSE

6.1 Notwithstanding the provisions of clause 5, for carriage to or from any port of the United States, its territories or possessions, or if suit is brought in the United States, this Bill of Lading shall have effect subject to the provisions of the COGSA and to the provisions of the Pomerene Act regardless of whether said Act would apply of its own force. The provisions of the COGSA are incorporated herein and save as otherwise provided herein shall apply throughout the entire time the Goods are in the Carrier's custody, including before loading and after discharge as long as the Goods remain in the custody of the Carrier or its Subcontractors, including cargo carried on deck. Nothing contained herein is to be deemed a surrender by the Carrier of its rights, immunities, exemptions or limitations or an increase of any of its responsibilities or liabilities under the COGSA. Except for clause 5, every other term, condition, limitation, defence and liberty whatsoever contained in this Bill of Lading shall apply to carriage in the US Trades.
6.2 For limitation purposes under the COGSA, it is agreed that the meaning of the word "package" shall be any palletized and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.

## 7. COMPENSATION AND LIABILITY PROVISIONS

7.1 Subject always to the Carrier's right to limit liability as provided for herein, if the Carrier is liable for compensation in respect of loss of or damage to the Goods, such compensation shall be calculated by reference to the invoice value of the Goods, plus Freight and insurance if paid. If there is no invoice value of the Goods or if any such invoice is not bona fide, such compensation shall be calculated by reference to the market value of such Goods at the place and time they are delivered or should have been delivered to the Merchant. The market value of the Goods shall be fixed according to the current market price, by reference to the normal value of goods of the same kind and/or quality.
7.2 Save as is provided in clause 7.3:
7.2.1 (a) If and to the extent the Hague Rules or Hague-Visby Rules are compulsorily applicable to this Bill of Lading by virtue of clauses 5.1, 5.2.1 or 5.2.2 (c) or (d) or otherwise, the Carrier's liability for breaches or wrongs occurring during such period of compulsory application shall in no event whatsoever exceed the amounts provided in the Hague Rules or Hague-Visby Rules, whichever are compulsorily applicable.
(b) If and to the extent the Hague Rules apply only contractually pursuant to clause 5, the Carrier's maximum liability shall in no event whatsoever exceed GBP 100 sterling lawful currency per package or unit.
7.2.2 Where COGSA applies by virtue of clause 6, neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US$500 per package or per customary freight unit.
7.3 The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods. Higher compensation than that provided for in this Bill of Lading may be claimed only when, with the written confirmation of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked "Declared Value" on the front of this Bill of Lading and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the limits provided in this Bill of Lading. Any partial loss or damage shall be adjusted pro rata on the basis of such Declared Value.
7.4 Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection, defence, exemption or limitation of liability authorised by any applicable laws, statutes or regulations of any country or which would have been applicable in the absence of any of the terms set out in this Bill of Lading. The Carrier shall have the benefit of the said laws, statutes or regulations as if it were the owner of the Vessel.
7.5 When any claim is paid by the Carrier to the Merchant, the Carrier shall be automatically subrogated to all rights of the Merchant against any third party. The Merchant shall sign a subrogation receipt, release and indemnity immediately when requested by the Carrier.

## 8. SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES

The scope of voyage herein contracted for may or may not include usual or customary or advertised ports of call whether named in this Bill of Lading contract or not and may include transport of the Goods to or from any facilities used by the Carrier as part of the carriage, including but not limited to off-dock storage. The Carrier does not promise or undertake to load, carry or discharge the Goods on or by any particular Vessel, date or time. Advertised sailings and arrivals are only estimated times, and such schedules may be advanced, delayed or cancelled without notice. In no event shall the Carrier be liable for consequential damages or for any delay in scheduled departures or arrivals of any Vessel or other conveyances used to transport the Goods by sea or otherwise. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed the Freight paid for the carriage.

## 9. METHODS AND ROUTES OF CARRIAGE

9.1 The Carrier may at any time and without notice to the Merchant:
(a) use any means of transport or storage whatsoever;
(b) transfer the Goods from one conveyance to another including transhipping or carrying the Goods on a Vessel other than the Vessel named on the front hereof or by any other means of transport whatsoever, even though transhipment or forwarding of the Goods by such means may not have been contemplated or provided for herein;
(c) sail without pilots, proceed via any route (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the Port of Loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the Port of Discharge once or more often;
(d) load and unload the Goods at any place or port (whether or not any such port is named on the front hereof as the Port of Loading or Port of Discharge) and store the Goods at any such port or place, including but not limited to the use of off-dock storage at any port;
(e) comply with any orders or recommendations given by any government or authority or any Person or body purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions.
9.2 The liberties set out in clause 9.1 may be invoked by the Carrier for any purpose whatsoever whether or not connected with the carriage of the Goods, including but not limited to loading or unloading other goods, bunkering or embarking or disembarking any Person(s), undergoing repairs and/or drydocking, towing or being towed, assisting other vessels, making trial trips and adjusting instruments. Anything done or not done in accordance with clause 9.1 or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

## 10. NOTICE OF CLAIMS, TIME BAR AND JURISDICTION

10.1 Notice - of loss or damage to Goods shall be given in writing to the Carrier or its agent at the Port of Discharge before or at the time of delivery. If the loss or damage is not apparent before or at the time of delivery, notice must be given within three (3) days of delivery to the Merchant or its agent. Claims shall be submitted in writing addressed by the Merchant to the Carrier's agent at the Port of Discharge.
10.2 Time bar - In any event, the Carrier shall be discharged from all liability if suit is not commenced within one (1) year after delivery of the Goods or the date that the Goods should have been delivered for claims related to loss or damage during the Port-to-Port carriage, and for claims related to loss or damage during Inland Transport the shorter of nine (9) months or any time limit provided for by any applicable international convention, national law, regulation or contract by virtue of clauses 5.2.2 (a) or (b).
10.3 Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.
In the case of any dispute relating to Freight or other sums due from the Merchant to the Carrier, the Carrier may, at its sole option, bring suit against the Merchant in the fora agreed above, or in the countries of the Port of Loading, Port of Discharge, Place of Delivery or in any jurisdiction where the Merchant has a place of business.

## 11. MERCHANT-PACKED CONTAINERS

If a Container has not been packed by or on behalf of the Carrier:
11.1 The Merchant shall inspect the Container for suitability for carriage of the Goods before packing it. The Merchant's use of the Container shall be prima facie evidence of its being sound and suitable for use.
11.2 The Carrier shall not be liable for loss of or damage to the Goods caused by:
(a) the manner in which the Goods have been packed, stowed, stuffed or secured in the Container, or
(b) the unsuitability of the Goods for carriage in the Container supplied or for carriage by Container between the Ports or Places specified herein, or
(c) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Merchant at or prior to the time when the Container was packed, or
(d) packing refrigerated Goods that are not properly pre-cooled to the correct temperature for carriage or before the refrigerated Container has been properly pre-cooled to the correct carrying temperature.
11.3 The Merchant is responsible for the packing and sealing of all Merchant-packed Containers and, if a Merchant-packed Container is delivered by the Carrier with an original seal as affixed by the Merchant or customs or security control intact, or the Carrier can establish bona fide circumstances in which the original seal was replaced, the Carrier shall not be liable for any shortage of Goods ascertained upon delivery.
11.4 The Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more of the matters referred to in clause 11. 2, including but not limited to damage to Container, other cargo and the Vessel.

## 12. REFRIGERATION, HEATING, INSULATION

12.1 Special Containers with refrigeration, heating or insulation shall not be furnished unless contracted for on the front of this Bill of Lading and extra Freight paid. If a carrying temperature is noted on the front of this Bill of Lading, the Merchant shall deliver the Goods to the Carrier at plus or minus 2 degrees Celsius from the noted temperature, and the Carrier shall exercise due diligence to maintain such supply air temperature, plus or minus 2 degrees Celsius while the Goods are in its possession. IT IS THE MERCHANT'S OBLIGATION TO SET AND/OR CHECK THAT THE TEMPERATURE CONTROLS ON THE CONTAINER ARE AT THE REQUIRED CARRYING TEMPERATURE AND TO PROPERLY SET THE VENTS. The Carrier does not undertake to deliver empty refrigerated Containers to the Merchant at any specific temperature. The Carrier has the right but not the obligation to refuse to accept any Container loaded by the Merchant for shipment where the Goods are not or were not loaded into the Container within plus or minus 2 degrees Celsius of the contracted carrying temperature.
12.2 The Merchant must take note that refrigerated Containers are not designed:
(a) to cool or freeze Goods which have been loaded into a Container at a temperature higher than their designated carrying temperature. The Carrier shall not be responsible for the consequences of the Goods being loaded at a higher temperature than that required for the carriage; nor
(b) to monitor and control humidity levels, even if a setting facility exists, and because humidity is influenced by many external factors the Carrier does not guarantee and is not responsible for the maintenance of any intended level of humidity inside any Container.
12.3 The Carrier shall not be liable for any loss or damage to the Goods arising from latent defects, breakdown, defrosting, stoppage of the refrigerating or any other specialised machinery, plant, insulation and/or apparatus of the Container and any other facilities, provided that the Carrier exercised due diligence before releasing the empty Container to the Shipper.
12.4 The Carrier does not warrant refrigeration or heating machinery, but shall exercise care in its operation and maintenance while in the actual possession of the Carrier. The Carrier will not accept responsibility for the recording of temperatures in any form other than any reefer log book maintained on board the Vessel. The Carrier does not accept to comply with any governmental program or protocol unless noted on the front hereof and additional Freight is paid.

## 13. INSPECTION OF GOODS AND SPECIAL CIRCUMSTANCES

Inspection - The Carrier shall be entitled, but shall be under no obligation, to open and/or scan any package or Container at any time and to inspect, verify and weigh the contents without notice to the Merchant.
Special circumstances - If it appears at any time that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as his agent only) take any measures and/or incur any reasonable additional expense to carry or to continue the carriage of the Goods, and/or to sell or dispose of them and/or to abandon the carriage and/or to store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier in its absolute discretion considers most appropriate, and any sale, disposal, abandonment or storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

## 14. DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY

14.1 This Bill of Lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carriers Receipt" on the front hereof.
14.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.
14.3 The Merchant warrants to the Carrier that the particulars relating to the Goods as set out on the front hereof have been checked by or on behalf of the Merchant on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Merchant, are adequate and correct. The Merchant warrants that the Goods are safely and securely packed in the Container.
14.4. The Merchant also warrants that the Goods and/or Merchant-packed Containers are lawful Goods, contain no contraband, drugs, other illegal substances or stowaways, and that any hazardous or potentially dangerous characteristics of the Goods have been fully disclosed by or on behalf of the Merchant and that they will not cause loss, damage or expense to the Carrier, or to any other cargo, Containers, Vessel or Person during the carriage.
14.5 If any particulars of any letter of credit and/or import license and/or sales contract and/or invoice or order number and/or details of any contract to which the Carrier is not a party are shown on the front hereof, such particulars are shown at the sole risk of the Merchant and for his convenience. The Merchant agrees that such particulars shall not be regarded as a declaration of value and shall in no circumstances whatsoever increase the Carrier's liability under this Bill of Lading, and the Merchant agrees to indemnify the Carrier for any increased liability so caused, including reasonable legal expenses and costs.
14.6 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.
14.7 If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever, including but not limited to for a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will not be liable for any loss or damage whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay. The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.
14.8 The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff.
14.9 The Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odour free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon.

## 15. DANGEROUS OR HAZARDOUS GOODS

15.1 The Carrier will not accept any Goods of a dangerous or hazardous nature without prior written notice of their full and true particulars and the Carrier's written approval to carry them.
When the Merchant delivers Goods of a dangerous or hazardous nature to the Carrier, the Merchant shall fully inform the Carrier in writing of the precise and accurate details of the Goods, and special precautions or handling required for the Goods. Such Goods shall be distinctly marked on the outside of the Container as well as on the outside of the packaging inside the Container so as to indicate the nature thereof and the marking must comply with the requirements of any applicable regulations, including regulations contained in any relevant international treaty or convention.
15.2 The Merchant shall be fully liable for and shall indemnify, hold harmless and defend the Carrier, its servants, agents and subcontractors and any third party for all loss, damage, delay, personal injury, death or expenses including fines and penalties, and all reasonable legal expenses and costs caused to the Carrier, the Vessel, any cargo, and other property, whether on board or ashore, arising from such Goods and/or from the breach of clause 15.1, whether or not the Merchant was aware of the nature of such Goods.
15.3 Nothing contained in this clause shall deprive the Carrier of any of its rights provided for elsewhere.

## 16. FREIGHT AND CHARGES

16.1 Freight has been calculated on the basis of the Shipper's particulars and if such particulars are found to be erroneous and additional Freight is payable, the Merchant shall be liable therefor and also for any expense thereby incurred.
16.2 All Freight is earned and due upon receipt of the Goods by the Carrier, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under all circumstances, ship and/or cargo lost or not lost or the voyage abandoned. All Freight shall be paid when due without any set-off, counter claim, or deduction.
16.3 Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.

## 17. CARRIER'S LIEN

THE CARRIER, ITS SERVANTS OR AGENTS SHALL HAVE A LIEN ON THE GOODS AND ANY DOCUMENT RELATING THERETO FOR FREIGHT AND FOR GENERAL AVERAGE CONTRIBUTIONS TO WHOMSOEVER DUE. THE CARRIER, ITS SERVANTS OR AGENTS SHALL ALSO HAVE A LIEN AGAINST THE MERCHANT ON THE GOODS AND ANY DOCUMENT RELATING THERETO FOR ALL SUMS DUE FROM THE MERCHANT TO THE CARRIER UNDER ANY OTHER CONTRACT. The Carrier may exercise its lien at any time and any place in its sole discretion, through the action of any servant, agent or Subcontractor, whether the contractual carriage is completed or not. The Carrier's lien shall also extend to cover the cost and legal expenses of recovering any sums due. The Carrier shall have the right to sell any Goods liened by public auction or private treaty, without notice to the Merchant. Nothing herein shall prevent the Carrier from recovering from the Merchant the difference between the amount due to the Carrier and the net amount realised by such sale.

## 18. OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK

18.1 Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Merchant unless it is specifically stipulated on the front hereof that the Containers or Goods will be carried under deck. If carried on deck, the Carrier shall not be required to note, mark or stamp on the Bill of Lading any statement of such on-deck carriage. Save as provided in clause 18.2 such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of Goods for the purpose of the Hague Rules or the COGSA or any compulsorily applicable legislation and shall be carried subject to such Rules or Act, whichever is applicable.
18.2. Goods which are out of gauge and/or are stowed on or in open top containers, flatracks or platforms, and which are stated on the front hereof to be carried on deck, and all livestock whether carried on deck or under deck, are carried without any responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and the Hague Rules or the COGSA shall not apply.

## 19. MATTERS ADVERSELY AFFECTING CARRIER'S PERFORMANCE

19.1 If at any time the carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of whatsoever kind and howsoever arising which cannot be avoided by the Carrier by the exercise of reasonable endeavours, (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for the carriage) the Carrier may at its sole discretion and without notice to the Merchant and whether or not the carriage is commenced either:
(a) carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this Bill of Lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery; or
(b) suspend the carriage of the Goods and store them ashore or afloat upon the terms and conditions of this Bill of Lading and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension; or
(c) abandon the carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, or from which the Carrier is unable by the exercise of reasonable endeavours to continue the carriage, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the carriage, and the Merchant shall pay any additional costs incurred by reason of the abandonment of the Goods. If the Carrier elects to use an alternative route under clause 19.1 (a) or to suspend the carriage under clause 19.1 (b) this shall not prejudice its right subsequently to abandon the carriage.
19.2 If the Carrier elects to invoke the terms of this clause 19, then notwithstanding the provisions of clause 9, the Carrier shall be entitled to such additional Freight and costs as the Carrier may determine.

## 20. NOTIFICATION AND DELIVERY

20.1 Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not subject the Carrier to any liability nor relieve the Merchant of any obligation hereunder.
20.2 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as otherwise agreed. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in Containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, including for misdelivery or non-delivery, shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.
20.3 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility attaching to it, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant under or in connection with this Bill of Lading.
20.4 Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute an absolute waiver and abandonment by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the carriage thereof. The Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the cleaning and disposal of Goods refused and/or abandoned by the Merchant.

## 21. BOTH TO BLAME COLLISION CLAUSE

If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the Goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said Goods, paid or payable by the other or non-carrying ship or her owners to the owners of said Goods and set-off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

## 22. GENERAL AVERAGE AND SALVAGE

General Average shall be adjusted, stated and settled at any port or place at the Carrier's option according to York - Antwerp Rules 1994 except Rule XXII and, as to matters not therein provided for, according to the laws and usages at any port or place at the Carrier's option. General Average on a Vessel not operated by the Carrier shall be adjusted according to the requirements of the operator of that Vessel. Average agreement or bond and such cash deposit (payable at Carrier's option in United States currency) as the Carrier may require as additional security for the contribution of the Goods and salvage and special charges thereon, shall be furnished before delivery or forwarding.
In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall, jointly and severally, contribute with the Carrier in General Average to the payment of any sacrifices, losses, or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods, as determined by an independent General Average adjuster duly appointed by the Carrier, and his determination as to liability for General Average contribution and his computation for the same shall be final and binding on all parties to the venture. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salvaging ship or ships belonged to strangers. Such deposit as the Carrier or its agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the Goods, Shippers, Consignees or owners of the Goods to the Carrier before delivery.

## 23. SEPARABILITY AND VARIATION OF TERMS, FINAL CONTRACT

The terms of this Bill of Lading shall be separable and, if any term or provision hereof or any part of any term or provision shall be invalid to any extent, it shall be invalid to that extent, but no further and such circumstance shall not affect the validity or enforceability of any other term or provision hereof. This Bill of Lading is the final contract between the parties which supersedes any prior agreement or understanding, whether in writing or verbal, save where this Bill of Lading has been issued pursuant to another contract between the Merchant and the Carrier, when such other contract and this Bill of Lading shall be construed together. This Bill of Lading and its terms and conditions may not be changed orally.

See website for large version of the Reverse | Ver página Web para términos y condiciones | Смотри веб-сайт для ознакомления с обратной стороной | 提单背面的放大版请见网站。| www.mscgva.ch

# Exhibit 4

MSC Tracking & Tracing

| Bill of Lading Details | | Route | | Transhipment | | |
|---|---|---|---|---|---|---|
| Sailing Date | 17/07/2014 | Port of Load | PORT KLANG (PELABUHAN KLANG), MY | 1 SINGAPORE, SG 2 CHIWAN, CN | | |
| Vessel | ORION (428A) | Port of Discharge | LONG BEACH, US | | | |
| Price Calculation Date | 11/07/2014 | Final Destination | HOUSTON, US | | | |

B/L Issued by MSC PORT KELANG | Where does the data come from?

| Container Details | | Location | Description | Date | Vessel | Voyage |
|---|---|---|---|---|---|---|
| Container Price | TCNU5760763 | GIOIA TAURO, IT | Transshipment Loaded | 12/11/2014 | SPIRIT OF PIRAEUS | AB444A |
| Calculation Date | 11/07/2014 | GIOIA TAURO, IT | Transshipment Discharged | 11/11/2014 | PANGAL | MG445 |
| Type | 40' HIGH CUBE | HOUSTON, TX, US | Loaded | 22/10/2014 | PANGAL | MG441I |
| Container's | | HOUSTON, TX, US | Gate In Full | 09/10/2014 | | |
| Tare | 3840 kg | HOUSTON, TX, US | Empty to Shipper | 09/10/2014 | | |
| Weight | | HOUSTON, TX, US | Empty in Container Yard | 09/10/2014 | | |
| Cargo's | | HOUSTON, TX, US | Gate Out Full | 03/10/2014 | | |
| Gross | 7000 kg | HOUSTON, TX, US | Arrived at rail ramp | 09/09/2014 | | |
| Weight | | LOS ANGELES, CA, US | Rail departed Origin | 06/09/2014 | | |
| Total Weight | 10840 kg | LOS ANGELES, CA, US | Loaded on Rail | 04/09/2014 | | |
| Shipped To | HOUSTON, US | LONG BEACH, CA, US | Positioned Out | 04/09/2014 | | |
| Final POD | LONG BEACH, US | LONG BEACH, CA, US | Positioned In | 29/08/2014 | | |
| | | LONG BEACH, CA, US | Positioned Out | 29/08/2014 | | |
| | | LONG BEACH, CA, US | Carrier Release | 27/08/2014 | MSC SOLA | 430A |
| | | LONG BEACH, CA, US | Discharged | 17/08/2014 | MSC SOLA | 430A |
| | | CHIWAN, 44, CN | Transshipment Loaded | 30/07/2014 | MSC SOLA | FR430A |
| | | CHIWAN, 44, CN | Transshipment Discharged | 25/07/2014 | MSC PAMELA | FG423F |
| | | SINGAPORE, SG | Transshipment Loaded | 22/07/2014 | MSC PAMELA | FG423F |
| | | SINGAPORE, SG | Transshipment Discharged | 18/07/2014 | ORION | HF429A |
| | | PORT KLANG (PELABUHAN KLANG), 10, MY | Loaded | 17/07/2014 | ORION | HF428A |
| | | PORT KLANG (PELABUHAN KLANG), 10, MY | Gate In Full | 11/07/2014 | | |
| | | PORT KLANG (PELABUHAN KLANG), 10, MY | Empty to Shipper | 03/07/2014 | | |

MSC 000003

# Exhibit 5



**MEDITERRANEAN SHIPPING COMPANY (USA) Inc.**

The original Bill of Lading, if required, must be endorsed by the Consignee

**ARRIVAL NOTICE**

MEDITERRANEAN SHIPPING COMPANY (USA) INC.
10050 NORTHWEST FREEWAY, SUITE 300
Houston, Texas 77092

Phone: 713 681 8880

AS AGENTS FOR: MEDITERRANEAN SHIPPING CO.

| | VESSEL NAME | VOYAGE No. | Estimated Arrival Date |
|---|---|---|---|
| A | | | |
| B | MSC SOLA | 430A | 9/14/2014 |
| | FLAG/REGISTRY | BILL OF LADING No. | PRINT DATE |
| A | | | |
| B | Panama | MSCUPG305359 | 9/26/2014 |

In the case of a transshipment on the second/sea vessel (b) is U.S. final discharge.

| ORIGIN LOCATION | Transshipment Port: CHIWAN | | |
|---|---|---|---|
| | PORT OF LOADING : | PORT OF DISCHARGE | FINAL DESTINATION | No. Cont'r | No. Pkgs. | WEIGHT (Kgs.) | MEASURE(Cbm) |
| | PORT KLANG (PELABUH) | LONG BEACH | Houston, TX | 1 | 310 | 7,000 | 55 |

**IT INFORMATION**
ITN V4X0392142          IT Date: Aug 06, 2014

**CARGO DESCRIPTION**
1) 309 PKGS OF USED HOUSEH OLD GOODS AND PERSONAL
EFFECTS 2) 1 CRATE: USED MOTO BIKE MODEL: BMW
RT1100 YEAR MAKE: 1997 CHA.NO.WB10418 A7VZC63123

| SHIPPER | |
|---|---|
| | HONOUR LANE LOGISTICS SDN BHD |
| | UNIT 908, BLOCK A, DAMANSARA, INTAN NO.1 JALAN SS20/27 |
| | Petaling Jaya, 47400 |

| CONSIGNEE | |
|---|---|
| | A.C.T. LOGISTICS |

| NOTIFY | |
|---|---|
| | A.C.T. LOGISTICS |
| | 18409 AVENUE 3RD FLOOR |
| | Jamaica/Queens, New York 11434 |

**CONTAINER NUMBER**
TCNU5787634GHC
FEI404726

| PORT OF DISCHARGE LOCATION | |
|---|---|
| BNSF HOBART (404) | |
| 3770 Washington Boulevard | |

| FREIGHT AND CHARGES | COLLECT |
|---|---|
| | |
| | TOTALS: |

Cargo moving to a / final dest beyond Long beach by rail will be moved under an IT unless otherwise instructed. IT Cancellation request must be sent to mscdcancel@mscus For "Door" deliveries to CA,AZ or NV; D.O. must be sent to hdudd@mscus

Payable on receipt by Wire Transfer or company check to MSC (USA), Inc. Unless Credit agreement has been established. Please indicate the arrival notice with your payment.

NOTE: Please contact Local Port Agent for instructions regarding the return of the empty equipment

**ALL COLLE** **CHARGES AND ORIGINAL BIL IF REQUIRED MUST BE SURRENDERED PRIOR TO RELEASE OF CARGO PERSONAL CHEKS ARE NOT ACCEPTED**

MSC 000114

# Exhibit 6

Notification of Eligible

# General Order Merchandise

Friday, September 26, 2014

| To: (G.O. Warehouse) | Fax: | From: |
|---|---|---|
| St George Warehouse | (281) 474-5720 | MEDITERRANEAN SHIPPING COMPANY (USA) INC. |
| Cc: (U.S. Customs) | Fax: | 10050 NORTHWEST FWY, SUITE 300 |
| U.S. Customs (Houston) | (281) 985-6873 | HOUSTON, TEXAS 77092 |
| Cc: (U.S. Consignee) | Fax: | PH: (713) 681-8880; FX: (713) 681-9681 |
| A.C.T. LOGISTICS, INC. | (718) 276-1199 | |

### Cargo Specification

| Importing Vessel  Voyage: | Master Bill of Lading Number: | Container Number(s): |
|---|---|---|
| MSC SOLA 430A | MSCUPG309359 | TCNU5760763 |
| Discharge Port: | Description of Goods: | |
| Los Angeles | PERSONAL EFFECT | |
| Date Landed In U.S.: | Total Piece-Count: | |
| 8/15/2014 | 310 | |
| U.S. Consignee:     Phone: | Total Weight: | |
| A.C.T. LOGISTICS, INC.     (718) 276-1212 | 7000 kgs | |
| Broker (If Known):     Phone: | | |
| Current Location of Cargo: | | |
| HOUSTON BNSF | | |

### Additional Information

Please Note...

Copies of bill(s) of lading and/or IT/TE documents are attached.

A Lien Notice (CF3485) will be filed for charges due to MSC once shipment has been delivered to the G.O. warehouse.



MSC Representative

Mediterranean Shipping Company (USA) Inc.            Friday, September 26, 2014

# Exhibit 7

DEPARTMENT OF HOMELAND SECURITY
Bureau of Customs and Border Protection

FORM APPROVED
O.M.B. NO. 1515-0046

**LIEN NOTICE**

19 U.S.C. 66, 1564; 19 CFR 141.112

| 1. PORT | 2. CUSTOMS ASSIGNED NO. |
|---|---|
| LOS ANGELES | 204-530-10204 |
| 3. DATE OF NOTICE | 4. DATE OF ARRIVAL |
| 22-JAN-15 | 8/15/2014 |

| 5. NAME OF CONSIGNEE/IMPORTER | 6. NAME OF CARRIER | 7. B/L NO. or CF 7512 NO. |
|---|---|---|
| A.C.T. LOGISTICS, INC. | MSC SOLA 430A | MSCUPG309359 |

8. LOCATION OF GOODS

ST GEORGE WAREHOUSE    (281) 474-5700

| 9. MARKS AND NUMBERS | 10. NO. OF PACKAGES | 11. REMARKS |
|---|---|---|
| TCNU5760763 | 310 | PERSONAL EFFECT |
| | 0 | |
| | | LIEN FEE - $100.00 |
| | | RAIL STORAGE - $2400.00 |
| | | RAMP DETENTION- $2370.00 |
| | 0 | |
| | | TCNU5760763 PICK UP # - 4FF5A8 |
| | 0 | PAID JUL 1 PAID |
| | 0 | |
| | 0 | |
| | 0 | |

The undersigned carrier, to whom or upon whose order the articles described herein, or in the attached document must be released, hereby certifies that the consignee named in this document is the owner or consignee of such articles within the purview of section 484(h), Tariff Act of 1930. In accordance with the provisions of section 484(i), Tariff Act of 1930, authority is hereby given to release the articles covered by the aforementioned statement to such consignee.

Mediterranean Shipping Co. (USA) TAC.
(Name of Carrier)
(Agent)

| 12. AMOUNTS CLAIMED | A. Freight | B. Charges | C. Contribution to General Average | D. TOTAL |
|---|---|---|---|---|
| ▶ | $0.00 | $4,870.00 | $0.00 | $4,870.00 |

**13. STATEMENT OF AGENT**

I, the Undersigned, agent of the above named carrier, certify that the carrier has a lien on the above listed merchandise in accordance with Sections 564 and 613 of the Tariff Act of 1930. I further certify that the information set forth in this notice is true to the best of my knowledge and belief, and that the sum claimed is due and unpaid and was a subsisting lien upon the goods described at the time they passed into Customs custody. I understand that sale of this merchandise by the Government for any reason does not entitle claimants to advance notice in the absence of a written request identifying the goods with this notice. I also agree, upon the discharge or satisfaction of this lien, to promptly notify the Customs office at the above-named port by filing a written release or receipt showing payment of the claim in full.

14. NAME AND ADDRESS OF LIENHOLDER

MEDITERRANEAN SHIPPING COMPANY (USA) INC.
10050 NORTHWEST FWY, SUITE 300
HOUSTON, TEXAS 77092
PH: (713) 681-8880; FX: (713) 681-9681

| SIGNATURE OF AGENT | Date |
|---|---|

| 15. NAME AND TITLE OF LIENHOLDER | Date |
|---|---|
| Janette Lara | 1/22/15 |

16. STATEMENT OF CLAIMANT

The amounts claimed as due and unpaid have been satisfied.

| SIGNATURE OF CLAIMANT | Date |
|---|---|
| Janette Lara | 1/1/15 |

DISPOSITION (Customs Use Only)

| 17. NAME OF CUSTOMS OFFICER | 18. SIGNATURE OF CUSTOMS OFFICERS | 10. DATE |
|---|---|---|

See back of form for Paperwork Reduction Act Notice.

Customs Form 3485 (080790)

MSC 000110

FORM APPROVED
O.M.B. NO. 1515-0048

DEPARTMENT OF HOMELAND SECURITY
Bureau of Customs and Border Protection

**LIEN NOTICE**

19 U.S.C. 66, 1954; 19 CFR 141.112

| | | |
|---|---|---|
| 1. PORT  LOS ANGELES | | 2. CUSTOMS ASSIGNED NO. |
| 3. DATE OF NOTICE  22-JAN-15 | 4. DATE OF ARRIVAL  8/15/2014 | |
| 6. NAME OF CARRIER  MSC SOLA 430A | 7. BL NO. or CF 7512 NO  MSCUPG309359 | |

5. NAME OF CONSIGNEE/IMPORTER
A.C.T. LOGISTICS, INC.

8. LOCATION OF GOODS
ST GEORGE WAREHOUSE   (281) 474-5700

| 9. MARKS AND NUMBERS | 10. NO. OF PACKAGES | 11. REMARKS |
|---|---|---|
| TCNU5760763 | 310 | PERSONAL EFFECT |
| | 0 | |
| | 0 | LIEN FEE - $100.00 |
| | 0 | RAIL STORAGE - $2400.00 |
| | 0 | RAMP DETENTION - $2370.00 |
| | 0 | |
| | 0 | TCNU5760763 PICK UP # - 4FF5A8 |
| | 0 | |
| | 0 | |
| | 0 | |
| | 0 | |

| 12. AMOUNTS CLAIMED ▶ | A. Freight  $0.00 | B. Charges  $4,870.00 | C. Contribution to General Average  $0.00 | D. TOTAL  $4,870.00 |
|---|---|---|---|---|

**13. STATEMENT OF AGENT**

I, the undersigned, agent of the above named carrier, certify that the carrier has a lien on the above listed merchandise in accordance with Sections 564 and 613 of the Tariff Act of 1930. I further certify that the information set forth in this notice is true to the best of my knowledge and belief, and that the sum claimed is due and unpaid and was a subsisting lien upon the goods described at the time they passed into Customs custody. I understand that sale of this merchandise by the Government for any reason does not entitle claimants to advance notice in the absence of a written request identifying the goods with this notice. I also agree, upon the discharge or satisfaction of this lien, to promptly notify the Customs office at the above-named port by filing a written release or receipt showing payment of the claim in full.

SIGNATURE OF AGENT                              Date

**14. NAME AND ADDRESS OF LIENHOLDER**

MEDITERRANEAN SHIPPING COMPANY (USA) INC.
10050 NORTHWEST FWY, SUITE 300
HOUSTON, TEXAS 77092
PH: (713) 681-8880; FX: (713) 681-9681

100 FREIGHT CASHIER

15. NAME AND TITLE OF LIENHOLDER        Date
Janette Lara  1/22/15

**16. STATEMENT OF CLAIMANT**

The amounts claimed as due and unpaid have been satisfied.

SIGNATURE OF CLAIMANT                           Date

DISPOSITION (Customs Use Only)

| 17. NAME OF CUSTOMS OFFICER | 18. SIGNATURE OF CUSTOMS OFFICERS | 19. DATE |
|---|---|---|

See back of form for Paperwork Reduction Act Notice.

Customs Form 3485