UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT ZIEGLER, <br><br>*Plaintiff*, <br><br> v. <br><br> SUBALIPACK (M) SDN BHD, <br> A.C.T. LOGISTICS, LLC, <br> MEDITERRANEAN SHIPPING <br> COMPANY (USA), INC., <br> ST. GEORGE LOGISTICS, COURTNEY <br> INTERNATIONAL FORWARDING, INC., <br> MASTERPIECE INTERNATIONAL LIMITED, <br> GRAEBEL MOVERS INTERNATIONAL, INC., <br> and JOHN DOES 1-3, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § § § CIVIL ACTION No. 16-2598 |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Robert Ziegler's motion to remand. Dkt. 17. Having considered the motion, responses, reply, surreply, complaint, and the applicable law, the court is of the opinion that the motion (Dkt. 17) should be DENIED.

**I. BACKGROUND**

This case arises from Ziegler's claims against multiple defendants for property damage and loss sustained during an overseas shipment of household goods. In 2014, Ziegler moved from Kuala Lumpur, Malaysia, to Hilltop Lakes, Texas. Dkt. 36 at 3. In order to transport his household goods from Malaysia to Texas, Ziegler contracted with a Malaysian multimodal transport company, Subalipack (M) SDN BHD ("Subalipack"). Dkt. 36 at 3. Ziegler paid Subalipack RM25,400.00 (approximately $8,000 (USD)) for door-to-door transport of his household goods. Dkt. 2-2 at 18; Dkt. 36 at 3. Subalipack packed Ziegler's goods into 310 boxes, and loaded these boxes into a forty-

foot shipping container. Dkt. 36 at 4. Then, Subalipack subcontracted with another Malaysian transport company, Honour Lane Logistics SDN BHD ("Honour Lane"), for transportation of the shipping container. *Id.* Honour Lane further subcontracted with Mediterranean Shipping Company, S.A. ("MSC SA"), a foreign shipping company, for the port-to-port transport of the shipping container from Port Klang, Malaysia to Houston, Texas. Dkt. 25 at 3.

MSC SA transported the shipping container aboard the M/V MSC SOLA from Port Klang, Malaysia to the Port of Long Beach, California. Dkt. 25 at 4. Ziegler claims that A.C.T. Logistics, LLC ("A.C.T.") transferred the shipping container from the M/V MSC SOLA to a rail line. Dkt. 36 at 4. MSC SA then transported the shipping container by rail from Long Beach, California to Houston, Texas. Dkt. 36, 4–5; Dkt. 39 at 5. Before offloading in Houston, MSC SA, or its United States agent, Mediterranean Shipping Company (USA) Inc. ("MSC USA"), placed a cargo lien on the shipping container and Ziegler's household goods for nonpayment of certain charges assessed by MSC SA or MSC USA. Dkt. 36 at 4–5; Dkt. 39 at 5. Ziegler expected Subalipack to pay all incidental shipping charges according to the terms of their contract. Dkt. 36 at 7. However, when Subalipack refused to pay for removal of the lien, Ziegler paid the charges. *Id.* at 5.

After arrival in Houston, Ziegler's household goods were stored in a warehouse owned by St. George Warehouse & Trucking Co. of Texas, Inc. ("STG") while the goods awaited U.S. Customs ("Customs") importation approval. Dkt. 36, 5–6; Dkt. 57 at 4. Zeigler alleges that he hired an import attorney at his own expense because Subalipack was unsuccessful in obtaining a Customs clearance for his household goods. Dkt. 36 at 5. Zeigler's import attorney was successful in obtaining Customs clearance, but when his belongings were delivered to him, many items were damaged, destroyed, or missing. Dkt. 36 at 6. It is unclear at what point during shipment, or in the

2

custody of which defendant or defendants, Zeigler's property sustained damage or went missing. However, Zeigler claims loss of or damage to his property exceeding $78,000. Dkt. 36 at 7.

On July 6, 2016, Zeigler filed a complaint against Subalipack, A.C.T., MSC USA, STG, and other parties in the 55th District Court of Harris County, Texas.[1] Dkt. 2-2 at 4. On August 4, 2016, MSC USA's registered agent for service of process received service. Dkt. 2-2 at 42. On August 26, 2016, MSC USA removed the matter to this court on the basis of diversity and federal question jurisdiction. Dkt. 2 at 6. On September 26, 2016, Ziegler filed a motion to remand. Dkt. 17. Ziegler seeks remand on the following grounds: (1) the removal is procedurally defective because MSC USA failed to obtain consent from STG and Subalipack prior to removal (Dkt. 17 at 9–11); (2) the court cannot exercise diversity jurisdiction because STG is a Texas entity (Dkt. 17 at 8–9); and (3) the court cannot exercise federal subject matter jurisdiction because the Carriage of Goods by Sea Act ("COGSA"), the federal law that MSC USA argues preempts Ziegler's claims, is not applicable. Dkt. 17 at 4–7. The court will address the procedural arguments first and then turn to the jurisdictional arguments.

## II. REMOVAL PROCEDURE

**A.    Legal Standard**

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441 (2012). The party seeking removal bears the burden of establishing federal jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). This statutory right to removal is strictly construed because

---

[1] Defendants Courtney International Forwarding, Inc., Masterpiece International Limited, and Graebel Movers International, Inc. have been dismissed by stipulation from this case.

"removal jurisdiction . . . raises significant federalism concerns." *Id.* (citations omitted). Therefore, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

The removal statute mandates that the removing party satisfy certain procedural requirements. 28 U.S.C. § 1446. First, the notice of removal must be timely filed within thirty days of service of the initial complaint upon the removing defendant. *Id.* § 1446(b). Further, the removing defendant must obtain consent from all other "properly joined and served" defendants in the action. *Id.* § 1446(b)(2)(A). Failing to obtain such consent would "render[] the petition defective" and require remand of the case to state court. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir. 1988). However, district courts have frequently held that removing defendants need only obtain consent from "those defendants: (1) who have been served; and, (2) whom the removing defendant(s) actually knew or should have known had been served." *See, e.g.*, *Milstead Supply Co. v. Casualty Ins. Co.*, 797 F.Supp. 569, 573 (W.D. Tex. July 31, 1992); *see also Conner v. Juarez*, No. SA:15–CV–416–DAE, 2015 WL 4876530, at *7 (W.D. Tex. Aug. 13, 2015).

**B.    Analysis**

Here, Ziegler argues that MSC USA's removal was procedurally defective because MSC USA did not obtain consent from either STG or Subalipack for the removal. Dkt. 17 at 10. MSC USA counters that STG and Subalipack were not properly served before MSC USA's removal, and therefore that MSC USA was not required to obtain the consent of either STG or Subalipack in order to remove. Dkt. 25 at 17. MSC USA argues that there were two defects in the service of process upon STG and Subalipack: (1) there are no *Whitney* certificates in the state court record to evidence service of process; and (2) the record indicates that Ziegler provided only a single copy of the

4

processes for STG and Subalipack to the Secretary of State, but the Texas code requires that duplicate copies. *Id.* (citing *Whitney*); Tex. Bus. Orgs. Code Ann. § 5.252(a)(1) (West 2006).

With respect to the *Whitney* certificates, the Supreme Court of Texas held in *Whitney v. L.&L. Realty Corp.* that proper service on the Texas Secretary of State requires proof of forwarding. *Whitney v. L.&L. Realty Corp.*, 500 S.W.2d 94, 96 (Tex. 1973). When service is made upon the Texas Secretary of State as an agent for service of a foreign defendant, the Secretary of State must forward the service to the defendant "for the Secretary of State to be conclusively presumed to be the attorney for the [foreign] defendant." *Id.* The *Whitney* court explained that "a showing in the record that the Secretary of State forwarded a copy of the process is essential to establish the jurisdiction of the court over the defendants' persons." *Id.* Although *Whitney* involved review of a default judgment, the critical holding of *Whitney* is that service through the Texas Secretary of State is insufficient to establish personal jurisdiction over a foreign defendant if the record does not show that the service was forwarded to the defendant. *Id.*; *see also Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988) ("[the] district court lacks jurisdiction over the defendant because of lack of service of process").

In Ziegler's original petition, defendants STG and Subalipack were both listed as foreign companies with no assigned agent for service of process in Texas. Dkt. 2-2 at 5. Because neither of these defendants had an assigned agent, Ziegler proceeded to have both entities served through the Texas Secretary of State. *Id.* at 5–6. Although the record shows service of process was made to the Texas Secretary of State for both STG and Subalipack, there is no evidence in the record that the Secretary of State then forwarded service to either defendant. Dkt. 2-2. *Whitney* established that

personal jurisdiction over the defendant cannot be exercised without a showing of forwarded service when service is made upon the Texas Secretary of State. *Whitney*, 500 S.W.2d at 97.

Ultimately, STG answered in this court, and by doing so waived any defense of insufficient or defective process. Fed. R. Civ. P. 12(h)(1)(B)(ii). However, prior to STG's answer on September 23, 2016, MSC USA could not have known or been expected to know that service of process had been made upon STG. Dkt. 15 at 1. Therefore, MSC USA was not required to obtain STG's consent to remove. 28 U.S.C. § 1446(b); Dkt. 2-2 at 42. For the same reason, MSC USA was also not required to obtain Subalipack's consent to remove. Because service of process was defective for lack of *Whitney* certificates, the court need not address MSC's second argument regarding duplicate copies of process. The court finds that there were no procedural defects in the removal requiring a remand to state court.

### III. SUBJECT MATTER JURISDICTION

Ziegler also argues that the case should be remanded because the court cannot exercise federal subject matter jurisdiction over this case. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court may exercise subject matter jurisdiction over civil cases on the bases of either diversity or federal question jurisdiction. 28 U.S.C. §§ 1331, 1332. "[A]ny civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court . . . ." *Id.* § 1441(a). The court will now address Ziegler's arguments in opposition to diversity and federal question jurisdiction.

### A. Diversity Jurisdiction

   *1. Legal Standard*

Subject matter jurisdiction premised on diversity requires (1) complete diversity of citizenship between the parties, and (2) an amount in controversy in excess of $75,000. *Id.* § 1332. A diversity action may not be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b). Additionally, for the purpose of determining the amount in controversy, the court considers the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

   *2. Analysis*

At the time of removal, Ziegler's original complaint alleged that all the defendants are foreign. Dkt. 2-2, 4–7. Based on this information, MSC USA argued complete diversity as a ground for federal subject matter jurisdiction. Dkt. 2, 2–4. However, STG's answer makes clear that STG is a Texas entity. Dkt. 15 at 1. "[I]ncomplete diversity destroys original jurisdiction with respect to all claims." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554, 125 S. Ct. 2611 (2005); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396 (1978). Therefore, the court finds that this case lacks the diversity necessary for federal subject matter jurisdiction arising under 28 U.S.C. § 1332.

## B. Removal Based on Federal Question Jurisdiction

### 1. Legal Standard

#### a. Federal Question Jurisdiction

Because there is no diversity jurisdiction over this case, the court must determine whether jurisdiction exists on the basis of a federal question. Under 28 U.S.C. § 1331, a district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction is most often invoked by plaintiffs pleading a cause of action created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363 (2005). Further, "a defense that raises a federal question is inadequate to confer federal jurisdiction." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229 (1986)).

In removals predicated upon federal question jurisdiction, the court will ordinarily determine whether a federal question exists by looking at the face of the plaintiff's state-court petition. *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992). The court will consider the notice of removal, other pleadings, and the record up to the time of removal, if necessary, to shed light on the plaintiff's pleadings. *Id.* However, the "well-pleaded complaint rule" recognizes that a state-court plaintiff is entitled to be the master of his claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425 (1987). Absent diversity jurisdiction, a case is generally not removable "if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058 (2003).

However, federal question jurisdiction also encompasses claims that are "recognized under state law [but] turn on questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. A further exception to the "well-pleaded complaint rule" is the "complete preemption doctrine." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 773 (5th Cir. 2003). This doctrine applies when a claim that otherwise appears as a state law claim is converted to a claim "arising under" federal law for jurisdictional purposes. *Id.* When "the federal statute 'so forcibly and completely displace[s] state law[,] . . . the plaintiff's cause of action is either wholly federal or nothing at all.'" *Id.* (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

  b.  *COGSA and Preemption*

Here, MSC USA argues that Ziegler's state-law claims are preempted by COGSA. Dkt. 2. The Carriage of Goods by Sea Act ("COGSA") governs shipments to and from the United States under bills of lading and similar documents of title. 46 U.S.C. §30701 n.1 (2012). "A bill of lading" is a document showing "that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 18–19, 125 S. Ct. 385 (2004). COGSA was enacted in 1936 to establish and maintain uniformity in maritime relationships between shippers and carriers and to regulate bills of lading representing contracts to carry goods by sea between the United States and foreign ports. *Maizoro v. Sea-Land Serv., Inc.*, CA 3–96–CV–2979–R, 1999 WL 1009092 (N.D. Tex. Oct. 20, 1999). A carrier, defined as "the owner, manager, charterer, agent, or master of a vessel," is obligated to exercise due diligence to properly man and equip the vessel, to make the vessel

9

seaworthy, and to ensure that the vessel's holds are fit for the carriage of cargo. 46 U.S.C. § 30701; *Sun Co. Inc. v. S.S. Overseas Arctic*, 27 F.3d 1104, 1112 (5th Cir. 1994).

COGSA imposes a one-year statute of limitations on claims for damaged goods and provides for a carrier's limited liability. *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines, Ltd.*, 230 F.3d 549, 553 (2nd Cir. 2000). COGSA imposes upon shippers a maximum liability of $500 per package unless the parties contract for greater liability. *Waterman S. S. Corp. v. U. S. Smelting, Ref. & Min. Co.*, 155 F.2d 687, 693 (5th Cir. 1946). Furthermore, parties may contractually extend COGSA's provisions to areas, parties, and activities where they would not automatically apply. *Kirby*, 543 U.S. at 30; *Sabah Shipyard Sdn. Bhd. v. M/V Harbel Tapper*, 178 F.3d 400, 409 (5th Cir. 1999).

COGSA itself is silent on its preemptive scope. *Polo Ralph Lauren, L.P., v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000). However, in 2004, the Supreme Court held that general maritime law, though not COGSA specifically, preempts state law, and that maritime law governs contracts involved in the multimodal shipment of goods such as through bills of lading. *Kirby*, 543 U.S. at 28. *Kirby* involved a shipment from Australia to Alabama on a through bill of lading that contained a clause paramount extending the COGSA liability limitation to inland carriage. *Id.* at 18. The land carrier sought to limit its liability under the through bill of lading after the goods were damaged during the overland voyage. *Id.* at 21. The *Kirby* Court held that federal maritime law rather than state law applied to the controversy because the bill of lading was a maritime contract. *Id.* at 29. Further, the Supreme Court held that federal courts can assert admiralty jurisdiction over multimodal bills of lading no matter how far inland the damage or loss occurs. *Id.* Thus, federal maritime law, and not state law, governed the contract dispute in *Kirby*. *Id.*

Additionally, the *Kirby* Court applied the two-step analysis from *Kossick v. United Fruit Co.* to hold that federal law controls contract interpretation when (1) the contract is a maritime contract, and (2) the dispute is not inherently local. *Id.* at 23 (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S. Ct. 886 (1961)). Under the first prong, the Court reasoned that, "[s]o long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract." *Kirby*, 543 U.S. at 27. Under the second prong of the *Kossick* test, the Court performed an analysis that mirrors the standard policy language surrounding COGSA jurisprudence—that the Court should avoid applying state law where it would serve to "undermine the uniformity of the general maritime law." *Id.* at 29. Therefore, *Kirby* declares that through bills of lading are maritime contracts if the water leg of the voyage is substantial, and as such, federal maritime law governs the interpretation of these contracts and preempts applicable state law. *Id.* Although the *Kirby* decision shed little light on the question of COGSA's inherent preemptive scope, it did serve to clarify that as a part of general maritime law COGSA governs "where it applies." *Cont'l Ins. Co. v. Kawasaki Kisen Kasha, Ltd.*, 542 F. Supp. 2d 1031, 1034 (N.D. Cal. 2008) ("state law must yield to COGSA where it applies").

   2.   *Analysis*

Although Ziegler argues that he has alleged strictly state-law causes of action, his contract with Subalipack was a through bill of lading. Dkt. 2-2 at 18. Subalipack issued Ziegler an invoice indicating "the terms of carriage, and serv[ing] as evidence of the contract for carriage," stating that it would be providing "[d]oor to door services from Kuala Lumpur to Texas, U.S.A." *Id.*; *Kirby*, 543 U.S. at 18–19. Subalipack also issued Ziegler copies of an inventory list of the household goods that Subalipack had packed and received from Ziegler. Dkt. 17-3, 2–12. These documents indicate a bill

11

of lading for the purposes of COGSA. Furthermore, the sea leg of a transport route from Kuala Lumpur to Texas is "substantial carriage of goods by sea." Therefore, the court concludes that COGSA governs any claims of liability Ziegler alleges against Subalipack that arise from the transport contract. *Kirby*, 543 U.S. at 27.

Additionally, when Subalipack subcontracted with Honour Lane, and when Honour Lane further subcontracted with MSC SA, both companies issued bills of lading to govern these contracts. Dkt. 24-1, 2–3; Dkt. 25-1, 5–6. MSC SA's bill of lading also included a clause paramount, extending COGSA's application to inland areas, as well as a Himalaya clause extending COGSA's application to any subcontractors of MSC SA. Because of these terms, the court concludes that the bills of lading Honour Lane and MSC SA issued are also governed by COGSA.

Under *Kirby*, any state-law claims of liability Ziegler raises against Subalipack, Honour Lane, or MSC SA that arise from their contract-created rights or obligations are preempted by COGSA. Because these claims "turn on questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues," this court has original jurisdiction over these claims under 28 U.S.C. § 1331.

Ziegler argues that the saving to suitors clause of 28 U.S.C. § 1333 provides maritime plaintiffs with the ability to avoid federal jurisdiction by pleading strictly state-law claims,[2] and that he has exercised this ability. Dkt. 17 at 5. If MSC USA had alleged that federal question jurisdiction for this action existed only by virtue of its maritime nature, then Ziegler's argument would be correct. *See Madruga v. Superior Court of State of Cal. in & for San Diego Cty*, 346 U.S. 556, 560,

---

[2] 28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

74 S. Ct. 298 (1954) (explaining that "[a]dmiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem"); *see, e.g.*, *Tennessee Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996) ("a maritime claim does not present federal question jurisdiction"). However, "it is also well-established that the saving clause does not prevent the removal of maritime claims when original jurisdiction is based on something other than admiralty." *Hous. Cas. Ins. Co.*, 87 F.3d at 153. In this case, COGSA provides the basis for original jurisdiction for the reasons explained herein, and the saving to suitors clause is not a cause for remand. Therefore, the court concludes that it has federal question jurisdiction over this controversy due to the preemptive effect of COGSA.

### III. Conclusion

The court finds that there were no procedural defects in the removal, and that federal question jurisdiction exists in this case. Therefore, plaintiff's motion to remand (Dkt. 17) is DENIED.

Signed at Houston, Texas on June 21, 2017.

_____
Gray H. Miller
United States District Judge