**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT ZIEGLER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2598 |
| | § | |
| SUBALIPACK (M) SDN BHD, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for default judgment filed by plaintiff Robert Zeigler against defendants Subalipack (M) SDN BHD ("Subalipack"), A.C.T. Logistics, LLC ("ACT"), and Honour Lane Logistics SDN BHD d/b/a Honour Lane Shipping Ltd. ("Honour Lane") (collectively, "Defendants"). Dkt. 76. Having considered the motion and applicable law, the court is of the opinion that the motion should be GRANTED in part and DENIED in part, with leave to file additional briefing.

### I. BACKGROUND

This case arises from Ziegler's claims against multiple defendants for property damage and loss sustained during an overseas shipment of household goods. Dkt. 36. In 2014, Ziegler moved from Kuala Lumpur, Malaysia, to Hilltop Lakes, Texas. *Id.* at 3. In order to transport his household goods from Malaysia to Texas, Ziegler contracted with Subalipack, a Malaysian multimodal transport company. *Id.* Ziegler paid Subalipack RM25,400.00 ($8,002.32 (USD)) for door-to-door transport of his household goods. *Id.* Subalipack packed Ziegler's goods into 310 boxes and loaded these boxes into a forty-foot shipping container. *Id.* at 4. Then, Subalipack subcontracted with Honour Lane, another Malaysian transport company, for transportation of the shipping container.

*Id.* Honour Lane further subcontracted with Mediterranean Shipping Company, S.A. ("MSC SA"), a foreign shipping company, for the port-to-port transport of the shipping container from Port Klang, Malaysia to Houston, Texas. Dkt. 25 at 3.

MSC SA transported the shipping container aboard the M/V MSC SOLA from Port Klang, Malaysia to the Port of Long Beach, California. Dkt. 25 at 4. Honour Lane's receiving agent at the Port of Long Beach was ACT. Dkt. 24-1 at 2. Ziegler claims that ACT transferred the shipping container from the M/V MSC SOLA to a rail line. Dkt. 36 at 4. MSC SA then transported the shipping container by rail from Long Beach, California to Houston, Texas. *Id.* at 4–5; Dkt. 39 at 5. Before offloading in Houston, MSC SA, or its United States agent, Mediterranean Shipping Company (USA) Inc. ("MSC USA"), placed a cargo lien on the shipping container and Ziegler's household goods for nonpayment of certain charges assessed by MSC SA or MSC USA. Dkt. 36 at 4–5; Dkt. 39 at 5. Ziegler expected Subalipack to pay all incidental shipping charges according to the terms of their contract. Dkt. 36 at 7. However, when Subalipack refused to pay for removal of the lien, Ziegler paid the charges. *Id.* at 5.

After arrival in Houston, Ziegler's household goods were stored in a warehouse owned by St. George Warehouse & Trucking Co. of Texas, Inc. ("STG") while the goods awaited U.S. Customs ("Customs") importation approval. *Id.* at 5–6; Dkt. 57 at 4. Ziegler alleges that he hired an import attorney at his own expense because Subalipack was unsuccessful in obtaining a Customs clearance for his household goods. Dkt. 36 at 5. Ziegler's import attorney was successful in obtaining Customs clearance, but when his belongings were delivered to him, many items were damaged, destroyed, or missing. *Id.* at 6. It is unclear at what point during shipment, or in the custody of which defendant or defendants, Zeigler's property sustained damage or went missing. However, Zeigler claims loss of or damage to his property exceeding $78,000. *Id.* at 7.

On July 6, 2016, Zeigler sued Subalipack, ACT, MSC USA, STG, and other parties in the 55th District Court of Harris County, Texas.[1]  Dkt. 2-2 at 4.  On August 26, 2016, MSC USA removed the matter to this court on the basis of diversity and federal question jurisdiction.  Dkt. 2 at 6.  On December 21, 2016, Ziegler amended his complaint to add Honour Lane as an additional defendant.  Dkt. 36 at 2.  Ziegler now moves for a default judgment against Defendants for $235,444.74 in damages and reasonable attorneys' fees and $47,802.47 for prejudgment and post-judgment interest.  Dkt. 76 at 7.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Under Rule 55(b)(2), a party may apply for the court to enter a default judgment, and the "court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

A default judgment is a "drastic remedy, not favored by the Federal Rules[,] and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).  "The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by

---

[1] Defendants Courtney International Forwarding, Inc., Masterpiece International Limited, and Graebel Movers International, Inc. have been dismissed by stipulation from this case.  The only remaining defendants are the three at issue in the instant motion.

3

procedural maneuver." *Id.* A default judgment, thus, "must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The well-pleaded allegations in the complaint are assumed to be true, except regarding damages. *Nishimatsu*, 515 F.2d at 1206; *see also United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206.

A court may not enter a default judgment against a minor or incompetent person unless the person is represented by a general guardian, conservator, or other like fiduciary who has appeared. Fed. R. Civ. P. 55(b). Additionally, a court may not enter a default judgment if the plaintiff does not file an affidavit regarding the defendant's military status. 50 App. U.S.C. § 521(1). If the defendant is in the military service, "the court may not enter a judgment until after the court appoints an attorney to represent the defendant." *Id.* § 521(2). Local Rule 5.5 requires that motions for default judgment "be served on the defendant-respondent by certified mail (return receipt requested)." S.D. Tex. L.R. 5.5.

### III. ANALYSIS

#### A. Service of Process

##### 1) Honour Lane

On October 25, 2017, Honour Lane was served via certified international mail through the United States Postal Service at Unit 908, Block A Damansara Intan No. 1, 47400 Petaling Jaya, Selangor, Malaysia. Dkt. 73. Because Honour Lane was added as a defendant to this lawsuit after it was removed to federal court, the Federal Rules of Civil Procedure apply. Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "[S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Id.* Absent a waiver, a corporation, partnership, or association located outside of the United States must be served by "any internally agreed means of service that is reasonably calculated to give notice, such as those authorised by the Hague Convention." Fed. R. Civ. P. 4(h)(2), (f)(1). Additionally, "a statute must, if possible, be construed in such a fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S. Ct. 1011 (1992). However, because Malaysia is not a party to the Hague Convention, service may be effected in accordance with Rule 4(f)(2)(C), which states "unless prohibited by a foreign country's law, by: . . . (ii) using any form of mail that the clerk addresses and sends to the [corporation] and that requires a signed receipt." Fed. R. Civ. P 4(f)(2)(C)(ii). Malaysian law regarding service of process states, "a writ shall be served personally on each defendant or sent to each defendant by prepaid A.R. registered post addressed to his last known address and in so far as is practicable, the first attempt at service must be made not later than one month from the date of issue of the writ." Malay. Fed. Gov't Gazette, Rules of Court 2012, P.U. (A)/2012, O. 10, r.1(1).

Rule 4(f)(2)(C) of the Federal Rules of Civil Procedure "is given operative effect by interpreting th[e] subsection to permit certain forms of service not prescribed by the laws of a foreign country." *Dee-K Enters. v. Heveafil SDN. Bhd.*, 174 F.R.D. 376, 380 (E.D. Va. 1997). Specifically, the rule "permits service of process by the subset of forms of service that, while not 'prescribed' by the laws of a foreign country, are also not prohibited by those laws." *Id.* In *Dee-K,* service was made to a Malaysian company via DHL courier services. *Id.* at 378. The court stated:

> [T]he plain language of subsection (f)(2)(C)(ii), interpreted in light of other provisions in subsection (f) and the advisory committee's note, points persuasively to the conclusion that this section authorizes service in a foreign country by any form of mail requiring a signed receipt . . . addressed and dispatched by the clerk of the court to the party being served, provided this form of service does not expressly violate the law of the country which service is attempted.

*Id*. at 380 (internal quotation omitted). Accordingly, the court held that service through certified international mail, with return receipt requested, was proper on the Malaysian company because it was not directly prohibited by Order 10, Rule 1 of the Malaysian Rules of Court. *Id*. at 382.

Honour Lane was served with process via international certified mail. Dkt. 73. Delivery occurred on October 25, 2017. Dkt. 73. Accordingly, because this form of service is not strictly prohibited by Malaysian law and the record includes a return receipt, the court finds that service of process was proper in this case. *Dee-K*, 174 F.R.D. at 382; Fed. R. Civ. P 4(f)(2)(C)(ii); Dkt. 73.

### 2) Subalipack and ACT

In Ziegler's original petition, he alleges Subalipack and ACT are foreign companies, with no assigned agent for service of process in Texas. Dkt. 76-1; Dkt. 76-2. Therefore, service was made through the Texas Secretary of State in accordance with Texas law. Dkt. 76-1; Dkt. 76-2; Tex. Bus. Orgs. Code Ann. § 5.252(a)(1).

The Supreme Court of Texas held in *Whitney v. L.&L. Realty Corp.* that in order for proper service to be made upon the Texas Secretary of State as an agent for service of a foreign defendant, the Secretary of State must forward the service to the defendant "for the Secretary of State to be conclusively presumed to be the attorney of the [foreign] defendant." 500 S.W.2d 94, 96 (Tex. 1973). The critical holding of *Whitney* is that service through the Texas Secretary of State is insufficient to establish personal jurisdiction over a foreign defendant if the record does not show that the service was forwarded to the defendant. *Id.*; *see also Bludworth Bond Shipyard, Inc. v. M/V*

*Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988) ("[The] district court lacks jurisdiction over the defendant because of lack of service of process.").

"When substituted service on a statutory agent is allowed, the designee is not an agent for *serving* but for *receiving* process on the defendant's behalf." *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (per curiam) (citing *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986)). A certificate from the Texas Secretary of State showing that service was made upon the Secretary of State and that the Secretary of State forwarded the service on to the defendant "*conclusively* establishes that process was served." *Id.* (emphasis added) (citing *Capitol Brick*, 722 S.W.2d at 401 ("absent fraud or mistake, the Secretary of State's certificate is conclusive evidence that the Secretary of State, as agent of [the defendant], received service of process for [the defendant] and forwarded the service as required by statute")).

In *Cullever*, after several attempts to serve the defendant's registered agent failed, the plaintiffs served process on the Texas Secretary of State. *Id.* at 465. The Secretary of State forwarded the citation to the defendant via certified mail and it was returned "Attempted - Not Known." *Id*. The Texas Supreme Court found that the purpose of Rule 107 of the Texas Rules of Civil Procedure is "to establish whether there has been proper citation and service, [and] the Secretary's certificate fulfills that purpose." *Id.* at 466.

Ziegler alleges Subalipack is a foreign company, with no assigned agent to for service of process in Texas. Dkt. 76-1. Therefore, the Texas Secretary of State was Subalipack's agent for receiving process. *Cullever*, 144 S.W.3d at 466. Ziegler served the Texas Secretary of State in accordance with Texas law. Dkt. at 76-1; Tex. Bus. Orgs. Code Ann. § 5.252(a)(1). Once the Secretary of State forwarded a copy of the citation to the correct address for Subalipack, the Secretary of State is presumed to be Subalipack's attorney. *See Whitney*, 500 S.W.2d at 96; *see also*

Dkt. 76-1. Although Ziegler did not initially provide proof in the record that the Secretary of State forwarded a copy of the petition to Subalipack, Ziegler has amended the record to provide such proof as required. Dkt. 76-1; *see Whitney*, 500 S.W.2d at 96. The record in this case shows that Ziegler served the Secretary of State, and the petition was forwarded on to the correct address for Subalipack. Dkt. 76-1. Such proof "conclusively establishes that process was served," giving the court jurisdiction. *Cullever*, 144 S.W.3d at 466 (citing *Capitol Brick*, 722 S.W.2d at 401). Accordingly, Ziegler properly served Subalipack.

However, when the Texas Secretary of State forwarded service of the citation to ACT, the service was returned as "Not Deliverable." Dkt. 76-2. When a plaintiff serves process through the Texas Secretary of State and it is returned with the notation "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD[,]" it is "prima facie evidence that the address . . . provided to the Secretary of State was incorrect[,] and [the defendant] was not served." *GMR Gymanastic Sales, Inc. v. Walz*, 117 S.W.3d 57, 59 (Tex. App.—Fort Worth 2003, pet. denied). When the record shows that the address provided to the Texas Secretary of State is incorrect, the plaintiff is required to amend the return of service to show service is properly accomplished and reflected in the record. *See id.* at 60. A default judgment cannot be entered when there is an error on the face of the record. *See id.* (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86–87, 108 S. Ct. 896 (1988)).

In *GMR*, the plaintiff served an out-of-state defendant through the Texas Secretary of State. *Id.* at 58. The return of service came back with the notation "NOT DELIVERABLE AS ADDRESSED." *Id.* The defendant failed to answer the lawsuit and a default judgment was entered. *Id.* Thirty-one days after the judgment was signed, the defendant received actual notice of the judgment and filed a motion for a new trial. *Id.* The court stated, "[s]trict compliance with the rules

for service of citation must be affirmatively shown in the record for a default judgment to withstand attack by restricted appeal." *Id.* at 59 (citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994)). Additionally, the court stated that it could not infer or supply additional facts necessary to establish strict compliance with the rules for proper service. *Id.* Nor could the court "controvert recitations in the Secretary of State's return." *Id.* Further, the court determined that proof in the record which indicated the citation was not deliverable as addressed was prima facie evidence that the address provided by the plaintiff to the Secretary of State was incorrect, and the plaintiff was responsible to show in the record that the correct address was provided to the Secretary of State in order for service to be properly accomplished. *See id.* at 59–60. Accordingly, the court held that "[b]ecause there is error on the face of the record, [the court] must reverse the default judgment and remand the case for trial." *Id.* at 60.

Ziegler alleges ACT is a foreign company, with no assigned agent to for service of process in Texas. Dkt. 76-2. Therefore, the Texas Secretary of State is ACT's agent for receiving process. *Cullever*, 144 S.W.3d at 466. The record shows that the address the Texas Secretary of State sent the complaint to was 154 146th Ave., 3rd Floor, Jamaica, NY 11434.[2] Dkt. 76-2. The citation sent by the Secretary of State was returned "Return to Sender, Not Deliverable As Addressed, Unable to Forward." Dkt. 76-2. This is prima facie evidence that Ziegler provided an incorrect address to the Secretary of State, and ACT was not served. *See GMR*, 117 S.W.3d at 59; *see also* Dkt. 76-2. Because the record shows that the address provided to the Texas Secretary of State is incorrect, Ziegler is required to amend the return of service to show service was properly accomplished and

---

[2] The address for ACT was shown as Northern Blvd., Littleneck, NY 11632 in subsequent filings. Dkt. 76.

reflected in the record. *See GMR*, 117 S.W.3d at 60. Therefore, a default judgment cannot be entered against ACT because there is an error on the face of the record. *See id.*

Ziegler may argue that proper service of process was waived by ACT when ACT consented to removal of this case to federal court. However, "[w]ithout service, there is no personal jurisdiction over the defendant. This right is not waived by filing a petition for removal to federal court." *Silva v. City of Madison*, 69 F.3d 1368, 1376 (7th Cir. 1995) (citing *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409, 49 S. Ct. 360 (1929) ("Petitioner suggests that, by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived. Our decisions are to the contrary.")). "Rule 81(c) does not purport, whether in its language or in its legislative history, to create any 'new' service requirement. All that it requires is delivery of a complaint." *Id.* "The service of process rules require that the defendant formally be made a party to the lawsuit before he is required to litigate the matter of jurisdiction." *Id.* at 1377.

In *Silva*, the plaintiff did not properly serve the defendant with a lawsuit for an employment discrimination and retaliation suit. *Id.* at 1370. However, the defendant nonetheless came into possession of the complaint and removed the suit to federal court. *Id.* The defendant did not answer the complaint, and the plaintiff moved for a default judgment, which was denied. *Id.* Afterwards, the plaintiff properly served the defendant. *Id.* A jury trial commenced, and a verdict was returned for the defendant. *Id.* The plaintiff appealed the judgment, claiming that the district court erred when it denied the initial motion for default judgment. *Id.* The plaintiff argued that, although initial service was not proper, the defendant was required to file a response within the later of twenty days after receipt of the complaint or five days after filing for the removal. *Id.* at 1370–71. The court rejected that argument, stating:

> [W]e perceive nothing in the statute, the rule or their respective legislative histories that would justify our concluding that the drafters, in their quest for evenhandedness and promptness in the removal process, intended to abrogate the necessity for something as fundamental as service of process. It simply is not reasonable for us to conclude that it was intended that such a major exception to the clear mandates of Rules 4 and 12 be undertaken without any express mention of such a consequence. It is one thing to require removal before proper service is effected; it is quite another to require a party to file a responsive pleading. Requiring a responsive pleading before service is effected is at odds with a fundamental principle of federal procedure – a responsive pleading is required only after service has been effected and the party has been made subject to the jurisdiction of the federal courts.

*Id.* at 1376 (citing Fed. R. Civ. P. 12(a)(1)(A) ("[A] defendant shall serve an answer within 20 days after being served with the summons and complaint . . . ."); *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988) ("The defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements.")). Accordingly, the court held that because the defendant had not been properly served with the summons, it was not required to file a responsive pleading, and the district court did not err in denying the motion for default judgment. *Id*. at 1377.

The fact that ACT consented to removal to federal court does not mean the court has established personal jurisdiction over ACT. Dkt. 3; *see Silva*, 69 F.3d at 1376. Although ACT consented to removal, the court cannot infer facts to establish strict compliance with the rules for proper service. *GMR*, 117 S.W.3d at 59. Indeed, ACT's consent for removal form specifically states it is consenting "subject to and without prejudicing any defenses which it may have, including but not limited to, its Rule 12 defenses." Dkt. 3. "Unless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(l)(1). Consent to removal does not establish a waiver of proper service or personal jurisdiction over ACT. *Silva*, 69 F.3d at 1376-77. Therefore, ACT is not required to answer this lawsuit until it is formally made party to the lawsuit through proper service. *Id.* at 1376. However, the court is authorized to permit Ziegler to submit proof that service was properly made on ACT. Fed. R. Civ. P. 4(l)(3). Because Ziegler has failed to provide proof that proper

11

service was made upon ACT, the motion for default judgment against ACT is DENIED with leave for Ziegler to submit additional briefing within fourteen (14) days establishing either: (1) ACT waived the service requirement in accordance with Rule 4(d); or (2) the Texas Secretary of State forwarded a copy of the citation to the correct address for ACT.

**B.    COGSA and Limitation of Liability**

The Carriage of Goods by Sea Act ("COGSA") governs shipments to and from the United States under bills of lading and similar documents of title.  46 U.S.C. §30701, note 1.  "A bill of lading" is a document showing "that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 18–19, 125 S. Ct. 385 (2004).  COGSA was enacted in 1936 to establish and maintain uniformity in maritime relationships between shippers and carriers and to regulate bills of lading representing contracts to carry goods by sea between the United States and foreign ports. *Maizoro v. Sea-Land Serv., Inc.*, CA 3-96-CV-2979-R, 1998 U.S. Dist. LEXIS 17624, *10–11 (N.D. Tex. Oct. 20, 1999).  A carrier is obligated to exercise due diligence to properly man and equip the vessel, to make the vessel seaworthy, and to ensure that the vessel's holds are fit  for the carriage of cargo. *Sun Co. Inc. v. S.S. Overseas Arctic*, 27 F.3d 1104, 1112 (5th Cir. 1994).

COGSA imposes upon shippers a maximum liability of $500 per package unless the parties contract for greater liability. *Waterman S. S. Corp. v. U. S. Smelting, Ref. & Min. Co.*, 155 F.2d 687, 693 (5th Cir. 1946).  Furthermore, parties may contractually extend COGSA's provisions to areas, parties, and activities where they would not automatically apply.  *Kirby*, 543 U.S. at 30; *Sabah Shipyard SDN Bhd. v. M/V Harbel Tapper*, 178 F.3d 400, 409 (5th Cir. 1999).

COGSA itself is silent on its preemptive scope. *Polo Ralph Lauren, L.P., v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000).  However, in 2004, the Supreme

Court held that general maritime law, though not COGSA specifically, preempts state law, and that maritime law governs contracts involved in the multimodal shipment of goods such as through bills of lading. *Kirby*, 543 U.S. at 28. *Kirby* involved a shipment from Australia to Alabama through a bill of lading that contained a clause paramount extending the COGSA liability limitation to inland carriage. *Id.* at 18. The land carrier sought to limit its liability under the through bill of lading after the goods were damaged during the overland voyage. *Id.* at 21. The *Kirby* Court held that federal maritime law rather than state law applied to the controversy because the bill of lading was a maritime contract. *Id.* at 29. Further, the Supreme Court held that federal courts can assert admiralty jurisdiction over multimodal bills of lading no matter how far inland the damage or loss occurs. *Id.* Thus, federal maritime law, and not state law, governed the contract dispute in *Kirby*. *Id.*

Here, Ziegler's contract with Subalipack was through a bill of lading. Dkt. 2-2 at 18. Subalipack issued Ziegler an invoice indicating "the terms of carriage, and serv[ing] as evidence of the contract for carriage," stating that it would be providing "[d]oor to door services from Kuala Lumpur to Texas, U.S.A. inclusive of supply packing materials, manpower for packing, crating of motorbike, customs clearance for both parts, sea freight chargers and delivery to residence at destination (*insured*)." *Id.* (emphasis added); *Kirby*, 543 U.S. at 18–19. Subalipack also issued Ziegler copies of an inventory list of the household goods that Subalipack had packed and received from Ziegler. Dkt. 17-3, 2-12. These documents indicate a bill of lading for the purposes of COGSA. Furthermore, the sea leg of a transport route from Kuala Lumpur to Texas is "substantial carriage of goods by sea." Therefore, the court concludes that COGSA governs any claims of liability Ziegler alleges against Defendants that arise from the transport contract. *Kirby*, 543 U.S. at 27.

Title 1, Section 4, Subsection 5 of COGSA states:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.
>
> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, [t]hat such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 U.S.C. § 30701, note § 4(5). "Only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." *Sommer Corp. v. Panama Canal Co.*, 475 F.2d 292, 298 (5th Cir. 1973) (citing *N.Y., New Haven and Hartford Railroad Co. v. Nothngale*, 346 U.S. 128, 135, 73 S. Ct. 986 (1953)).

COGSA establishes a minimum liability of $500 per package for damage or loss of a shipper's goods, unless the shipper declares a higher value for those goods. *General Electric Co. v. MV Nedlloyd*, 817 F.2d 1022, 1024 (2d Cir. 1987). However, common law requires that the shipper be provided with a fair opportunity to declare a value of the goods in excess of the $500 per package limitation. *Id.* Such a declaration is typically found in the bill of lading and entitles the carrier to charge an *ad valorem* rate in order to account for the increase in liability. *Id.*

In *General Electric*, the bill of lading included a box where the plaintiff could declare an excess value of its goods, which would have resulted in an *ad valorem* charge of 10%. *See id.* The plaintiff elected not to declare the excess value of the goods and was only entitled to recover $28,500 plus interest on its damaged goods, which had a value of $750,000. *See id.* at 1024–25. The plaintiff

argued that the *ad valorem* rate was unreasonably high, and the bill of lading did not explicitly mention the COGSA $500 per package limitation. *Id*. at 1025. The court noted that:

> A carrier must provide a shipper with a 'fair opportunity' to declare excess value. Only by granting shippers a fair opportunity to choose between paying a greater or lesser charge to obtain corresponding more or less protection for its goods may a carrier limit its liability to an amount less than the loss actually sustained.

*Id*. at 1028 (citing *Nothnagle*, 346 U.S. at 135). Proving a fair opportunity is initially the burden of the carrier, and the language of the bill of lading can provide prima facie evidence of that opportunity. *Id*. at 1029. Ultimately, the court held that the bill of lading showed the plaintiff had the opportunity to increase the limitation of liability and failed to do so. *Id*. Additionally, the *ad valorem* rate charged by the defendant was not excessive. *Id*. Accordingly, the court held that the COGSA limitation applied. *Id*.

The face of the invoice states that Ziegler's shipment is "insured." Dkt. 2-2 at 18; Dkt. 76-3. Additionally, the quotation states that the price offered by Subalipack is inclusive of "[i]nsurance premium 2.5% from [sic] the value of the goods." Dkt. 76-3. Further, the face of the invoice states that the price is inclusive of "customs clearance for both parts." *Id*. Therefore, the evidence demonstrates that Ziegler contracted with Subalipack to insure the full value of his cargo, including the cost for customs clearance. Although the terms of COGSA set a liability limitation of $500 per package, those terms do not apply because there was an agreement between Ziegler and Subalipack to insure the full value of Ziegler's cargo. *Id*.; 46 U.S.C. § 30701, note § 4(5); *see General Electric*, 817 F.2d at 1024; *see also Waterman*, 155 F.2d at 693.

However, maritime law still governs the contract between Ziegler and Subalipack. *Kirby*, 543 U.S. at 28. Accordingly, although Ziegler and Subalipack agreed to increase the liability exposure for loss or damages to Ziegler's property as indicated in their contract, there is no such

expansion that allows the contract to be governed under the Texas Deceptive Trade Practices Act. Here, Ziegler is seeking damages three times what he has suffered based on the relief allowed for under the Texas Deceptive Trade Practices Act. Tex. Bus. & Com. Code §17.50(b)(1). This is in direct contradiction with COGSA, which states that "*[i]n no event shall the carrier be liable for more than the amount of damage actually sustained.*" 46 U.S.C. §30701, note § 4(5) (emphasis added). Therefore, with respect to Subalipack, the court grants Ziegler unliquidated damages in the amount of $78,481.58 for actual damages suffered.

When Subalipack subcontracted with Honour Lane, a bill of lading was issued. Dkt. 24-1 at 2. ACT was the delivery agent of Honour Lane. *Id*. "When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary agreed." *Kirby*, 543 U.S. at 33. Like the defendant *General Electric*, the face of Honour Lane's bill of lading has a box for an excess limit declaration to be made, which is blank. Dkt. 24-1; *see General Electric,* 817 F.2d at 1024–25. Nothing in the record indicates that Honour Lane agreed to extend its liability. Under *Kirby*, Honour Lane is not bound to the same liability exposure that Subalipack accepted. 543 U.S. at 33. Indeed, the record indicates that Ziegler paid a premium to Subalipack to insure the full value of his goods, but there is no such evidence that Honour Lane was paid to incur the additional liability being requested. Dkt. 24-1; Dkt. 76-3. Therefore, because the value of goods was not declared in the bill of lading, the $500 per package liability limitation of COGSA applies. 46 U.S.C. §30701, note § 4(5) (imposing $500 per package liability limitation "unless the nature and value of such goods have been declared by the shipper before and inserted in the bill of lading."). The fact that Ziegler was not provided a fair opportunity to declare a higher amount with Honour Lane is of no bearing because Subalipack is deemed to be Ziegler's agent for this shipment of cargo. *See Kirby*, 543 U.S. at 35 ("[W]e hold that

intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability limitations with carriers downstream").

In this case, Honour Lane transported 309 packages of household goods and personal effects, and one crate with Ziegler's motorcycle. Dkt. 24-1 at 3. Under COGSA, the motorcycle is considered one package. *See The Margaret Lykes*, 57 F. Supp. 466, 473 (E.D. La. 1944) (stating that "[a] truck, as to shipper and carrier, was, and must be, considered a 'package,' equally with the one box of parts, listed with such truck on the dock receipt . . . ."). Therefore, the total remedy available to Ziegler for damages and loss of property from Honour Lane is limited to $500 per package and no more than the amount of damages actually sustained. Because ACT was the receiving agent for Honour Lane, and there is nothing in the record that indicates ACT accepted liability in excess of the statutory amount set forth in COGSA, the same limitation applies (subject to Ziegler providing proof of adequate service as indicated above in Section III(A)(2)). The court grants Ziegler fourteen (14) days leave to file additional briefing evidencing proof of actual damages—on a per package basis—in accordance with COGSA.

## C.    Attorneys' Fees, Interest, and Costs

Generally, in an admiralty case, the prevailing party is not entitled to an award of attorneys' fees unless there is federal statutory authorization to do so. *Noritake Co. v. M/V Hellenic Champion*, 627 F2.d 724, 730 (5th Cir. 1980); *Sandoval v. Mitsui Sempaku K.K. Tokyo*, 460 F.2d 1163, 1171 (5th Cir. 1972); *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S. Ct. 1612 (1975). No such statutory authorization appears in COGSA. *Noritake*, 627 F.2d at 730; *see* 46 U.S.C. § 30701, note §§ 1–16. There are judicially created exceptions to the general rule of not allowing attorneys' fees. *See Noritake*, 627 F.2d at 730. The first exception is related to allowing recovery for attorneys' fees to an indemnitee against its indemnitor. *See id.* at 730 n.5. The second

exception "allows the discretionary award of attorneys' fees in admiralty cases when the non-prevailing party has acted in bad faith litigation or as a penalty for willful disobedience of a court order." *See id.* These exceptions are within the power of the court to assess based on the particular situation of a case unless Congress has forbidden the court from doing so. *Id.*

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *United States v. Signed Personal Check No. 730*, 615 F.3d 1035, 1092 (9th Cir. 2010) (internal citation and quotation omitted). "Intentionally" in this context means even a conscious choice not to answer a lawsuit is not automatically considered bad faith. *Id.* Bad faith consists of acts such as intentionally trying to take advantage of the other party, interfering with the decision making of the judiciary, or other conduct showing an attempt to manipulate the legal process. *See id.* A defendant's conduct is not typically bad faith "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698.

Ziegler requests reasonable attorneys' fees in the amount of $46,661.00 and court costs in the amount of $1,141.47. Dkt. 76 at 6. However, there is no statutory authorization set forth in COGSA which allows for recovery of attorneys' fees. *Noritake*, 627 F.2d at 730; *see* 46 U.S.C. § 30701. Additionally, the record does not show that the Defendants have tried to manipulate the lawsuit or proceedings. *Signed Personal Check No. 730*, 615 F.3d at 92. Indeed, the only affirmative action shown by any of the Defendants—in terms of the proceedings of this lawsuit— was ACT consenting to removal to federal court. Dkt. 3. Further, Ziegler does not allege that any of the Defendants have tried to avoid this lawsuit by intentionally refusing service or otherwise. Dkt. 76. Accordingly, none of the exceptions to the general rule prohibiting the prevailing party from receiving an award for reasonable attorneys' fees applies.

"As a general rule, prejudgment interest should be awarded in admiralty cases—not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled." *Noritake*, 627 F.2d at 728. "Discretion to deny prejudgment interest is created only when there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest. *Id.* (citation omitted); *see Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986) ("[A]n award for prejudgment interest in actions under the general maritime law is the rule rather than the exception; prejudgment interest must be awarded unless unusual circumstances make an award inequitable."). Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment . . . ." 28 U.S.C. § 1961(a). "[C]osts—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d).

In this case, the court does not find any "peculiar circumstances" demonstrating that an award of prejudgment interest should not apply. The court will assess prejudgment interest at the legal rate established under 28 U.S.C. § 1961 at the time of final judgment. *See In re M/V Nicole Trahan*, 10 F.3d 1190, 1196–97 (5th Cir. 1994) (affirming award of prejudgment interest at federal rate when there was no evidence to support a different rate). In previous admiralty cases, courts in this district have awarded prejudgment interest from three months following the date of shipment. *See Vistar, S.A. v. M/V Sealand Express*, 680 F. Supp. 855, 859 (S.D. Tex. 1987). Ziegler provides no reason to depart from that standard. Thus, the prejudgment interest for loss and damage to Ziegler's property began accruing on October 1, 2014 (approximately three months after shipment of the goods). However, some of the damages alleged were suffered when Ziegler had to pay various fees and expenses relating to the release of his cargo once it arrived in the United States. For those charges, the court grants prejudgment interest accruing from the estimated time Ziegler remitted

payment according to the record. Accordingly, prejudgment interest will be determined at the time of judgment and will accrue from the following dates:

(1)     loss and damage to property—interest to accrue from October 1, 2014;

(2)     rail transport—interest to accrue from July 1, 2015;

(3)     fee to importer—interest to accrue from November 1, 2014;

(4)     fee to import attorney to get cargo released—interest to accrue from November 1, 2014; and

(5)     bonded storage fees—interest to accrue from May 1, 2015.

### IV. CONCLUSION

Ziegler's motion for default judgment (Dkt. 76) is GRANTED in part and DENIED in part.

With respect to Subalipack, the motion is GRANTED. The court awards Ziegler the following:

(1)     $78,501.58 in actual damages;

(2)     prejudgment interest as set forth in this order;

(3)     post-judgment interest at the legal rate established under 28 U.S.C. § 1961 at the time of final judgment; and

(4)     all costs of court as provided in Rule 54(d) of the Federal Rules of Civil Procedure.

With respect to Honour Lane, the motion for default judgment is GRANTED with fourteen (14) days leave to file additional briefing evidencing proof of actual damages per package in accordance with COGSA.

With respect to ACT, the motion for default judgment is DENIED with fourteen (14) days leave to file additional briefing evidencing proof that ACT was properly served with process and proof of actual damages per package in accordance with COGSA.

Signed at Houston, Texas on June 12, 2018.

Gray H. Miller
United States District Judge